UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CSI ENTERTAINMENT, LLC, CSI SPORTS
EVENTS, LLC, and CSI ENTERTAINMENT
EVENTS, LLC,

Case No. _____

*Plaintiffs*,

– against –

**VERIFIED COMPLAINT**

FLOYD MAYWEATHER, JR. and
FRIST APEX VENTURES LLC,

*Defendants*.
------------------------------------------------------------X

Plaintiffs CSI Entertainment, LLC ("CSI Entertainment"), CSI Sports Events, LLC ("CSI Sports Events"), and CSI Entertainment Events, LLC ("CSI Entertainment Events," and with CSI Entertainment and CSI Sports Events collectively, "Plaintiffs"), as and for their Verified Complaint against Defendants Floyd Mayweather, Jr. ("Mayweather") and Frist Apex Ventures LLC ("Frist," and with Mayweather collectively, "Defendants"), allege as follows:

## NATURE OF THE CLAIMS

1.      This case seeks injunctive relief and monetary damages based upon an inexcusable breach of contractual obligations owed to Plaintiffs by boxing superstar Mayweather.

2.      By reason of Mayweather's breaches, Plaintiffs are threatened with irreparable injury through the loss of their unequivocal right to produce live-televised and/or live-streamed boxing matches, as well as related series (a) for Mayweather to engage in an exhibition bout against fellow boxing legend "Iron" Mike Tyson ("Tyson") for his next fight (the "Tyson Fight"), and (b) immediately after the Tyson Fight, for Mayweather to formally come out of retirement and fight another boxing superstar, Manny "PacMan" Pacquiao ("Pacquiao") (the "Pacquiao Fight").

3.      Mayweather's performance is critical to Plaintiffs' future business prospects.  He is an undefeated boxing legend and widely regarded as one of the greatest pound-for-pound fighters in the sport's history.  Mayweather retired in 2017 with a 50-0 record and 15 major world championships.  Although the Tyson Fight will be an exhibition bout given the disparity in their weight classes, it will be a major event featuring two of boxing's biggest stars.  The Pacquiao Fight will be even more significant because Mayweather and Pacquiao are two of the greatest fighters in boxing history and they competed in similar weight classes.  Even more importantly, it will be a rematch of their 2015 bout which Mayweather won by unanimous decision and, because it will be a 12-round professional fight, Mayweather's undefeated 50-0 record will be on the line.

4.      The Tyson and Pacquiao Fights are unique, once-in-a-lifetime events, and a loss of the opportunity to be associated with these historic fights cannot adequately be compensated by money damages.  The resulting publicity and reputational benefit to Plaintiffs cannot be underestimated.

5.      Rather than pay Mayweather directly for his services, Plaintiffs instead paid Frist as a loan out company.  This arrangement was established at Mayweather's direction, and he signed Inducement Letters granting Plaintiffs the exclusive broadcast rights to these extraordinary events.  It is common industry practice for professional prize fighters to be paid through third parties who contract for their services, as Defendants did here.  Through Frist, Plaintiffs paid $4.5 million in combined advances to secure their exclusive rights to Mayweather's services.

6.      More devastating from a reputational perspective, Plaintiffs have already issued major press releases about their exclusive rights to Mayweather's fights in reliance upon Mayweather's contractual commitments.  Under the circumstances, for Mayweather to repudiate

2

Plaintiffs' rights without consequence will irreparably damage their reputation in the boxing business particularly, and professional sports generally.

7. If Mayweather proceeds to fight without Plaintiffs' involvement, it will utterly and irreversibly undermine their credibility. That is precisely what Mayweather is publicly proposing to do. Indeed, the day after CSI Sports Events paid a $150,000 advance directly to Mayweather under one of the contracts at issue in this case – which was on top of the $4.5 million they had already paid Frist for the exclusive right to Mayweather's services – Mayweather posted on Instagram, the popular social media platform, that instead of fighting Tyson with CSI Sports Events as the broadcaster, his next bout would be against the relatively unknown Greek kickboxer Mike Zambidis ("Zambidis") in Athens, Greece, on June 27, 2026.

## THE PARTIES

8. Plaintiff CSI Entertainment is a Delaware limited liability company with its principal place of business at One Evertrust Plaza, 9th Floor, Jersey City, New Jersey 07302. Richard Miele and Craig Miele are CSI Entertainment's only members. Richard Miele is a citizen of New York, and Craig Miele is a citizen of New Jersey.

9. Plaintiff CSI Sports Events is a Delaware limited liability company with its principal place of business located at One Evertrust Plaza, 9th Floor, Jersey City, New Jersey 07302. CSI Entertainment is the sole member of CSI Sports Events.

10. Plaintiff CSI Entertainment Events is a Delaware limited liability company with its principal place of business located at One Evertrust Plaza, 9th Floor, Jersey City, New Jersey 07302. CSI Entertainment is the sole member of CSI Entertainment Events.

11. On information and belief, Defendant Mayweather is a citizen of the State of Nevada.

12.     On information and belief, Defendant Frist ("Frist") is a Florida limited liability company with a principal place of business in Boca Raton, Florida.  On further information and belief, Ayal Frist is Frist's managing member and he is a citizen of the State of Florida.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) in that it is a civil action between citizens of different States and involves an amount in controversy in excess of $75,000.

14.     Complete diversity exists because Plaintiffs are citizens of the States of Delaware, New York, and New Jersey, and Defendants are citizens of the States of Nevada and Florida.

15.     The amount in controversy exceeds $75,000 in that, among other reasons, (a) CSI Sports Events and CSI Entertainment Events collectively paid $4.65 million to Mayweather (directly or indirectly) to secure exclusive broadcast rights to his upcoming fights and Defendants breached their exclusivity obligations, (b) Frist breached its contractual obligation to pay CSI Entertainment Events a $2.5 million fee by no later than April 23, 2026, and (c) while based on a variety of factors and difficult to calculate with certainty, the value of the broadcasting rights at issue in this case vastly exceeds the $75,000 jurisdictional requirement.

16.     Defendants are subject to personal jurisdiction in this Court under NY CPLR § 302 based on their consent to jurisdiction.  As alleged below, Plaintiffs' claims arise from contracts executed by Frist and accompanied by Inducement Letters signed by Mayweather agreeing to their terms.  Those agreements contain (a) express choice-of-law provisions designating New York law, (b) forum selection clauses consenting to the exclusive jurisdiction of the federal and state courts in New York, and (c) venue provisions designating New York County as the venue for disputes arising under the agreements.  *See infra* at ¶¶ 33, 44, and *passim*.

17.    Based on the same forum selection clauses contained in the parties' agreements, venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

### A.    Background of CSI

18.    In 1997, Richard and Craig Miele founded the CSI Sports business initially through a California entity, CSI Entertainment Inc.  Through various related entities – which are at times collectively referred to herein as "CSI" – CSI has grown from creating, producing, and distributing live championship boxing events in the United States, to a leading global multimedia business controlling rights to boxing's biggest global events, and other high-profile fight-related sports, including some of the highest grossing pay-per-view events of all time.

19.    In 2012, CSI Entertainment launched (through subsidiaries) the fastest growing 24/7 sports network worldwide under the FIGHT SPORTS® brand ("FIGHT SPORTS").  Under the CSI SPORTS™ brand ("CSI SPORTS"), CSI Entertainment controls (through subsidiaries) the global rights to the library of HBO World Championship Boxing events.  It is also the exclusive owner of the iconic USA Tuesday Night Fights® series, acquired from Comcast/NBC Universal. As a result, CSI has the right to thousands of hours of content featuring the past fights of boxing legends Mayweather, Tyson, Oscar De La Hoya, and many more.

20.    Pursuant to an assignment between related CSI entities, CSI Entertainment is the owner of CSI SPORTS and FIGHT SPORTS marks ("CSI Brands").  As the parent company of various entities that operate under the CSI Brands, those marks are incredibly valuable to CSI Entertainment.

**B.     The Tyson Agreement**

21.     At some point between July and August of 2025, Mayweather approached Tyson regarding a potential exhibition fight.  At that time, CSI Events held – and continues to hold – the exclusive right to Tyson's next fights, among other exclusive Tyson rights.

22.     Following negotiations between representatives of CSI and Mayweather, on or about August 10, 2025, CSI Sports Events and Frist entered into an agreement under which CSI Sports Events secured the services of Mayweather to fight Tyson – *i.e.*, the Tyson Fight – in the spring of 2026 (the "Tyson Agreement").  A true and accurate copy of the Tyson Agreement is annexed hereto as Exhibit 1.

23.     At Mayweather's direction, CSI Sports entered into the Tyson Agreement with Frist and paid the advances due under it to Frist.  However, as a condition precedent to the Tyson Agreement, *see* Exhibit 1 hereto at p. 25, § 31, Mayweather executed an August 10, 2025, Inducement Letter (the "August 2025 Inducement Letter").  *Id.* at pp. 30-31, a true and accurate copy of the August 2025 Inducement Letter.

24.     In the August 2025 Inducement Letter, Mayweather represented:

a.     "Frist has the right and authority to enter into the Agreement and to exclusively furnish to CSI my rights and services upon the terms and conditions therein specified ….";

b.     "I have read and understand each and all of the terms and conditions of the Agreement and hereby consent to the execution thereof by Frist.";

c.     "The representations and warranties of Frist contained in the Agreement are true and correct in all respects, and I have granted to Frist all of the rights granted by Frist to CSI under the Agreement.";

6

d.      "I am under no obligation or disability under law or otherwise, which would prevent or restrict Frist from performing and complying with all of the terms, covenants and conditions of the Agreement on my part to be performed or complied with.";

e.      "I will indemnify and hold CSI harmless from and against any and all taxes and other amounts, which CSI may have to pay … by reason of Frist's failure to deduct or withhold any and all legally required amounts from the compensation….."; and

f.      "In consideration of CSI entering into the Agreement with Frist, I will grant all rights and take all steps necessary to cause Frist to render its services and perform all other obligations to be performed by it consistent with and as provided in the Agreement."

Exhibit 1 hereto at pp. 30-31, ¶¶ 1-4, 6, and 8.

25.     The August 2025 Inducement Letter states that it survives termination of the Tyson Agreement. *Id.* at ¶ 9.

26.     The Tyson Agreement grants CSI Sports Events the right to produce live-televised and/or live-streamed boxing matches, and a series about Mayweather's training, lifestyle activities, and "pre, during, and post [Tyson Fight] activities." *Id.* at pp. 1-2, § 3. These were extremely valuable rights to CSI Sports Events and CSI Entertainment for the reasons alleged above in Paragraphs 2-4 and 6.

27.     The Tyson Agreement prohibits Mayweather from engaging in any other boxing match prior to the Tyson Fight ("Interim Fight Exclusion"). *See id.* at pp. 6-7, § 12 (Mayweather "shall be prohibited from participating in any other boxing match, professional or exhibition, prior to the [Tyson Fight] without CSI's prior written consent.").

7

28.     The Interim Fight Exclusion was material because, among other reasons, (a) it was vital for CSI Sports Events to broadcast Mayweather's next fight to publicly demonstrate his relationship with the CSI Brands, (b) if Mayweather fought for a different broadcaster and performed poorly, it would diminish the benefits that CSI Sports Events would otherwise receive under the Tyson Agreement, and CSI Entertainment would receive through the CSI Brands' association with Mayweather, and (c) prize fighting is an inherently, extremely dangerous sport and if Mayweather were seriously injured, CSI Sports Events could lose all of the valuable rights it was granted under the Tyson Agreement and CSI Entertainment would lose the benefit of the CSI Brands' affiliation with Mayweather.

29.     The Tyson Agreement contains a limited exception to the Interim Fight Exclusion whereby if certain conditions were met, Mayweather could participate in a professional boxing match, not an exhibition, prior to the Tyson Fight.  Exhibit 1 hereto at p. 6, § 12.  However, to exercise this right, Mayweather was required to publicly announce both the opponent and a return from retirement by on or before October 20, 2025.  *Id.*  CSI Events was willing to include this limited exception at Mayweather's request because it knew that there was no realistic chance that he would be able to meet those conditions by October 20, 2025, and indeed he did not.  Therefore, Mayweather never exercised his right to the exception to the Interim Fight Exclusion, and the exception is irrelevant to the parties' dispute.

30.     The Tyson Agreement provided for $14 million in total compensation for Mayweather's services, with a $2 million advance to be paid within one business day from the effective date of that Agreement.  *Id.* at p. 7, § 13.

31.     On August 11, 2025, CSI Sports Events caused the $2 million advance to be paid to Frist pursuant to the terms of the Tyson Agreement.  Exhibit 2 hereto is a true and accurate copy

8

of the proof of payment.  CSI Sports Events would not have paid the advance absent, among other rights, the Interim Fight Exclusion and its exclusive rights.

32.    The Tyson Agreement confirms that the parties had an opportunity and/or did consult with independent counsel in the preparation and analysis of that Agreement, and that they read it with care and are aware of its contents and legal effect.  Exhibit 1 hereto at p. 25, § 36.

33.    The Tyson Agreement contains an irrevocable waiver of all rights to a jury trial as well as the following choice of law and forum selection clause:

> This Agreement will be construed under the laws of the State of New York and the Parties hereby submit to the exclusive jurisdiction of the New York federal and state courts with general jurisdiction over New York County, New York for the resolution of any dispute with respect to the Agreement.

*Id*. at p. 25, § 35.

34.    On September 4, 2025, CSI issued a press release (the "Tyson Press Release") announcing the Tyson Fight for a date to be determined in the Spring of 2026.  Exhibit 3 hereto is a true and accurate copy of the Tyson Press Release.

35.    Mayweather did not issue a public disavowal, objection, or rebuttal of any kind to the Tyson Press Release.

36.    Mayweather did not object, either verbally or in writing, to CSI Sports Events about the Tyson Press Release.

37.    To the contrary, Mayweather posted the Tyson Fight the same day.  Thereafter, on September 28, 2025, he re-issued a post on his Instagram account (the "Tyson Instagram Post") promoting the Tyson Fight by stating "2026 Signed" and inviting his Instagram followers to make suggestions about where the event should take place.  Exhibit 4 hereto is a true and accurate copy of the Tyson Instagram Post.

C.    **The Exclusive Mayweather Fight Agreement**

38.    On or about November 6, 2025, CSI Entertainment Events and Frist entered into an exclusive agreement for Mayweather to fight boxing legend Pacquiao – *i.e.*, the Pacquiao Fight – or another suitable opponent as Mayweather's next fight after Tyson (the "Exclusive Mayweather Fight Agreement").  A true and accurate copy of the Exclusive Mayweather Fight Agreement is annexed hereto as Exhibit 5.

39.    As with the Tyson Agreement, as a condition precedent to the Exclusive Mayweather Fight Agreement, Exhibit 5 hereto at p. 27, § 31, Mayweather signed a November 2025 Inducement Letter (the November 2025 Inducement Letter").  *Id*. at pp. 33-34, a true and accurate copy of the November 2025 Inducement Letter.

40.    In the November 2025 Inducement Letter, Mayweather covenanted:

a.    "Frist has the right and authority to enter into the Agreement and to exclusively furnish to CSI my rights and services upon the terms and conditions therein specified ….";

b.    "Under the advice of counsel, I have read and understand each and all of the terms and conditions of the Agreement and hereby consent to the execution thereof by Frist and my execution and delivery of this Inducement Letter.";

c.    "The representations and warranties of Frist contained in the Agreement are true and correct in all respects, and I have granted to Frist all of the rights granted by Frist to CSI under the Agreement.";

d.    "I am under no obligation or disability under law or otherwise, which would prevent or restrict Frist or myself personally from performing and complying with all of the

10

terms, covenants and conditions of the Agreement that require my personal performance or compliance.";

e. "I hereby agree to indemnify and hold CSI harmless from and against any and all taxes and other amounts, which CSI may have to pay … by reason of Frist's failure to deduct or withhold any and all legally required amounts from the compensation….";

f. "In consideration of CSI entering into the Agreement with Frist, I hereby grant all rights and shall take all steps necessary to personally render my (and cause Frist to render its) services and perform all our respective obligations to be performed by myself or Frist (as applicable) consistent with and as provided in the Agreement.";

g. "I hereby personally guarantee the full and timely performance by Fri[st] of all its obligations under the Agreement, and agree to be personally bound to the same extent as Fri[st] with respect to all such obligations."; and

h. "I agree that during any period in which Fri[st] is subject to an exclusivity obligation under this Agreement, I will not (1) participate in, promote, or engage in any boxing match, exhibition, or similar combat sports event with any other party, (2) enter into any agreement or understanding (written or oral) to do so, or (3) engage in any other conduct that would reasonably result in Fri[st]'[s] violation of any of these restrictions…."

Exhibit 5 hereto at pp. 33-34, ¶¶ 1-4, 6, and 8-10.

41. The November 2025 Inducement Letter states that it will survive termination of the Exclusive Mayweather Fight Agreement. *Id.* at p. 34, ¶ 11.

42. Mayweather signed the November 2025 Inducement Letter before a notary public. *Id.* at p. 34.

43. The Exclusive Mayweather Fight Agreement provides that the parties (a) had an opportunity and/or did consult with independent counsel in the preparation and analysis of the contract, (b) read it with care, and (c) are aware of its contents and legal effect. *Id.* at p. 28, § 36.

44. The Exclusive Mayweather Fight Agreement contains an irrevocable waiver of all rights to a jury trial as well as the following choice of law and forum selection clause:

> This Agreement will be construed under the laws of the State of New York and the Parties hereby submit to the exclusive jurisdiction of the New York federal and state courts with general jurisdiction over New York County, New York for the resolution of any dispute with respect to the Agreement.

*Id.* at pp. 27-28, § 35.

45. The Exclusive Mayweather Fight Agreement gave CSI Entertainment Events the exclusive right to produce live-televised and/or live-streamed boxing matches and to produce a series about Mayweather's training, lifestyle activities, and "pre, during, and post [Pacquiao Fight] activities." *Id.* at p. 2, § 3. The Exclusive Mayweather Fight Agreement expressly provides that a loss of these rights would give rise to irreparable harm: "the terms of this Paragraph 3 are material to CSI [Entertainment Events] and any potential or actual breach by [Mayweather] will cause CSI [Entertainment Events] **irreparable harm**." *Id.* at p. 3, § 3 (Emphasis supplied).

46. In the Exclusive Mayweather Fight Agreement, Defendants represented that (a) Mayweather had not entered into any other agreements to participate in any other bouts after the Tyson Fight, *id.* at p. 1, Second "WHEREAS" clause, and (b) the Pacquiao Fight would be Mayweather's next fight after the Tyson Fight. *Id*. at p. 1, First and Third "WHEREAS" clauses.

47. These representations were critically important for CSI Entertainment Events and CSI Entertainment for several reasons:

a.  It was essential that the Tyson Fight – and only the Tyson Fight – precede the Pacquiao Fight so that the Tyson Fight mega event could build momentum for, and enhance the significance of, the Pacquiao Fight;

b.  The Tyson Fight had received tremendous press coverage and was poised to be a massive spectacle, but was a novelty event.  It was important that the Tyson Fight represented Mayweather's return to boxing to help build excitement around the Fight;

c.  It was crucial not to do anything that could undermine the value of the Tyson Fight. As a 12-round professional bout, the Pacquiao Fight would be a dangerous fight with a risk of serious injury that could jeopardize the Tyson Fight; and

d.  CSI Entertainment Events had already published a press release that Mayweather was coming out of retirement and signed exclusively with CSI FIGHT SPORTS. If Mayweather fought another opponent without the CSI Brand, it would materially undermine the value of CSI Entertainment Events' exclusive rights to Mayweather's upcoming fights.

48.  The Exclusive Mayweather Fight Agreement provides for Mayweather to be paid (a) $35 million with 20% of event revenues for any pay-per-view ("PPV") component, or, alternatively, (b) a $50 million buyout at CSI Entertainment Events' election if there is no PPV component.  *Id*. at pp. 8-9, § 13.  If Pacquiao was unavailable, Mayweather would fight another suitable opponent for a $20 million purse with 20% of PPV revenue or, alternatively, a $25 million buyout again at CSI Entertainment Events' election.  *Id*.

49.  The first $2.5 million advance was due upon signing.  *Id.* at p. 9, § 13.

50. On November 6, 2025, CSI Entertainment Events caused a $2.5 million advance to be wired to Frist pursuant to the terms of the Exclusive Mayweather Fight Agreement. Exhibit 6 hereto is a true and accurate copy of the wire confirmation of the $2.5 million advance.

**D.      Mayweather's Initial, Concealed Breach**

51. Under the Exclusive Mayweather Fight Agreement, by November 17, 2025, Mayweather was required to tweet from his official Twitter/X account that he will "unretire after the Tyson Fight, and restart his professional career and the rights to his **next bout after the Tyson Fight** is exclusively with CSI/FIGHT SPORTS" (the "Unretire Announcement"). Exhibit 5 hereto at p. 7, § 8 (Emphasis in original). The Exclusive Mayweather Fight Agreement also authorized CSI Entertainment Events to issue a press release with the same Unretire Announcement. *Id*.

52. By referencing "CSI/FIGHT SPORTS," the contracted-for tweet and press release demonstrated the importance of the Mayweather relationship to the CSI Brands generally, not just to CSI Entertainment Events, the counterparty to the Exclusive Mayweather Fight Agreement.

53. Mayweather, however, failed to tweet the Unretire Announcement on November 17, 2025.

54. Mayweather had named Jona Rechnitz ("Rechnitz") as his sole designee for purposes of communication with CSI Entertainment Events under the Exclusive Mayweather Fight Agreement. Exhibit 5 hereto at p. 21, § 25. Richard Miele urged Rechnitz to have Mayweather tweet the Unretire Announcement as required by the Exclusive Mayweather Fight Agreement. Rechnitz, however, was adamantly opposed.

55. After much back-and-forth, Richard Miele told Rechnitz that CSI Entertainment Events would exercise its rights to issue a press release with the Unretire Announcement. Rechnitz responded by threatening that, if it did so, the Tyson Fight was off.

14

56.     In hindsight, it is now clear why Mayweather was opposed to tweeting the Unretire Announcement in the mid-November to December 2025 time frame – the Unretire Announcement confirmed Plaintiffs' rights to Mayweather's next fight under the Exclusive Mayweather Fight Agreement, but he was in the process of selling those very same rights to a third party.

57.     Specifically, on or about December 12, 2025, Mayweather signed a "Boxing and Promotional Services Agreement" with Players Era, LLC, a Delaware limited liability company and a subsidiary of 89 Blocks Holdings, LLC, doing business as EverWonder Studios ("Everwonder") (the "Everwonder-Mayweather Contract"). Exhibit 7 hereto is, on information and belief, a true and accurate copy of the Everwonder-Mayweather Contract.

58.     The Everwonder-Mayweather Contract contemplated that Mayweather would fight Pacquiao on Netflix, excluding CSI in violation of CSI Entertainment Events' exclusive rights. Exhibit 7 hereto at Recital "B" and *passim*.

59.     In the Everwonder-Mayweather Contract, Defendants represented that Mayweather was free to enter into the contract and perform all of his obligation under it. *Id.* at p. 12, § 7(a). These representations were materially false considering that Mayweather had previously (a) entered into the Tyson Agreement and accepted a $2 million advance for granting exclusive rights under it, and (b) entered into the Exclusive Mayweather Fight Agreement and accepted a $2.5 million advance for granting exclusive rights under that contract.

60.     Under the Everwonder-Mayweather Contract, Mayweather was to be paid $24,750,000, with the potential for a $3,750,000 bonus, and a $2,750,0000 deposit upon the satisfaction of certain conditions precedent. *Id.* at p. 5, § 3(a).

61.     On information and belief, Mayweather received the $2,750,000 advance and therefore accepted advances from both CSI Entertainment Events and Everwonder in connection

15

with the same proposed fight against Pacquiao.  On further information and belief, Mayweather, through Frist, took an additional $5.8 million advance from a third-party lender against the Everwonder-Mayweather Contract.

**E.     The Promotion of the Zambidis Fight Disrupts the Parties' Negotiations**

62.     On or about January 7, 2026, Plaintiffs learned that Mayweather had entered into an agreement with Everwonder to fight Pacquiao in the Fall of 2026 – *i.e.*, the Everwonder-Mayweather Contract discussed above – but was unaware of the details.

63.     On January 7, 2026, CSI Sports Events' attorneys at the time, Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins"), sent a cease-and-desist notice to Everwonder.  Exhibit 8 hereto is a true and accurate copy of same.

64.     While Plaintiffs were shocked to learn of Mayweather's double-dealing, CSI Sports Events had Mayweather under contract for the Tyson Fight that was coming up in the Spring of 2026.  Accordingly, rather than sue Mayweather immediately, Plaintiffs negotiated with his representatives and Everwonder hoping to reach an agreement that would preserve their valuable, bargained-for rights to (a) the Tyson Fight, (b) the Pacquiao Fight, and (c) certain rights to Mayweather's future fights.

65.     On February 3, 2026, CSI's negotiations were disrupted when Zambidis posted on his Instagram account a promotion of his purported fight against Mayweather for Saturday, June 27, 2026, at the OAKA Arena ("OAKA") in Athens, Greece (the "Zambidis Mayweather Feb. 3, 2026 Instagram Post").  A true and accurate copy of the Zambidis Mayweather Feb. 3, 2026 Instagram Post is annexed hereto as Exhibit 9.  The Zambidis Mayweather Feb. 3, 2026 Instagram Post contained promotional materials of Front Row Entertainment, a/k/a, Front Row Fight Series ("Front Row Entertainment").  *Id*.

66.     The Zambidis Mayweather Feb. 3, 2026 Instagram Post was highly troubling because the fight would violate Plaintiffs' exclusive rights under the Tyson Agreement and Exclusive Mayweather Fight Agreement.  Accordingly, on February 4, 2026, Nelson Mullins, on behalf of CSI Sports Events, sent Zambidis and his communications manager, Tonia Fouseki of SO FINE! Communications Management ("So Fine"), a cease-and-desist notice (the "Feb. 4, 2026 Cease-and-Desist Notice").  Exhibit 10 hereto is a true and accurate copy of the Feb. 4, 2026 Cease-and-Desist Notice.

67.     Then, on February 5, 2026, Nelson Mullins, on behalf of CSI Sports Events, sent cease-and-desist notices to Front Row Entertainment and OAKA (the "Feb 5, 2026 Cease-and-Desist Notices").  Exhibit 11 hereto consists of true and accurate copies of the Feb 5, 2026 Cease-and-Desist Notices.

68.     Thereafter, on February 10, 2026, Nelson Mullins, on behalf of CSI Sports Events, sent Rechnitz a letter advising him that it had been informed by Andrew Ruf and Ian Orefice, of Everwonder, that they had received confirmation from Rechnitz that Mayweather did not enter into any agreement to fight Zambidis on June 27, 2026, in Athens, Greece.  Exhibit 12 hereto is a true and accurate copy of the February 10, 2026 Letter.

69.     Rechnitz, as Mayweather's authorized agent, did not dispute these representations verbally or in writing.

**F.     The Out-of-Retirement Press Release**

70.     CSI's negotiations with Mayweather and Everwonder then progressed.

71.     In connection with those negotiations, Mayweather approved a February 20, 2026, press release that he was coming out of retirement (the "Out-of-Retirement Press Release") after

the Tyson Fight, and that he had signed "an exclusive agreement with CSI Sports™/FIGHT SPORTS®." Exhibit 13 hereto is a true and accurate copy of the Out-of-Retirement Press Release.

72.    The Out-of-Retirement Press Release attributed the following quote to Mayweather: "'I still have what it takes to set more records in the sport of boxing – from my upcoming Mike Tyson event to my next professional fight afterwards – no one will generate a bigger gate, have a larger global broadcast audience and generate more money with each event – than my events. And I plan to keep doing it with my global media partner, CSI Sports™/FIGHT SPORTS®,' said Mayweather." *Id.*

73.    Hence, in the Out-of-Retirement Press Release, Mayweather confirmed his understanding that the right to broadcast his fights extended beyond CSI Sports Events and CSI Entertainment Events to the CSI Brands themselves.

74.    Mayweather did not issue a public disavowal, objection, or rebuttal of any kind to the Out-of-Retirement Press Release.

75.    Mayweather did not object, either verbally or in writing, to CSI Sports Events about the Out-of-Retirement Press Release.

## G.    The February 2026 Amendments and Related Agreements

76.    In conjunction with the Out-of-Retirement Press Release, Plaintiffs then entered into a series of related agreements with Mayweather, Frist, and Everwonder.

77.    On February 22, 2026, CSI Entertainment Events, Mayweather, and Frist entered into an amendment to the Exclusive Mayweather Fight Agreement, dated as of February 20, 2026, and titled "Second Amendment to Agreement" (the "Exclusive Mayweather Fight Amendment"). Exhibit 14 hereto is a true and accurate copy of the Exclusive Mayweather Fight Amendment. While titled "Second Amendment to Agreement" there was no "First Amendment." Rather, drafts

18

of a First Amendment were exchanged but not executed and the reference to a "Second Amendment" was a scrivener's error.

78.    The Exclusive Mayweather Fight Amendment provides that "the Inducement Letter is amended and ratified to conform to" the amended agreement.  Exhibit 14 hereto at p. 4, § 10.

79.    In material part, the Exclusive Mayweather Fight Amendment provides that:

a.    CSI Entertainment Events has the sole and exclusive right to Mayweather's next boxing match after the Pacquiao Fight scheduled for September 19, 2026.  Exhibit 14 hereto at p. 2, § 4 and p. 3 § 8;

b.    Defendants had not engaged in any negotiations about a fight other than the Tyson and Pacquiao Fights and they would make no such announcements without CSI Entertainment Events' signed, written permission.  *Id*. at p. 4, § 11;

c.    Within 60 days, Frist would pay CSI Entertainment Events $2.5 million.  *Id*. at p. 3, § 7;

d.    CSI Entertainment Events would pay Mayweather an additional $5 million for the fight following the Pacquiao Fight if he was not in breach.  *Id*. at p. 3, § 6;

e.    Time was of the essence as to Defendants' obligations and their breach would irreparably harm CSI Entertainment Events.  *Id*. at p. 4, § 10; and

f.    CSI Entertainment Events would consent to Netflix broadcasting a Mayweather-Pacquiao fight subject to the CSI Branding right set forth below.  *Id*. at p. 2, § 3.

80.    Hence, as alleged in more detail *infra*, under the Exclusive Mayweather Fight Amendment, CSI Entertainment Events was giving up certain rights in connection with the Pacquiao Fight although it retained other valuable rights – and it received new rights.  Most importantly, CSI Entertainment Events was granted exclusive rights to Mayweather's next fight

immediately after the Pacquiao Fight.  It did not have those rights before.  Frist was also required to repay the $2.5 million deposit that CSI Entertainment Events had paid on the Pacquiao Fight.

81.    The Exclusive Mayweather Fight Amendment conditions CSI Entertainment Events' consent to Mayweather's participation in the Pacquiao Fight on the Tyson Fight being his next bout.  Exhibit 14 hereto at p. 2, § 3.  It further provides that any announcement by Mayweather that Tyson would not be his next fight would constitute a material breach causing irreparable harm to CSI Entertainment Events.  *Id*.

82.    The Exclusive Mayweather Fight Amendment was entered into in conjunction with a separate agreement between CSI Sports Events and 89 Blocks Holdings, LLC and Players Era, LLC (the "Everwonder Agreement").  Exhibit 15 hereto is a true and accurate copy of the Everwonder Agreement.  Although the Everwonder Agreement states that it is between the Everwonder parties and CSI Entertainment Events – which was defined as "CSI/FIGHT SPORTS," *id*. at p. 1 – Richard Miele signed the contract on behalf of CSI Sports Events.  *Id*. at p. 3.  While the Everwonder Agreement is undated, *id*. at p. 1, Richard Miele signed it on February 23, 2026.  *Id*. at p. 3.

83.    The Everwonder Agreement granted Plaintiffs valuable rights.  Specifically, it entitled "CSI/FIGHT SPORTS" to the same logo credits, signage, and public announcements afforded to Mayweather's and Pacquiao's promotional companies in connection with a Mayweather-Pacquiao fight to be televised worldwide on Netflix (the "FIGHT SPORTS branded Netflix Event").  *Id*. at pp. 1-2, §§ 1-2.  Therefore, through the FIGHT SPORTS branded Netflix Event, CSI Entertainment Events and CSI Sports Events – and, by extension, CSI Entertainment – preserved the core branding benefits contemplated by the Exclusive Mayweather Fight Agreement.

20

84.    Everwonder also agreed to pay CSI/FIGHT SPORTS $5 million.  *Id.* at p. 2, § 3. Relatedly, CSI Entertainment Events agreed in the Exclusive Mayweather Fight Amendment to pay an additional $5 million for Mayweather's next fight immediately after the Pacquiao Fight, to which it now had exclusive rights.  Exhibit 14 hereto at p. 3, § 6.  Accordingly, CSI Entertainment Events was, in effect, using the Everwonder cash settlement consideration to pay an additional $5 million for its exclusive rights to Mayweather's next fight after the Pacquiao Fight.

85.    In connection with the Exclusive Mayweather Fight Amendment and the Everwonder Agreement, on February 22, 2026, CSI Sports Events, Mayweather, and Frist signed a First Amendment to the Tyson Agreement (the "Tyson Amendment").  Exhibit 16 hereto is a true and accurate copy of the Tyson Amendment.  The Tyson Amendment states that it also constituted an amendment to the August 2025 Inducement Letter.  *Id*. at p. 1, § 2.1.

86.    Exhibit A to the Tyson Amendment is an approved press release.  *See* Exhibit 16 hereto at Exhibit A.  Although the Tyson Amendment is dated February 22, 2026, it states that the press release was "already approved" and was to be issued by no later than February 20, 2026.  *Id.* at p. 2, § 4.  The text of Exhibit A is identical to the Out-of-Retirement Press Release that CSI issued on February 20, 2026. *Compare* Exhibit 13 hereto *with* Exhibit 16 hereto at Ex. A.  Hence, the Tyson Amendment confirmed Mayweather's approval of the Out-of-Retirement Press Release.

87.    The Tyson Amendment expressly states that Frist and Mayweather "represent and warrant that neither Frist nor [Mayweather], nor any of their respective representatives, agents, or affiliates, are directly or indirectly engaged in any discussions, negotiations, or understandings (whether written or oral) for [Mayweather] to participate in any exhibition or professional boxing match other than the discussions contemplated by, and the bouts further covenanted for, with CSI[.]"  Exhibit 16 hereto at p. 3, § 8.

**H.**    **Mayweather Threatens to Breach and then Demands $150,000 in Cash**

88.    At some point after February 10, 2026, and before February 24, 2026, Mayweather advised CSI that it should deal with Walter Jordon ("Jordon") on his behalf instead of Rechnitz.

89.    On February 24, 2026, Jordon sent a WhatsApp[1] Chat to Richard Miele stating that "Just FYI Champ will make a post for an exhibition scheduled in June in Greece.  Will be after Tyson warm up PacMan" (the "February 2026 Chat").  Exhibit 17 hereto is a true and accurate copy of the February 2026 Chat.  Hence, through the February 2026 Chat, Jordon confirmed his understanding as Mayweather's authorized agent that the Tyson Fight would be occurring prior to June of 2026, and that it would be a warm-up bout for a Mayweather-Pacquiao fight.  *Id*.

90.    Nonetheless, the proposed post announcing a June 2026 exhibition fight in Greece was highly problematic.  Mayweather had just executed the Tyson Amendment and Exclusive Mayweather Fight Amendment, both of which expressly barred him from fighting any other opponent before Tyson, and further provided that announcing such a fight was a material breach.  Accordingly, on February 25, 2026, Richard Miele responded to Jordon as follows:  "Can you please hold until we speak?  That's a problem.  Please hold."  Exhibit 17 hereto.

91.    Following this request, Mayweather did not proceed to post about a June 2026 exhibition fight in Greece.  Instead, on Friday, February 27, 2026, Mayweather completed his pre-fight medicals for the Tyson Fight.

92.    Under the Tyson Amendment, Mayweather was entitled to a $150,000 installment payment upon completion of his medicals.  Exhibit 16 hereto at pp. 2-3, § 4.  Mayweather advised CSI that he would prefer to receive the $150,000 installment payment in cash.  CSI knew that as part of his Floyd "Money" Mayweather persona, Mayweather would often appear in promotional

---

[1]    WhatsApp is a popular messaging service that allows users to send written Chats as well as audio and video messages.

photos displaying large amounts of cash.  Accordingly, CSI Sports Events agreed to Mayweather's request to pay the $150,000 installment payment in cash.

93.     Richard and Craig Miele arranged to meet Mayweather at the Peninsula Hotel in Beverly Hills, California, to deliver the $150,000 to him in person and to discuss future plans for the upcoming events.  However, after Richard and Craig Miele traveled to California from the East Coast for the express purpose of meeting Mayweather in person, he advised them that he was not coming and instead sent a female companion, Chelsea Rae Flowers ("Ms. Flowers").  Ms. Flowers received and counted the $150,000 on Mayweather's behalf.  Exhibit 18 hereto is a true and accurate copy of a photograph of Ms. Flowers counting the $150,000 in a conference room at the Peninsula Hotel.

94.     That same day, on March 1, 2026, Mayweather signed a receipt (the "$150,000, Receipt") for the $150,000 in cash.  Exhibit 19 hereto is a true and accurate copy of the $150,000 Receipt.  The $150,000 Receipt specifically references the Tyson Amendment and confirms that the payment was made pursuant to it.  *Id*.

## I.     Mayweather Immediately Breaches

95.     On March 2, 2026, the day after he accepted a $150,000 installment under the Tyson Agreement, Mayweather posted on his Instagram account that he would be fighting Zambidis in Greece on June 27, 2026 (the "Zambidis Fight").  The next day, Mayweather reposted an Instagram promotion for the Zambidis Fight.  Exhibit 20 hereto is a true and accurate copy of Mayweather's March 2, 2026, Instagram post and the March 3, 2026, repost promoting the Zambidis Fight.  While the March 2, 2026, Instagram post in Exhibit 20 hereto is undated, that is the date Mayweather posted it.

96. That Mayweather would publicize the Zambidis Fight in breach of his contractual obligations the very day after he had received a $150,000 advance payment for the Tyson Fight was shocking. Nevertheless, in the hopes of preserving their valuable rights, Plaintiffs did not immediately sue Mayweather. Instead, CSI Sports Events retained counsel in Greece (the "Manginas Law Firm") to take steps to prevent the Zambidis Fight from going forward. Toward that end, on March 12, 2026, the Manginas Law Firm sent cease-and-desist notices to Zambidis, So Fine, OAKA Stadium, and Ticketmaster Hellas ("Ticketmaster").

97. The next day, on March 13, 2026, Ticketmaster responded that it was satisfied regarding CSI's rights and that it was suspending ticket sales for the Zambidis Fight.

98. On or about March 17, 2026, CSI Sports Events and CSI Entertainment Events sent Mayweather and his associate Keane Anis a proposed Letter Agreement that would have allowed the Zambidis Fight to go forward on the conditions that (a) the Tyson Fight went first, and (b) CSI/FIGHT SPORTS would produce and broadcast the Zambidis Fight, thereby ensuring that Plaintiffs' association with Mayweather would remain intact. Exhibit 21 hereto is a true and accurate copy of same.

99. Thereafter, Mayweather did not publicly or otherwise indicate that he intended to go ahead with the Zambidis Fight. Consequently, CSI reasonably understood that Mayweather had backed down.

100. Separately, Frist was obligated to pay CSI Entertainment Events $2.5 million within 60 days of February 22, 2026, or by April 23, 2026, with time of the essence. Exhibit 14 hereto at p. 3, § 7. Frist did not make the payment.

101. Then, on May 7, 2026, Mayweather held a press conference where he made it clear that he did, in fact, intend to go ahead with the Zambidis Fight on June 27, 2026.

102.    On May 12, 2026, Richard Miele sent Mayweather, Jordon, Frist, and others a letter on "CSI Sports" letterhead (the "May 12 Letter") identifying some of Defendants' material breaches and stating an openness to resolve the parties' disputes.  Exhibit 22 hereto is a true and accurate copy of the May 12 Letter.

103.    The May 12 Letter also provided notice that Tyson had injured his hand and would be unable to fight on May 30, 2026, but would be available to fight within the next six months and that consequently the Tyson Agreement was effectively tolled, meaning that Mayweather was barred from participating in any other bout.  *Id*.

104.    In this regard, the Tyson Agreement provides that if Tyson is injured, CSI Entertainment Events had the right to reschedule the Tyson Fight up through November 30, 2026.  Exhibit 1 hereto at p. 23, § 28.  In contrast, Mayweather was only entitled to an interim fight if, and only if, it was medically determined that Tyson was unable to fight for six months.  *Id*.  No such medical determination was made.  Prior to Tyson's injury, the Tyson Amendment had further extended the date of the Tyson Fight up to and including May 31, 2026.  Exhibit 16 hereto at p. 1, § 3.  Hence, CSI Entertainment Events was within its express contractual rights to postpone the Tyson Fight.

105.    On May 20, 2026, the Manginas Law Firm issued cease-and-desist letters to More.com, who had substituted in for Ticketmaster to sell tickets for the Zambidis Fight, Momentume Events, OAKA Stadium, and White Veil.  It received no responses to these notices.

106.    On June 2, 2026, the Manginas Law Firm sent additional cease-and-desist notices to Zambidis, So Fine, Momentum Events, More.com, and White Veil.  It received no responses to these notices except on June 15, 2026, when White Veil replied acknowledging that it provides

concessions for OAKA but denying any involvement with the dispute over rights to Mayweather's fights.

## J.     Mayweather's Purported Termination

107.    Through June 8, 2026, the parties' representatives engaged in settlement negotiations but reached no resolution.  Then, on June 9, 2026, David B. Jonelis, Esq., of Singer Weinstein Wolf & Jonelis LLP, sent Richard Miele a purported "NOTICE OF TERMINATION" on behalf of Mayweather (the "June 9 Purported Termination").  Exhibit 23 hereto is a true and accurate copy of the June 9 Purported Termination.

108.    In the June 9 Purported Termination, Mayweather claimed that he was terminating his relationship with CSI "affiliates" and thereby acknowledged that the benefits of his contractual arrangements extended beyond CSI Sports Events and CSI Entertainment Events to their affiliates such as CSI Entertainment.

109.    The June 9 Purported Termination was ineffective for at least the following reasons: (a) Mayweather was already in material breach, (b) the Tyson Agreement and the Exclusive Mayweather Fight Agreement both state that "[i]n the event of any breach by CSI of these terms, [Mayweather] shall be limited to [his] remedy at law for damages, if any, and shall not have the right to terminate or rescind this Agreement," Exhibit 1 hereto at p. 17, § 23 and Exhibit 5 hereto at p. 20, § 23, and (c) the August 2025 and November 2025 Inducement Letters state that they survive the termination of the Tyson Agreement and the Exclusive Mayweather Fight Agreement, respectively.  Exhibit 1 hereto at p. 31, ¶ 9 and Exhibit 5 hereto at p. 34, ¶ 11.

110.    Nevertheless, the fact that Mayweather purported to terminate his relationship with Plaintiffs demonstrated that the parties' settlement negotiations were at an end and that litigation was unavoidable.

26

**AS AND FOR A FIRST CLAIM FOR RELIEF**

**(Injunction against Mayweather by All Plaintiffs)**

111.    Plaintiffs repeat and reallege each and every allegation set forth above in the foregoing Paragraphs as if fully and completely restated herein.

112.    By reason of the foregoing, Mayweather has (a) breached, *inter alia*, his contractual obligations not to negotiate or publicize any bout before the Tyson Fight, and (b) anticipatorily breached his obligations (i) to make the Tyson Fight his next bout, (ii) to engage in the Pacquiao Fight as his next bout after the Tyson Fight to be broadcast by CSI Entertainment Events, (iii) for the CSI Brands to be directly associated with his next fight, and (iv) all of Plaintiffs' rights under the parties' various contracts based on the June 9 Purported Termination.

113.    As alleged *infra* in Paragraph 129 the Tyson Agreement, the Exclusive Mayweather Fight Agreement, and the Amendments thereto, were intended to benefit CSI Entertainment.

114.    If Mayweather is permitted to breach his exclusive obligation not to engage in any fights prior the Tyson Fight and to fight Pacquiao immediately after Tyson on a CSI Branded fight broadcast by CSI Entertainment Events, Plaintiffs will be irreparably injured by reason of having lost the opportunity (a) for CSI Sports Events to broadcast Mayweather's next fight as a bout against Tyson, (b) for CSI Entertainment Events to broadcast Mayweather's next fight after Tyson against Pacquiao or another suitable opponent, and (c) for CSI Entertainment to enjoy the unique branding opportunities attendant to those mega-fights.

115.    The harm to Plaintiffs cannot adequately be compensated by money damages considering that, among other reasons:

a.    The Tyson and Pacquiao Fights are unique, once-in-a-lifetime events featuring two of boxing's greatest legends that cannot be replicated or replaced;

b.      Plaintiffs have already issued global press releases announcing the Fights and have built their business plans around the exclusive broadcast rights;

c.      Mayweather fighting without Plaintiffs' involvement would irreparably damage their reputation and credibility in the boxing industry, particularly after global public announcements of the relationship;

d.      The value of broadcast rights depends on factors difficult to predict and calculate with reasonable certainty, including, but not limited to, viewership, subscriptions, PPV sales, advertising revenue, and site fees; and

e.      Plaintiffs' CSI Brands – CSI SPORTS and FIGHT SPORTS – are directly associated with the Fights, and Mayweather fighting without Plaintiffs' involvement would irreparably harm the value of these Brands.

116.    A balancing of the equities favors Plaintiffs.

117.    Plaintiffs are therefore entitled to a permanent injunction (a) barring Mayweather from engaging in the Zambidis Fight on June 27, 2026, or taking any steps in furtherance of that Fight, (b) prohibiting Mayweather from fighting anyone else other than Tyson before he honors his obligation to fight Tyson as his next fight in an event broadcast by CSI Sports Events, and (c) preventing Mayweather from fighting anyone other than Pacquiao or a fighter acceptable to CSI Entertainment Events immediately after Tyson, in a bout to be broadcast by CSI Entertainment Events.

## AS AND FOR A SECOND CLAIM FOR RELIEF

**(Breach of Contract by CSI Sports Events against Mayweather and Frist)**

118.   Plaintiffs repeat and reallege each and every allegation set forth above in the foregoing Paragraphs as if fully and completely restated herein.

119.   CSI Sports Events, Mayweather, and Frist, for valuable consideration entered into the Tyson Agreement and the Tyson Amendment.

120.   CSI Sports Events performed its obligations under the Tyson Agreement and the Tyson Amendment.

121.   By reason of the foregoing, Defendants breached their contractual obligations under the Tyson Agreement and the Tyson Amendment by, *inter alia*, (a) negotiating for the Zambidis Fight, (b) publicizing the Zambidis Fight, (c) upon information and belief, entering into agreements in connection with the Zambidis Fight, (d) contracting with Everwonder, and (e) purporting to terminate the Tyson Agreement and the Tyson Amendment.

122.   CSI Sports Events has been injured thereby in an amount to be determined at trial.

## AS AND FOR A THIRD CLAIM FOR RELIEF

**(Breach of Contract by CSI Entertainment Events against Mayweather and Frist)**

123.   Plaintiffs repeat and reallege each and every allegation set forth above in the foregoing Paragraphs as if fully and completely restated herein.

124.   CSI Entertainment Events, Mayweather, and Frist, for valuable consideration entered into the Exclusive Mayweather Fight Agreement and the Exclusive Mayweather Fight Amendment.

125.   CSI Entertainment Events performed its obligations under the Exclusive Mayweather Fight Agreement and the Exclusive Mayweather Fight Amendment.

29

126.    By reason of the foregoing, Defendants breached their contractual obligations under the Exclusive Mayweather Fight Agreement and the Exclusive Mayweather Fight Amendment by, *inter alia*, (a) negotiating for the Zambidis Fight, (b) publicizing the Zambidis Fight, (c) upon information and belief, entering into agreements in connection with the Zambidis Fight, (d) contracting with Everwonder, and (e) purporting to terminate the Exclusive Mayweather Fight Agreement and the Exclusive Mayweather Fight Amendment.

127.    CSI Entertainment Events has been injured thereby in an amount to be determined at trial.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

### (Breach of Contract by CSI Entertainment against Mayweather and Frist)

128.    Plaintiffs repeat and reallege each and every allegation set forth above in the foregoing Paragraphs as if fully and completely restated herein.

129.    The Tyson Agreement, the Exclusive Mayweather Fight Agreement, and the Amendments thereto, were intended to benefit CSI Entertainment.  In this regard:

a.    CSI Entertainment is the managing member of CSI Sports Events and CSI Entertainment Events;

b.    CSI Entertainment is the parent company of multiple other entities that use the CSI Brands;

c.    CSI Entertainment owns the CSI Brands;

d.    Defendants acknowledged that the exclusive rights to Mayweather's fights that they granted under the Tyson Agreement and Exclusive Mayweather Fight Agreement directly benefitted the CSI Brands through press releases and Instagram posts and

30

the parties' contracts themselves – *e.g.*, Mayweather was required "to tweet that his next bout after the Tyson Fight is exclusively with CSI/FIGHT SPORTS";

    e.    Mayweather's attorney purported to terminate his relationship with CSI "affiliates"; and

    f.    The Tyson Agreement and the Exclusive Mayweather Fight Agreement do not contain "no third-party beneficiary" clauses.

130. CSI Sports Events and CSI Entertainment Events performed their obligations under the Tyson Agreement, the Exclusive Mayweather Fight Agreement, and the Amendments thereto, and CSI Entertainment did not induce any breaches thereof.

131. By reason of the foregoing, Defendants breached their contractual obligations under the Tyson Agreement, the Tyson Amendment, the Exclusive Mayweather Fight Agreement, and the Exclusive Mayweather Fight Amendment by, *inter alia*, (a) negotiating for the Zambidis Fight, (b) publicizing the Zambidis Fight, (c) upon information and belief, entering into agreements in connection with the Zambidis Fight, (d) contracting with Everwonder, and (e) purporting to terminate the parties' agreements.

132. CSI Entertainment has been injured thereby in an amount to be determined at trial.

### AS AND FOR A FIFTH, ALTERNATIVE CLAIM FOR RELIEF

#### (Unjust Enrichment against Mayweather and Frist by CSI Sports Events and CSI Entertainment Events)

133. Plaintiffs repeat and reallege each and every allegation set forth above in the foregoing Paragraphs as if fully and completely restated herein.

134. At the expense of CSI Sports Events, Mayweather and Frist received $2,000,000, and additionally Mayweather received $150,000.

135. Mayweather and Frist received $2,500,000 at the expense of CSI Entertainment Events.

136. It would be against equity and good conscience to allow Defendants to maintain those benefits.

137. As a result, (a) CSI Sports Events is entitled to restitution in the amount of $2,150,000 from Mayweather and $2,000,000 from Frist, and (b) CSI Entertainment Events is entitled to restitution in the amount of $2,500,000 from Mayweather and Frist.

**WHEREFORE**, Plaintiffs demand judgment as follows:

A. On Plaintiffs' First Claim for Relief, a permanent injunction (a) barring Mayweather from engaging in the Zambidis Fight on June 27, 2026, or taking any steps in furtherance of that Fight, (b) prohibiting Mayweather from fighting anyone else other than Tyson before he honors his obligation to fight Tyson as his next fight in an event broadcast by CSI Sports Events, and (c) preventing Mayweather from fighting anyone other than Pacquiao or a fighter acceptable to CSI Entertainment Events immediately after Tyson in a bout to be broadcast by CSI Entertainment Events;

B. On CSI Sports Events' Second Claim for Relief, CSI Entertainment Events' Third Claim for Relief, and CSI Entertainment's Fourth Claim for Relief, money damages in an amount to be determined at trial;

C. In the alternative, on CSI Sports Events' and CSI Entertainment Events' Fifth Claim for Relief, restitution for: (a) CSI Sports Events in the amount of $2,150,000 from Mayweather and $2,000,000 from Frist, and (b) CSI Entertainment Events in the amount of $2,500,000 from Mayweather and Frist; and

D. An award of costs and disbursements; and

E.    A judgment granting such other and further relief as deemed just and proper by this Court.

Dated:  New York, New York
        June 17, 2026

                                        Yours, etc.,

                                        JUDD BURSTEIN, P.C.


                                        By:___/s/ Judd Burstein_____
                                            Judd Burstein (JB9585)
                                            Peter B. Schalk (PS8257)
                                        825 Third Avenue, 21st Floor
                                        New York, New York 10022
                                        (212) 974-2400
                                        (212) 974-2944 (Fax)
                                        jburstein@burlaw.com
                                        pschalk@burlaw.com
                                        *Attorneys for Plaintiffs CSI Entertainment, LLC, CSI Sports Events, LLC, and CSI Entertainment Events, LLC*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, **RICHARD MIELE**, declare under penalty of perjury that

the foregoing Verified Complaint is true and correct.

Executed on June 17, 2026, in the State of New York, New York County.

RICHARD MIELE