# EXHIBIT 1

## AGREEMENT
### "Boxing Match"

This Agreement (this **"Agreement"**) is dated as of August 10, 2025 (the **"Effective Date"**) and sets forth the basic terms of understanding between CSI Sports Events, LLC (**"CSI"**), a Delaware limited liability company, with a principal place of business located at One Evertrust Plaza, 9th Floor, Jersey City, New Jersey 07302, and Frist Apex Ventures LLC (**"Frist"**), a Florida limited liability company, for the services of Floyd Mayweather (**"Participant"**), with a principal place of business located at 7300 West Camino Real, Suite 201, Boca Raton, Florida 33433. CSI and Participant may sometimes be referred to herein individually as a **"Party"** and collectively as the **"Parties."**

### RECITALS

**WHEREAS,** CSI, as noted herein, intends to finance, produce and commercially market and exploit a live boxing event that will feature Participant in the Main Event (defined below), and Frist will supply the services of Participant to fight in the Main Event, on the terms and conditions contained herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained herein, each Party, intending to be legally bound, hereby agrees as follows:

| Section No. | Heading | Terms |
|---|---|---|
| 1 | **Incorporation by Reference** | The recitals and introductory paragraph above, and the definitions set forth therein, are incorporated herein by this reference. |
| 2 | **Conditions Precedent** | The Parties' obligations hereunder shall be contingent upon each Party fully executing and delivering to the other Party a copy of this Agreement.<br><br>No act or omission of any Party will be deemed a waiver by any Party of any Conditions Precedent. If any Party, in either of their sole discretion, elects to waive any Conditions Precedent, such waiver will only be valid if expressly agreed to by the Parties in writing, and will only serve as a waiver of the specific condition so waived. |
| 3 | **Boxing Match / Production Description** | CSI shall produce live-televised and/or live streamed boxing matches (the **"Event"**), as more fully described herein, with the Participant to be featured in the Main Event.<br><br>Additionally, in conjunction with the production of the Event, during the Term (defined below) of this |





1

|  |  | Agreement, CSI will have the right to produce a final deliverable that will consist of a maximum of two (2) to four (4) hours of content (inclusive of commercial time, if any) per week that will focus solely on the pre, during and post Event activities of the Event's participants, including, without limitation, Participant, to include, without limitation, training, lifestyle activities, the activities up to an including fight week (i.e., the weigh in) and a post-fight analysis of the bout (and for the avoidance of doubt, shall not include a grant of life story rights of Participant) (the **"Series"**). Participant will be available for proposed times by CSI to film what is set forth hereinabove.<br><br>The Series shall consist of either half-hour episodes or one-hour episodes, in each case including commercial time, if any, at the election of CSI. Additionally, during the Term, CSI shall have the right, and it is an essence to this Agreement, to record content for promotional and advertising materials to market the Event and the Series.<br><br>CSI may elect to produce four (4) or more thirty (30) minute episodes of a "countdown show" (which shall be focused solely on the lead up to the Main Event regarding training and preparation of each of Participant and the Main Event Opponent (as defined below) to be used solely by the Event broadcaster for promotional purposes (the "**Countdown Show**").<br><br>The Countdown Show shall not be life story documentary and will focus on the Main Event and all aspects of the Participant related to it.<br><br>Except as permitted in accordance with Section 12 below, the Main Event shall be the next boxing competition that Participant participates in and Participant will not participate in any other boxing matches (neither professional nor exhibition) prior to the Event Date (as extended or postponed in accordance with this Agreement).<br><br>For the purposes of this Agreement, the Event and the Series will collectively be referred to herein as the **"Production."** |



2



| 4 | **Match Descriptions for the Event** | The Event shall be comprised of not less than six (6) boxing matches, consisting of the main event which shall be the last bout on the card (the **"Main Event"**), the co-main event (the **"Co-Main Event"**) and at least four (4) undercard matches (each an **"Undercard Match"** and collectively the **"Undercard Matches"**) (the Main Event, Co-Main Event and the Undercard matches may be referred to herein individually as a **"Match"** and collectively as the **"Matches"**). <br><br> The Main Event shall consist of at least eight (8) rounds, each round lasting at least two (2) minutes. <br><br> The Co-Main Event and Undercard Matches shall each be determined in CSI's discretion. <br><br> For each of the Main Event, the Co-Main Event and the Undercard Matches, each round shall be referred to as a **"Round"** and collectively as the **"Bout."** <br><br> The Parties acknowledge and agree that the Main Event featuring Participant shall be an **exhibition match and will not count towards any professional record**. |
| 5 | **Fighter Defined** | For the purposes of this Agreement, each boxing participant in each Bout will be referred to herein individually as a **"Fighter"** and collectively as the **"Fighters."** |
| 6 | **Co-Main Event and Undercard Matches** | CSI shall exclusively solicit, negotiate, contract and approve of the participating Fighters and all terms associated with their engagement for the Co-Main Event and the Undercard Matches. |
| 7 | **Main Event Description** | The Main Event shall consist of no more than eight (8) Rounds of two (2) minutes each. The Main Event shall feature Participant fighting against Mike Tyson (**"Tyson"** or the **"Main Event Opponent"**). <br><br> Any alternate Opponent must be mutually approved between the Parties, with such approval to not be unreasonably withheld or delayed by Participant. <br><br> CSI shall exclusively solicit, negotiate, contract and approve all deal terms associated with the engagement of the Main Event Opponent. |

 Initial

 Initial

3

| | | |
|---|---|---|
| | | **Boxing Gloves**.  The Parties mutually agree that Participant and the Main Event Opponent shall use 12oz boxing gloves for the Main Event.<br><br>**Mouth Guard**.  The Parties acknowledge and agree that CSI has developed a proprietary mouthguard technology that collects data associated with impact, among other matters, while a Fighter is boxing.  CSI will timely provide Participant with a sample of such mouthguard and Participant will make best efforts to use the CSI-provided mouthguard during training and while participating in the Main Event. |
| 8 | **Credit Billing; Weigh-In; Walk-In etc.** | So long as Tyson is the Main Event Opponent, the Parties agree as follows:<br><br>1. Order of Credit billing and likeness (e.g., top/left/first) shall be as follows: Main Event Opponent, for marketing, advertising, etc., in first position / left side etc.;<br><br>2. Order of walk-out shall be as follows: Main Event Opponent shall walk out first and Participant shall walk out Second;<br><br>3. Assignment of blue corner and red corner shall be as follows: Main Event Opponent shall fight out of the Red Corner and Participant shall fight out of the Blue Corner;<br><br>4. Order of Fighter introductions/walk-outs shall be as follows: Main Event Opponent shall be introduced and shall walk out to the ring first on fight night, and the Participant shall be introduced and shall walk out to the ring second;<br><br>5. Order of weigh-in shall be as follows: Participant shall be weighed-in first and the Main Event Opponent shall be weighed-in second; and<br><br>6. Order of presentation at press conferences shall be as follows: Participant shall be featured first at all press conferences and the Main Event Opponent shall be featured second at all press conferences. |

Initial



Initial

4

|  |  | In the event Tyson is not the Main Event Opponent, the Parties shall negotiate in good faith and shall mutually approve of any revisions hereof. |
|---|---|---|
| 9 | **Cancellation of Matches** | If any Bout, other than the Main Event, is cancelled or postponed for any reason, the failure of such Bout to take place shall not be deemed non-performance or a material breach or default by CSI hereunder. |
| 10 | **Event Date** | The Main Event shall take place on a date to be solely determined by CSI, however, the Event shall occur not later than **April 25, 2026**, unless otherwise extended to **June 30, 2026** in accordance with Section 12 below (the **"Event Date Deadline"**), which may be extended for reasons of Force Majeure (defined below), or pursuant to agreement between CSI, Participant and the Main Event Opponent. <br><br> The date on which the Event will occur shall be referred to herein as the **"Event Date."** <br><br> The broadcast time for the Main Event shall be on Eastern Standard Time (exact time to be determined by CSI), unless otherwise later agreed to in writing between the Parties. <br><br> Within ten (10) business days of the Effective Date of this Agreement, Participant shall provide CSI with a list of dates that Participant shall be professionally unavailable for the Event Date (at most two (2) days and not in the same month; e.g., a family obligation), if any, between the Effective Date and April 30, 2026. Participant shall not unreasonably condition or reserve any potential dates for the Event Date. |
| 11 | **Event Location; Venue** | The Parties acknowledge and agree that the Main Event shall be hosted at a location and venue (the **"Venue"**) to be determined solely by CSI. Under no circumstances shall the Venue be in Saudia Arabia, or a location/country that is designated by the United States Government as a "no-travel" destination. <br><br> The Parties acknowledge that none of Frist, Participant, nor Participant's representatives, without CSI's prior written consent, shall not solicit any third party to be the Venue or to host the location of the Main Event. CSI shall exclusively solicit, negotiate, contract and approve all deal terms associated with the Venue. |

Initial

Initial

5

| 12 | **Term of Engagement;** | This Agreement will be effective as of the Effective Date and shall continue through thirty (30) days following the Event Date, unless earlier terminated or extended in accordance with this Agreement. The period beginning on the Effective Date and continuing until the date of termination will be referred to herein as the **"Term."** CSI shall have the right to terminate this Agreement upon providing written notice to Participant if Participant, during the Term, and prior to the Event Date, is publicly accused of an act of moral turpitude (substantiated by the preponderance of evidence, a court decision or Participant's admission), a violation of any Federal or state law or any other conduct, which subjects or could be reasonably anticipated to subject Participant to public ridicule, contempt, scorn, hatred or censure, or could materially diminish the revenues and/or patron attendance anticipated for the Event.<br><br>The Parties acknowledge and agree that Participant's status, as of the Effective Date of this Agreement, is that Participant has retired from professional boxing.<br><br>During the Term of this Agreement, Participant shall have the right participate in one (1) professional boxing, and not an exhibition, boxing match, which shall not be against Tyson (the "Pro Fight") prior to the Main Event, so long as all of the following conditions are satisfied: (i) Frist or Participant, on or before October 1, 2025 (the "Notice Date"), shall inform CSI in writing (email is sufficient) whether Frist's and/or Participant's are or are not engaged in material contractual negotiations for the Pro Fight; (ii) Frist or Participant publicly announces Participant's return from retirement, so long as such public announcement of a return from retirement occurs on or before October 20, 2025 (the "Announcement Deadline"), (iii) Participant contracts and publicly announces an opponent for the Pro Fight on or before the Announcement Deadline, and (iv) Frist and/or Participant shall make all such public announcements regarding a return from retirement and the opponent on Participant's via a press release to boxing and traditional media outlets, as well as provide notice of same on Participant's personal Instagram or X (f/k/a Twitter) account. The Pro Fight featuring |


Initial


Initial

6

|  |  | Participant, should it occur, shall occur no later than January 15, 2026 (the "Pro Fight Deadline").<br><br>In the event the Pro Fight occurs on or before the Pro Fight Deadline, the Event Date Deadline for Participant to fight the Main Event Opponent in the Main Event shall automatically be extended to June 30, 2026.<br><br>If Participant participates in the Pro Fight and Participant is injured or becomes ill before or during the Pro Fight, then the Event Date shall be tolled for as long as the Participant is injured or is ill, and CSI's designated physicians shall have the right to examine Participant, at CSI's discretion, during the injury or illness period. Further, should the Pro Fight, if scheduled, not be capable of being held on or before the Pro Fight Deadline due to Participant's injury or illness, Participant's next boxing match shall be the Main Event, and not the Pro Fight, unless otherwise later agreed to in writing between the Parties.<br><br>If Participant does not publicly announce a return from retirement and confirmation of professional match with an identified opponent on or before the Announcement Deadline, Participant shall be prohibited from participating in any other boxing match, professional or exhibition, prior to the Main Event, without CSI's prior written consent. |
| 13 | **Fight Purse for the Main Event** | In exchange for Participant participating as a Fighter in the Main Event, CSI shall pay Frist the fixed amount of **Fourteen Million Dollars ($14,000,000.00 USD)** (the "**Purse**").<br><br>The Purse shall be paid to Frist in two (2) installments as follows: (i) **Two Million Dollars ($2,000,000.00 USD)** (the **"Advance"**), which shall be paid within one (1) business day of the Effective Date of this Agreement, and (ii) **Twelve Million Dollars ($12,000,000.00 USD)** (the **"Second Installment"**) within one (1) business day following the Event Date, solely on condition that Frist and Participant are not in material, or default of this Agreement, and on condition that Participant, in good faith, actually participated as a Fighter in the Main Event. |


Initial


Initial

|    |    | Notwithstanding the foregoing, the Advance shall be non-refundable in any circumstance, except for the material, uncured breach or material, uncured default by Frist and/or Participant of any of their obligations pursuant to this Agreement.<br><br>Other than the Purse and the Personal Sponsorships (defined below), Frist and Participant shall not be entitled to any other fees, revenues or compensation of any kind from CSI associated with the Production.<br><br>CSI's payment of the Advance to Frist shall constitute payment in full for Participant's participation in the Series and all Pre-Fight Events (defined below) and Post-Fight Events (defined below) and all Production-related marketing services of Frist and/or Participant.<br><br>In the event CSI does not pay the Advance to Frist when due, then this Agreement shall terminate and neither Party shall have any further obligation to the other Party. |
|----|----|----|
| 14 | **Tax Liability** | Frist and Participant shall be solely responsible for, and shall comply with any return filing, tax payment or withholding obligations required under applicable Federal and State law or regulation relating to the payment of income taxes on the Purse (in this regard, the Parties acknowledge that CSI shall not withhold any amounts relating to the payment of such taxes). |
| 15 | **Method of Payment** | All sums of money payable to Participant for the Purse hereunder shall be paid via bank wire transfer, in accordance with wire instructions contained in **Exhibit "A,"** which are attached hereto and incorporated herein for reference. |
| 16 | **Bout Agreement** | For the Main Event, Participant shall execute and comply with the terms of a standard bout agreement (the **"Bout Agreement"**), which shall be consistent with the provisions of this Agreement in all respects, if required by law or the applicable Boxing Commission. The Bout Agreement shall not supersede the terms, conditions and other provisions of this Agreement, which shall be controlling. |
| 17 | **Boxing Commission** | At all times, the Parties shall comply with, and the Event shall be promoted and produced in compliance with all rules and regulations of the athletic and/or boxing commission, federation or official authority having |

Initial


Initial

8

| | | jurisdiction over the Matches (the **"Boxing Commission"**). |
|---|---|---|
| **18** | **Medical Testing** | As a condition subsequent to the Advance having been paid to Participant, and as a condition precedent to the Second Installment being paid to Participant, Participant shall, within ten (10) calendar days upon CSI's written request (email is sufficient), complete and pass a physical medical examination, along with an EKG, MRI and EEG, and Participant will undergo medical and physical testing customary to the boxing industry, and the standards required by the insurance carrier for the policy, at a time subject to Participant's reasonable availability within ten (10) calendar days from CSI's written request.

Participant may have Participant's own physician present at any such medical examination. Additionally, it shall be material to this Agreement that Participant cooperates with and provides information and records, as may be requested by any examining physician and/or insurance carrier (either directly or through CSI) for the Production, and such information shall be provided to said physician or insurance carrier representative within ten (10) days if requested.

In the event Participant fails to cooperate or provide such information as above-mentioned, or if Participant fails to submit to the medical examinations referenced above, then, if Participant fails to cure within seven (7) days after the ten (10) calendar day period mentioned above, then the Advance shall be immediately refunded to CSI within three (3) business days. Additionally, at any time thereafter the cure period expiring, CSI will have the right to terminate this Agreement, and, if CSI does terminate this Agreement, CSI shall have no further obligations to Frist and/or Participant under this Agreement.

If at any time during the Term Participant refuses to participate in or attempts to cancel or postpone the Main Event for reason of a claimed injury or medical disability, CSI shall have the right, but not the obligation, to have Participant examined by a medical doctor of CSI's choice, at CSI's expense, and, if CSI so elects, Participant shall appear for examination on not |

Initial

Initial

9

| | | less than two (2) business' days advance notice at Participant's then-current location. |
| --- | --- | --- |
| | | In the event of any medical injury or illness, Participant shall report to CSI not less than every thirty (30) days prior to the date that is thirty (30) days prior to the Event Date, and, after such window, every forty-eight (48) hours. |
| 19 | **Travel and Hotel Accommodations** | If CSI requires Participant to render promotional or marketing services (other than those rendered during "fight week") at a location ("**Distant Location**") that is more than fifty (50) miles from Participant's training camp, principal residence, or then-current location, as the case may be, CSI shall pay a per-occurrence fixed buyout fee for fuel to Participant in the amount of Twelve Thousand Dollars ($12,000.00 USD) for Participant to attend each press conference and the Main Event, with a cap of Forty-Eight Thousand Dollars ($48,000.00) in the aggregate, unless otherwise later agreed to in writing between the Parties. Additionally, if applicable, CSI shall have the right to arrange on Participant's behalf, at CSI's sole cost and expense with the following:<br><br>• four (4) hotel room accommodations (not including incidentals) (on the same floor, if possible) one of which shall be a one (1) bedroom suite while at such Distant Location at a hotel reasonably acceptable to Participant;<br><br>• exclusive ground transportation between all airports, hotels and the site where Participant's promotional services are to be rendered; and<br><br>• a per diem of $500 for Participant.<br><br>In addition, during the week of the Main Event, CSI shall provide Participant with:<br><br>• ten (10) hotel rooms (on the same floor, if possible), one (1) of which shall be a one (1) bedroom suite, at the location of the Main Event at a hotel reasonably acceptable to Participant (with the check-out date to be the day immediately following the Event Date, unless |


Initial


Initial

10

|  |  | otherwise later agreed to in writing between the Parties); <br><br> • airport greeter at departing and arriving airports for Participant; <br><br> • exclusive ground transportation for Participant and up to nine (9) guests between all airports, hotels and the site of the Main Event; and <br><br> • a per diem of $500 for the Participant. <br><br> **Incidentals**. Except as provided in this Agreement with respect to Participant's travel and expense entitlements, no other charges, expenses or other incidentals of any kind (e.g., telephone charges, beverages, entertainment, gift shop items or other such benefits, charges and expenses) (collectively, **"Incidentals"**) shall be provided by CSI to Participant or any of their management, training camp or other invitees, and Participant shall not be entitled to receive cash in lieu of any unused travel expense or reimbursement unless the Parties agree otherwise . |
|----|-------------------------------|---|
| 20 | **Sponsorship Solicitations** | CSI shall exclusively solicit, negotiate, contract and approve of all Event and Production-related sponsorships (cash or in-kind) related to any and all pre-fight, during fight and post-fight activities. However, Participant shall retain rights to solicit sponsorships that are associated with Participant's personal apparel that may be worn in the ring (for example, shoes, shorts, robe, etc.), beverages and training facilities (**"Personal Sponsorships"**), and Participant shall retain all revenues associated with or derived from such Personal Sponsorships. <br><br> Provided that Participant's apparel and training facility sponsors do not conflict with the Event sponsors and/or violate any broadcast and/or distribution laws, rules and/or regulations, CSI shall have no approval rights over such Personal Sponsorships. Participant will check with CSI prior to agreeing to sponsorship to confirm no conflict exists with any Event sponsor. |

Initial

Initial

11

| | | In the event the Venue has pre-committed sponsors, or sponsorship rules or regulations, there will be no signage permitted at the Event that will conflict with the Venue's rules or regulations (e.g., if at the T Mobile Arena, then the Participant cannot promote, wear branded apparel or solicit sponsorships from competitors such as Verizon or AT&T). |
|---|---|---|
| 21 | **Participant's Grant of Rights to CSI** | **Participant's Grant of Promotional Rights to CSI**. Participant hereby grants to CSI the exclusive unrestricted worldwide right to secure, promote, arrange and present the Event and, as applicable, the Main Event to be engaged in by Participant, during the Term, including all rights to stage the Event and to sell tickets of admission thereto (the **"Promotional Rights"**) and to exploit the Ancillary Rights (defined below) to the Matches in all media, now known or hereafter devised throughout the world in perpetuity. **Participant's Grant of Ancillary Rights to CSI**. Participant hereby grants to CSI the nonexclusive worldwide right to use, display, disseminate, edit, reproduce, print, publish and make any other use of the name, sobriquet, approved image, approved likeness, speaking voice, persona, signature and approved biographical material of Participant (collectively, the **"Identity"**), in any medium solely in connection with the advertising, marketing, exploiting and/or promoting the Production, and the exploitation of all rights pertaining thereto as provided herein and all rights to the Matches, electronic and otherwise subject to the terms, conditions and other provisions of this Agreement (the **"Ancillary Rights"** and, collectively with the Promotional Rights, the **"Rights"**). The Production and the associated advertising, promotion and marketing rights shall be the sole property of CSI throughout the world in perpetuity, in all means and media, which property CSI shall hold free and clear from any and all claims by Participant, or anyone claiming through Participant. For the avoidance of doubt, CSI shall hold the Ancillary Rights described herein in perpetuity, which rights shall survive even the death of Participant. |


Initial


Initial

12

CSI hereby is and shall be the sole and exclusive owner and is the sole author for all purposes (including under the Copyright laws of the United States), in perpetuity (but in any event for not less than the period of copyright and any renewals and extensions thereof) and throughout the universe, of all of the following from the moment of their creation, at every stage of their development, production, or completion. Notwithstanding the foregoing, the "Rights" shall not include the exclusive use of Participant's name, likeness, biography, photograph, image or other personal and identifying characteristics all of which are reserved to Participant, and Participant is granting solely a limited license to use the Identity in connection with the exploitation of the Production and the advertising, promotion and marketing thereof. Further, nothing in this Agreement or any additional agreements is intended to, nor shall, act to transfer, grant or convey any right, title or interest in and to the life story rights or biography of Participant, all of which are expressly reserved.

The Rights of CSI shall include, without limitation, the following:

- the right, subject to all payments that are due or become due to Participant hereunder, to receive and retain all site fees, live-gate tickets and other revenues, subscription revenues, advertising fees, sponsorship fees and the like;

- the right to produce the Event and the Series about the Event (which Series shall not exceed four (4) one-hour episodes or, in the alternative, eight (8) half-hour episodes, inclusive of the Countdown Show if produced, for a total running time of 240 minutes in the aggregate, inclusive of commercial time, if any) for exploitation in all media, including, without limitation, motion picture, radio, television (which term, whenever referred to herein shall include, without limitation, live or delayed, interactive, home or theater, over-the-air broadcast, pay, pay-per-view, satellite, closed circuit, cable, subscription, Video on Demand (**"VOD"**), Near Video on


Initial


Initial

13

Demand (**"NVOD"**), Subscription Video On Demand (**"SVOD"**), multi-point, master antenna or other), telephone, wireless, computer, CD-ROM, DVD, any and all Internet applications (including, without limitation, netcasting, podcasting, direct download, streamed webcasting, internet channels (e.g., Youtube) or any other form of digital media download or web syndication), in any and all media and all gauges, including, but not limited to, video and audio cassettes and disks, and home video, and approved merchandising (provided that all such merchandising items featuring the Identity shall be submitted to Participant for approval) in connection with or based upon the Fights, the Series or activities pertaining to same, including, but not limited to, training, interviews, press conferences, weigh-ins and behind-the-scenes footage for the Fights (the **"Pre-Fight Events"**), post-fight interviews, press conferences and after parties (the **"Post-Fight Events"**), and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices whatsoever, now existing or hereinafter devised; notwithstanding the foregoing, CSI shall only have the right to produce one (1) Series hereunder and all derivative or subsequent productions including spinoffs, remakes, sequels and other derivative productions shall be frozen;

- the right to sell, assign, lease, sublease, use or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights and to retain the proceeds therefrom; provided, however, CSI shall not have the right to use (and authorize others to use) the Identity or the Main Event as a separate stand-alone production other than the Production as contemplated by this Agreement (in other words, the grant of Rights from Participant hereunder shall be a one-picture license, and CSI shall not have the right to produce and exploit other audio-visual


Initial


Initial

14

productions or programs other than the Event and the Series);

- the right to do all things necessary for the full and complete use, exploitation and exercise of the Rights, including the right to promote and exploit all rights granted hereunder and receive and retain the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the exploitation of the Rights for the proper production and promotion of radio and television advertisements, publicity and broadcasts relating to the Event, the Matches, the Series, the Pre-Fight Events and the Post-Fight Events, subject to CSI's payment and other obligations hereunder;

- all right, title and interest in and to exploit the Event and the Series by all recordings, including, without limitation, television, radio, Internet, wireless and the video and audio cassettes of the Event, the Matches, the Series, the Pre-Fight Events, the Post-Fight Events, and the right to secure in the name of CSI (or that of its nominee) copyright and other protection to the fullest extent available in the United States and all other countries of the world where such protection is available;

- the unrestricted right to use, edit, disseminate, display, reproduce, print or publish in any media the Identity of Participant solely for the purpose of advertising, promotion, publicity, approved merchandising and exploitation of the Event, the Matches, the Series, the Pre-Fight Events and/or the Post-Fight Events; provided that CSI agrees that CSI shall not authorize or permit the Identity of Participant to be used as a direct or implied endorsement of any product, service, sponsor or community without Participant's advance written consent, and a fee to be paid to Participant, to be negotiated in good faith on a case-by-case basis;


Initial


Initial

15

| | | |
|---|---|---|
| | | • the unrestricted right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the Identity of Participant solely in connection with the Event and the Series relating to manufacturing, distribution, marketing or sale of any home video versions, video and audio cassettes and including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter devised; and<br><br>• any use or exploitation of the Rights in connection with merchandising that incorporates or uses the Identity shall be approved in advance and in writing by Participant, and no use of such Identity shall be made in connection with firearms, tobacco, alcoholic beverages, drugs, vitamins or supplements, gambling devices, products relating to personal hygiene, and items of a sexual, religious or political nature. |
| 22 | **Participant's Promotion of the Event and the Series** | Subject to Participant's reasonable notice, Participant shall cooperate and assist in the advertising, publicity and promotion of the Event and the Series, including, without limitation, making personal appearances at up to three(3) pre-Event press conferences plus one (1) Event-week press conference, live weigh-in, and live public workout during the week of the Event (including interviews and other sponsorship and/or promotional activities (any of which may be telecast, broadcast, recorded or filmed). Any promotional appearances or services other than the abovementioned shall be subject to Participant's availability and shall be on dates and times and at locations to be mutually agreed, provided, however, that Participant shall be available during the week prior to the Main Event once the date for the Main Event has been determined. Participants' services as above mentioned are material to this agreement.<br><br>Participant acknowledges that CSI intends to produce the Series, which will follow Participant and the Main Event Opponent and their respective camps and associates starting after the Effective Date and up to the Main Event. Participant shall use commercially |

Initial



Initial

16

| | | |
|---|---|---|
| | | reasonable efforts to cause Participant and Participant's training camps, advisers and family members to, commencing as of the Effective Date of this Agreement, give CSI reasonable access to film them in connection with the Series; provided, however, that any third party's unwillingness or inability to participate in the Series shall not be a breach of this Agreement by Participant. Said access shall be negotiated in good faith prior to the commencement of principal photography of the Series, but will include, without limitation, at CSI's discretion, good faith efforts for up to three (3) service days per week (for pre-production, filming, post-production, etc.) commencing as of a date to be mutually agreed, through one (1) month following the Event, for the purpose of creating the Series, and advertisements associated with the Event, social media postings, and any and all other marketing associated with the Event and/or the Series. None of such activities shall materially hinder or impede Participant's training or training schedule for the Main Event. Participants' services as above mentioned are material to this agreement. <br><br> Participant shall execute filming participation and release waivers if required by CSI to be negotiated in good faith, which will not be more restrictive than the terms of this Agreement and which will specifically govern the filming of the Series. <br><br> Participant acknowledges and agrees that the Advance, once paid, shall be deemed payment in full for Participant's participation as on-screen talent in the Series. |
| 23 | **No Injunctive Relief; Non Disturbance of Broadcaster** | In the event of any breach by CSI of these terms, Participant shall be limited to Participant's remedy at law for damages, if any, and shall not have the right to terminate or rescind this Agreement, or to enjoin or restrain in any way the production, distribution, advertising or exploitation of the Production, or any subsequent production. <br><br> **Non-Disturbance**. Participant shall not take any action under this Agreement or supplemental documents at any time during the term of the applicable broadcaster/distributor agreement between CSI and |

Initial

17

Initial

| | | such applicable third parties for the Production, which may or shall interfere with, derogate from, diminish or otherwise impair the rights granted to the broadcaster to distribute, exhibit and/or exploit the Production throughout the world, including, without limitation, (i) the broadcaster's rights to receive and retain all materials or have access to all materials relating to the Production, (ii) the broadcaster's and/or CSI's right to collect, receive and retain any and all products and proceeds of the exploitation of all rights granted to the broadcaster in and to the Production. |
|---|---|---|
| 24 | **Business Controls** | CSI shall be responsible for making all decisions and approving all material business matters and controls, as well as all creative approvals, with respect to the marketing, production design, and broadcasting of the Production.<br><br>For the avoidance of doubt, CSI shall be exclusively responsible for the solicitation, negotiation, contracting and any other business matters related to the Venue, distribution / broadcasting of the Production, Fighter selection and agreements, production, marketing, advertising, the solicitation, negotiation and contracting with sponsors<br><br>With respect to all the foregoing CSI shall provide at least five (5) business days for the exercise of Participant's approval rights, and three (3) hours during "fight week" and if such approval is not provided within such time periods, the item or use shall be deemed approved. |
| 25 | **Designated Representatives; Communications with Third Parties** | For the purposes of this Agreement, each of the Parties acknowledge the following:<br><br>Participant hereby designates Jona Rechnitz, jona@vadaproperties.com, and/or the Participant as Participant's sole designees for purposes of communicating to CSI any and all approvals relevant to this Agreement and the Production; and<br><br>CSI hereby designates Richard Miele, rmiele@csisports.tv, and/or Craig Miele, cmiele@csisports.tv, as CSI's sole designees for Participant's purposes communicating to CSI all |



Initial



Initial

18

| | | |
|---|---|---|
| | | approvals relevant to this Agreement and/or the Production. |
| 26 | **Event Tickets; All Access Passes** | CSI shall provide Frist with complimentary tickets to the Event, in a location to be solely determined by CSI, that would have been made available for sale to the general public, as follows:<br><br>• eight (8) ringside tickets in the first row of public seating; and<br><br>• eight (8) ringside tickets in the second row of public seating.<br><br>Participant shall have the right to buy tickets to attend the Event in sections identified by CSI at face value when such tickets are made available for purchase to the general public, and Participant shall have no right to resell such tickets for the Event.<br><br>CSI shall also provide five (5) all access credentials for members of Participant's management team and other invitees, two (2) of which shall permit in-ring access and four (4) additional all access credentials that will not have in-ring access.<br><br>**Participant Not to Sell Tickets to the Event**. Participant shall not engage in the sale or resale of any complimentary tickets provided to Participant pursuant to this Agreement without CSI's prior written consent. |
| 27 | **Participant's Assumption of Risk; Waiver of All Claims** | Participant fully understands and agrees that the professional sport of boxing is an inherently and abnormally dangerous activity that can result in severe and permanent physical injury, including, but not limited to, irreversible neurological trauma, disability or death.  Participant represents that Participant is a seasoned professional in the sport of boxing, and Participant has knowingly evaluated the inherent risks, foreseen and unforeseen, in this dangerous sport and represents and declares that Participant is physically, mentally, emotionally and intentionally willing and able to accept, and participate in, and does hereby clearly, unambiguously and explicitly accept, all risks, foreseen |

Initial

Initial



19

and unforeseen, associated with participating in the sport and the Main Event.

In consideration for the opportunity to participate in the Main event, and with full knowledge and complete assumption of all the risks, Participant, for Participant's own self, Participant's heirs, assigns, executors and administrators (collectively, the **"Releasing Parties"**) hereby irrevocably agrees that the Releasing Parties will not sue or claim against CSI or any of its parents, subsidiary entities, affiliates, sponsors, financing partners, successors and assigns and the respective directors, officers, members, managers, employees, agents, contractors, partners, shareholders, attorneys and their representatives, in their individual, personal and representative capacities for each of the foregoing entities (collectively, the **"Released Parties"**) for any injury, illness, damage, loss or harm to Participant or Participant's property, or Participant's death or disability, resulting or arising out of or in connection with Participant's preparation for, travel for, participation and appearance in, any promotional events for the Production, the Main Event, the Series, the Pre-Fight Events and/or the Post-Fight Events, or any activities associated therewith unless such injury, illness, damage, loss or harm to Participant or Participant's property, or Participant's death or disability is caused by the negligence or willful misconduct of one or more of the Released Parties.

In consideration for the opportunity to participate in the Main Event, and with full knowledge and complete assumption of all risks, the Releasing Parties hereby forever voluntarily release, discharge, waive and relinquish any and all past, present and future claims and causes of action, specifically including any claims that they may have against the Released Parties, as the result of any injury, illness, damage or loss or harm to Participant or Participant's property, or Participant's death or disability, resulting or arising out of or in connection with participant's preparation for, travel for, participation and appearance in any promotional events for the Production, the Main Event, the Series, the Pre-Fight Events and/or the Post-Fight Events or any activities associated therewith unless such injury, illness, damage, loss or harm to Participant or


Initial


Initial

20

| | | |
|---|---|---|
| | | Participant's property, or Participant's death or disability is caused by the negligence or willful misconduct of one or more of the Released Parties. |
| 28 | **Suspension and Extension for Force Majeure Event** | If there will be any bona fide claim (other than claims, which the Parties, in the Parties' good faith and reasonable business judgment deem frivolous or meritless), which would constitute a material breach of any of Party's warranties or representations herein contained or incorporated herein by reference that materially affects the underlying agreements affiliated with the Production, the development and/or production of the Production, then the applicable rights period(s) will be extended for a period of time equal to the period of time such claim is outstanding or unresolved (provided that such claims must ripen into litigation within six (6) months in order for the suspension and extension to continue and in any event such suspension shall not continue for a period in excess of six (6) months), unless otherwise later agreed to in writing between the Parties. <br><br> **"Force Majeure,"** for the purposes of this Agreement, will be defined as the interruption of or material interference with the development, production, post-production, delivery and commercial exploitation of the Production, by any cause or occurrence as the case may be, including, without limitation, fire, flood, pandemic, epidemic, earthquake, explosion, accident, riot, war (declared or undeclared), blockade, embargo, act of public enemy, civil disturbance, labor dispute, strike, lockout, closure of the Venue, Participant's and/or the Main Event Opponent's death, disability, or injury, exigencies of production, government-mandated shutdowns, inability to secure sufficient labor, power, essential commodities, necessary equipment or adequate transportation, failure or non-availability of any means for electronic or digital transmission or reception of motion pictures (e.g., disruptions that prevent the pay-per-view broadcast), any applicable Law, and/or any act of God (provided that any failure on the part of CSI to obtain sufficient financing to produce the Event, by itself, shall not constitute an event of Force Majeure). |


Initial


Initial

21

**Force Majeure Suspension**. If any event of Force Majeure occurs during any stage of the production and/or exploitation of the Production that materially affects the development, production post-production and/or exploitation of any rights or obligations contained herein, then the applicable term will be extended by a period equal to the duration of the event(s) of Force Majeure, plus such additional time as CSI reasonably requires to recommence the production and commercial exploitation of the Production hereunder (which such suspension will not exceed six (6) months from the date of the Force Majeure event in the aggregate, unless otherwise noted hereinbelow).

In the event Participant is precluded from participating in the Main Event as a direct result of Participant's injury, illness or failure to obtain a necessary medical clearance to participate in the Main Event (as a result of Participant's illness or injury), then the Main Event will be postponed to a date after Participant has been medically cleared to participate in the Main Event, so long as Participant has been cleared to fight on the rescheduled Event Date prior to December 31, 2027, and, if so, then the rescheduled Event Date, if applicable, shall be on a date as determined solely by CSI, but not later than December 31, 2027.

If Participant becomes injured or ill and is unable to participate as a Fighter in the Main Event when scheduled, then, at no time, and under no circumstances, will Participant engage in any other boxing match (neither professional or exhibition) until after the Main Event takes place on the postponed date (if Participant attempted to engage in another bout other than the Main Event before the postponed date, it would cause CSI irreparable harm). CSI's designated doctor will be allowed to conducted medical exams in their discretion of Participant, within 7 days of any injury or illness claimed by the Participant and follow-up exams at CSI's discretion).

In the event the Main Event Opponent is precluded from participating in the Main Event as a direct result of the Main Event Opponent's injury or failure to obtain a necessary medical clearance to participate in the Main


Initial


Initial

22

| | | |
|---|---|---|
| | | Event (as a result of the Main Event Opponent's illness or injury), then the Main Event will be postponed to a date after the Main Event Opponent has been medically cleared to participate in the Main Event, so long as the Main Event Opponent is medically cleared to fight on or before December 31, 2027, and, if so, then the rescheduled Event Date, if applicable, shall be on a date as determined solely by CSI, which shall be on or before December 31, 2027.<br><br>Further, if it is medically determined that the Main Event Opponent cannot participate in the Main Event for at least six (6) months after the scheduled Event Date, then, Participant shall be permitted to engage in another boxing batch (the **"Replacement Fight"**) prior to December 31, 2026; however, Participant's next boxing match after the Replacement Fight, which shall occur no later than December 31, 2027, shall be against the Main Event Opponent in accordance with this Agreement, unless otherwise later agreed to in writing between the Parties. |
| 29 | **Representations and Warranties of Participant** | Frist and Participant represent and warrant to CSI that:<br><br>• Participant shall prepare and honestly compete to the best of Participant's ability in the Main Event and that there is no impairment to Participant doing so; and if injured prior to the Main Event, Participant will use best efforts to get cleared by CSI and Participant's doctors to participate in the Main Event within the time frames to conduct the Event as described in this Agreement; and<br><br>• Participant are free to enter into this Agreement and have not heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts with the provisions hereof or the grant of Rights contained herein or which would or could interfere with Participant's full and complete performance hereunder or the free and unimpaired exercise by CSI of an of the Rights; and |

Initial


Initial

23

| | | • there are no claims or arbitration, mediation or litigation pending or threatened affecting Frist and/or Participant that would or could materially interfere with Participant's full and complete performance hereunder or the free and unimpaired exercise by CSI of any of the Rights. |
|---|---|---|
| 30 | Assignment | **Participant's Assignment Rights**. This Agreement is non-assignable by Participant; provided, Participant may assign any payments owed to Participant hereunder. The services to be rendered by Participant hereunder are personal to Participant and of the essence of this Agreement.<br><br>**CSI's Assignment Rights**. This Agreement is non-assignable by CSI, unless approved in writing by Frist.<br><br>Any purported assignment by either Party in violation of this provision shall be null and void *ab initio*. |
| 31 | **Inducement Letter** | As a condition precedent to this Agreement, Participant shall execute the **"Inducement Letter,"** a copy of which is attached hereto and incorporated herein for reference as **Exhibit "B."** |
| 32 | **Confidentiality of this Agreement** | The terms of this Agreement are strictly confidential and each Party agrees not to disclose or permit the disclosure of the terms and conditions contained herein to any third party without the prior written consent of the other Party, except that each Party may disclose such terms to its respective financial partners, employees, affiliated entities, attorneys, accountants, other advisors, governmental entities or parties required by law or to enforce the terms hereof (collectively, the **"Approved Parties"**). |
| 33 | **Legal & Professional Expenses** | Each Party will bear its own legal costs in regard to negotiating and drafting this Agreement and the definitive agreements contemplated herein. |
| 34 | **Counterparts** | This Agreement may be executed in counterparts, each of which when so executed and delivered will be deemed originals for all purposes, all of which taken together shall constitute one and the same instrument, respectively. Delivery of any executed counterpart of this Agreement by facsimile or transmitted electronically in either a Tagged Image Format File (**"TIFF"**) or Portable Document Format (**"PDF"**) shall be |

Initial

Initial


24

| | | equally effective as delivery of a manually executed counterpart of this Agreement. |
|---|---|---|
| 35 | **Law & Jurisdiction; Waiver of Jury Trial** | This Agreement will be construed under the laws of the State of New York and the Parties hereby submit to the exclusive jurisdiction of the New York federal and state courts with general jurisdiction over New York County, New York for the resolution of any dispute with respect to the Agreement.<br><br>**AS A MATERIAL INDUCEMENT FOR THIS AGREEMENT, EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS TO A TRIAL BY JURY OF ANY ISSUES SO TRIABLE.** |
| 36 | **Legal Representation** | **THE PARTIES HEREBY REPRESENT AND WARRANT THAT EACH PARTY HERETO HAS HAD AN OPPORTUNITY TO CONSULT INDEPENDENT LEGAL COUNSEL AND/OR HAVE BEEN REPRESENTED BY COUNSEL OF THEIR OWN CHOOSING IN THE PREPARATION AND ANALYSIS OF THIS AGREEMENT. THE PARTIES HERETO EACH HAVE READ THIS AGREEMENT WITH CARE AND BELIEVES THAT EACH OF THE PARTIES HERETO ARE FULLY AWARE OF AND UNDERSTAND THE CONTENTS OF THIS AGREEMENT AND ITS LEGAL EFFECT.** |
| 37 | **Integration** | This Agreement is intended by the Parties as a final expression of their agreement, and it is intended to be a complete and exclusive statement of the agreement and understanding of the Parties with respect to the subject matter contained herein. This Agreement supersedes all previous and contemporaneous communications, representations, warranties, and agreements, whether written or oral, made during the course of the negotiations relating to this Agreement. |
| 38 | **Publicity Restrictions; Public Announcements** | Neither Party, without the other Party's prior written consent, which may be unreasonably withheld, will issue or authorize the publication in any manner, by any media (including, without limitation, by television, radio, newspaper or interactive media such as Facebook, Tik Tok, X (formerly known as Twitter) or any other interactive social network or personal blog) any news stories, publicity, press release or exploitation of any kind of any events concerning this Agreement, the deal terms being offered to Participant, or any other Fighters participating in the Production, |


Initial


Initial

25

|  |  | nor will either Party issue any derogatory publicity or make any derogatory statements concerning any Party hereto, or encourage any other individual to do so. |
|---|---|---|
|  |  | Neither Party shall make any announcement of the transactions contemplated by this Agreement prior to the execution of all definitive closing documents without the written approval of the other Party(ies). |
|  |  | The foregoing shall not restrict, in any capacity, any Party's ability to communicate information concerning this Agreement and the transactions contemplated hereby to the Parties' respective affiliates, officers, directors, employees and professional advisors, and, to the extent relevant, to third parties whose consent is required in connection with the transactions contemplated by this Agreement. |
|  |  | The contents of the initial press release and public announcement as they pertain to Participant relating to the transactions contemplated herein shall be mutually agreed to and prepared jointly by the Parties.  In the event Participant fails to approve of the initial press release within two (2) business days, it shall be deemed approved and any revisions to such press release shall be subject to CSI's discretion.  Participant shall not unreasonably condition, delay or withhold approval over the initial press release, and Participant cannot prevent the public announcement of the Event.  All subsequent press releases and public announcements associated with the Production shall be at CSI's sole discretion. |
| 39 | **Modification and Waiver of Breach** | No waiver or modification of this Agreement shall be binding unless it is in writing and signed by the Parties hereto. No waiver of a breach hereof shall be deemed to constitute a waiver of a further breach, whether of a similar or dissimilar nature. The failure of any Party hereto to enforce, at any time, any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of any party thereafter to enforce each and every such provision. |
| 40 | **Captions and Headings** | The captions and section headings used in this Agreement are for convenience of reference only and |

Initial

Initial

| | | shall not affect the construction or interpretation of this Agreement or any of the provisions hereof. |
|---|---|---|
| 41 | **Not Strict Construction** | The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against the Parties. |
| 42 | **Good Faith Amendments** | The Parties mutually acknowledge and agree that, as of the Effective Date of this Agreement, the details pertaining to the Production are in development and remain speculative and/or subject to change.<br><br>The Parties mutually acknowledge and agree that, should any terms require amendment or change based upon the deal terms associated with the Production, the Parties shall negotiate in good faith without any obligation any and all such amendments in a collaborative effort as the case may be. |
| 43 | **Authority** | Each Party hereby represents and warrants for itself that it is and will remain free to enter into and fully perform under this Agreement in all respects, and that its execution and delivery of the Agreement have been fully authorized by its governing authority. |

**SIGNATURE PAGE FOLLOWS**

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**





27

**SIGNATURE PAGE TO THE**
**AGREEMENT DATED AUGUST 10, 2025**
**BETWEEN**
**CSI SPORTS EVENTS, LLC**
**AND**
**FRIST APEX VENTURES LLC**

**Read, Agreed and Understood by:**

**CSI**

Signed by:

0B90719522034E7...

CSI Sports Events, LLC
By: Richard Miele
Its: Authorized Signatory

**PARTICIPANT**

Signed by:

DD2A6FBDA424440...

Frist Apex Ventures LLC
By: Ayal Frist
Its: Authorized Signatory

28

## EXHIBIT A

## WIRE INSTRUCTIONS

| | |
|---|---|
| **Recipient Name** | Frist Apex Ventures LLC |
| **Recipient Address** | 7300 West Camino Real<br>Suite 201<br>Boca Raton, Florida 33433 |
| **Recipient Contact Name** | Ayal Frist |
| **Phone No.** | |
| **Email** | ayal@vadaproperties.com |
| | |
| **Bank Name** | Chase |
| **Bank Address** | 240 E. Palmetto Park Road, Boca Raton, FL 33432 |
| **Bank Contact** | |
| **Bank Contact Phone No.** | 561-395-3401 |
| **Routing No.** | ████0021 |
| **Account No.** | ████7139 |
| **Swift Code** | ████US33 |
| **Wire Reference** | Advance Per Agreement Dated August ___, 2025 |



Initial

29

**EXHIBIT B**

**INDUCEMENT LETTER**

August 10, 2025

Mr. Richard Miele
CSI Sports Events, LLC
One Evertrust Plaza
9th Floor
Jersey City, NJ 07302

***Re: "Agreement for Floyd Mayweather Boxing Match"***

Dear Mr. Miele,

Reference is made to the binding Agreement dated August 8, 2025 (the **"Agreement"**) between CSI Sports Events, LLC (**"CSI"**) and Frist Apex Ventures LLC (**"Frist"**) for my services in the above-referenced boxing match.  As an inducement to CSI to enter into the Agreement, and as a material part of the consideration moving CSI for so doing, I hereby represent, warrant and agree as follows:

1.      Frist has the right and authority to enter into the Agreement and to exclusively furnish to CSI my rights and services upon the terms and conditions therein specified and to waive any of my rights upon the terms and conditions therein specified.

2.      I have read and understand each and all of the terms and conditions of the Agreement and hereby consent to the execution thereof by Frist.

3.      The representations and warranties of Frist contained in the Agreement are true and correct in all respects, and I have granted to Frist all of the rights granted by Frist to CSI under the Agreement.

4.      I am under no obligation or disability under law or otherwise, which would prevent or restrict Frist from performing and complying with all of the terms, covenants and conditions of the Agreement on my part to be performed or complied with.

5.      Unless I am substituted for Frist as a direct party to the Agreement, I will look solely to Frist, and not to CSI, for all compensation and other remuneration, if any, for any and all services I may render and all rights Frist may grant to CSI in connection with the Agreement; except to the extent I am substituted as a direct party thereunder.

6.      I will indemnify and hold CSI harmless from and against any and all taxes and other amounts, which CSI may have to pay, and any and all liabilities (including, without limitation, judgments, penalties, interest, damages, costs and expenses including reasonable outside legal fees), which may be obtained against, imposed upon or suffered by CSI, or which CSI may incur by reason of Frist's failure to deduct or withhold any and all legally required



30

amounts from the compensation in accordance with applicable law as set forth in the Agreement.

7.     I hereby waive any and all so-called "moral rights" I may have with respect to any and all results and proceeds of the services, as such rights may presently or in the future exist, by legislative enactment or otherwise.

8.     In consideration of CSI entering into the Agreement with Frist, I will grant all rights and take all steps necessary to cause Frist to render its services and perform all other obligations to be performed by it consistent with and as provided in the Agreement.

9.     This Inducement Letter will survive any termination of the Agreement.


**PARTICIPANT**


Signed by:

*[signature]*

2E97505ED5264AC...    _____    8/10/2025

Floyd Mayweather

31