# EXHIBIT 7

CONFIDENTIAL- Draft of December 12, 2025

## BOXING AND PROMOTIONAL SERVICES AGREEMENT

THIS BOXING AND PROMOTIONAL SERVICES AGREEMENT (the "**Agreement**") is made and entered into as of December 12, 2025, between Frist Apex Ventures LLC, a Florida limited liability company ("**Lender")**, for the services of Floyd Mayweather, Jr., an individual ("**Mayweather**"), and Mayweather, on the one hand, and Players Era, LLC, a Delaware limited liability company and a subsidiary of 89 Blocks Holdings, LLC doing business as EverWonder Studios ("**Players**"), on the other hand, on the terms, conditions and other provisions as set forth below. Each of Lender, Mayweather and Players are sometimes individually referred to herein as a "**Party**" and collectively as the "**Parties**."

## RECITALS

A.      Subject to the satisfaction of the Conditions Precedent (as set forth below), Players will produce, in cooperation with Netflix Worldwide Entertainment, LLC ("**Netflix**"), a boxing program which is expected to air around the world via live stream and on-demand on the Netflix platform.

B.      The main event bout of the boxing program will be a boxing match between Manny Pacquiao ("**Pacquiao**") and Mayweather (the "**Match**"), which will be a professional and sanctioned match and shall count on the official professional records of Mayweather and Pacquiao, and the final rules for which shall be subject to the mutual agreement of Pacquiao and Mayweather, and subject further to the approval of Netflix. The Match, along with the undercard bouts, any live entertainment, and any pre-shows and post-shows prior and following the Match, and customary pre-Event elements such as an open workout, press conferences, an official weigh-in, a public weigh-in, promotional taped, filmed or live events and appearances, and the related production of all of the foregoing, including a lead-up documentary, shall be defined herein as the "**Event**." For the avoidance of doubt, the Event is anticipated to include the features described in the preceding sentence, among other customary activities. The Event is expected to be held in or around the third quarter of 2026, tentatively scheduled for September 19th, 2026 and shall be mutually approved by Pacquiao, Mayweather, Players and Netflix (the "**Date**"), unless otherwise mutually agreed by the Parties, and at a location, time and venue (the "**Site**") to be approved by Pacquiao, Mayweather, Netflix and Players.

C.      Each of the Parties are entering into this Agreement to set forth the terms, conditions and other provisions of Mayweather's participation in the Event and related matters including, without limitation Mayweather's (or Lender's) financial remuneration and fringe entitlements for his participation in the Match including his compensation, amount, definition and payment terms of "Net Proceeds Compensation," as defined below, ticket allotments, stipends and per-diems, approvals and similar terms, all as set forth in this Agreement.

D.      In connection with the execution and delivery of this Agreement, Mayweather hereby directs that all amounts payable to him under this Agreement shall be paid to Lender unless otherwise agreed by the Parties and subject at all times to the terms of the NOIA (as defined below). In connection therewith, Lender shall have the one-time right to assign its right to receive payment under this Agreement to another entity designed by Mayweather (a "**Lender Designee**") provided such assignment occurs not less than forty-five (45) days prior to the Match. Payment hereunder to the Lender Designee shall be deemed to be payment to Lender and Mayweather, and Lender and Mayweather shall look solely to the Lender Designee for payments of any amounts paid by Players and/or Netflix pursuant to this Agreement that are made to the Lender Designee. Lender and Mayweather shall execute any documents and/or instruments (and shall cause the Lender Designee to execute any documents and/or instruments) required

CONFIDENTIAL

by Players and/or Netflix in order to make any payment to the Lender Designee (including, without limitation, W9, NOIA, etc.).

      E.      Players is entitled to receive from Netflix the revenue which Players intends to utilize to pay the Base Compensation to Lender and the base compensation to Pacquiao. For Player's administrative convenience, Players will direct Netflix to pay the Base Compensation (less the "Deposit" as defined below and less any other amounts that are paid to Lender or Mayweather on the day of the Match as provided in Paragraph 3(a) below) directly to Lender in satisfaction of Players' obligation to make such payment under Section 3(a)(i)(y) below. Players shall nonetheless recognize the revenue and expense related to such revenue and payment for accounting purposes (i.e., for accounting purposes, Players is the principal, Lender is the principal's payee, and Netflix is the customer). In furtherance thereof, Lender shall execute and deliver to Players a "Notice of Irrevocable Authority" (the "NOIA"), in form and substance satisfactory to Players and Netflix, that irrevocably authorizes and instructs Netflix to pay the Base Compensation (less the Deposit) to Lender directly on Players' behalf.

      F.      In connection with the Match and the Event, Players will enter into a written agreement with Pacquiao (together with all exhibits, schedules and side letters, the "Pacquiao Agreement"), and has entered or will enter into one or more written agreements with Netflix (together with all exhibits, schedules and side letters, the "**Netflix Agreement Documents**"), which collectively govern, among other things, the financing, production, distribution, marketing and exploitation of the Match and the Event.

      **NOW, THEREFORE,** in consideration of the mutual promises and agreements hereinafter set forth, and of other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, and incorporating the above Recitals as if fully set forth herein, the parties hereto agree as follows:

      1.      Conditions Precedent. Notwithstanding anything to the contrary contained in this Agreement, Players' obligations under this Agreement are subject to the fulfillment of all of the following conditions (each, a "**Condition Precedent**" and collectively, the "**Conditions Precedent**"):

      (a)      Players' receipt of copies of this Agreement and any supporting documents that in the opinion of Players are necessary to effectuate the terms of this Agreement, executed by Lender and Mayweather;

      (b)      Players entering into a written agreement for the Match and the Event with Pacquiao to be Mayweather's opponent in the Match, on terms and conditions satisfactory to Players (the "Pacquiao Agreement"), and providing Mayweather with a true, correct and complete copy of the executed Pacquiao Agreement (which may be redacted solely to remove (x) personally identifiable information of Pacquiao and his loan-out entities, and (y) information unrelated to the Match and the Event); and

      (c)      Players entering into the Netflix Agreement Documents, on terms and conditions satisfactory to Players, and providing Mayweather with a written summary term sheet describing in reasonable detail all material economic and exploitation terms thereof, including without limitation all license fees, bonuses, participations, production and distribution fees, recoupment waterfalls, and material sponsorship, merchandising and rematch provisions.

CONFIDENTIAL

2. <u>The Match</u>.

(a)     Players shall arrange for, present and promote a professionally sanctioned boxing contest as the main bout of the Event entitled *Floyd Mayweather v. Manny Pacquiao 2*. Mayweather Promotions and Manny Pacquiao Promotions (or its designee) shall be designed as the "lead promoters" in connection with the Match.  The Match shall be Mayweather's next boxing bout; provided, however, that Mayweather may participate in one (1) exhibition bout against Mike Tyson so long as such bout is fully completed on or before June 19, 2026.

(b)     The Match shall be scheduled for ten or twelve (12) rounds (to be mutually agreed) of three (3) minutes each to a decision, which shall be scored using the 10-point must system subject to the rules, regulations and directives of the applicable athletic commission having jurisdiction over boxing contests in the state in which the Match is to be held (the "**Boxing Commission**") and/or any regulatory authorities or sanctioning bodies with jurisdiction over the Match (collectively, with the Boxing Commission, the "**Governing Authorities**"), and which will be a professional and sanctioned boxing match and shall count on the official professional records of Mayweather and Pacquiao.  The Match shall occur at a weight not to exceed 147 pounds (to be mutually agreed).  Mayweather and Pacquiao shall use eight (8) or ten (10) ounce gloves (to be mutually agreed).  The Match shall be held in a 20' x 20' sized boxing ring inside the ropes or as otherwise mutually agreed.  Notwithstanding the foregoing, the number of and length of the rounds, weight, glove size and ring specifications be subject to the rules, regulations and directives of the applicable Boxing Commission and Governing Authorities for professional boxing matches in all instances.  The Parties agree that Mayweather shall receive the A-Side designation with respect to all live events, including, fight week events, such as being introduced first at open-workouts, and press conferences and walking to the ring and being announced first for the Match, and all production, marketing, advertising and promotional elements of the Event.   Except as set forth herein, all matters of billing and credit (including any live announcements) shall be determined by Pacquiao, Mayweather and Players and, in the event of an impasse, such impasse shall be resolved by Netflix which shall have the tie-breaker right in all cases.  All other boxing aspects of the Match shall be governed by and in conformity with rules that are mutually agreeable to Pacquiao, Mayweather, Players and Netflix and, in the event of an impasse, such impasse shall be resolved by Netflix which shall have the tie-breaker right in all cases; provided, however, that any such agreement or tie-breaker decision shall in all instances be subject to and superseded by the rules and determinations of the applicable Boxing Commission and Governing Authorities.  Further, pursuant the terms of the Netflix Agreement, Netflix shall have the right to approve the boxing rules related to the Match subject to the rules and regulations of any applicable Governing Authorities having jurisdiction over the Match.

(c)     The Event will be produced by Players and shall be live streamed exclusively by Netflix or its designees.  Following its live stream premiere on Netflix, the Event may be broadcast or exhibited by Netflix, its designees or licensees, or by Players, its designees or licensees, as provided in the Netflix Agreement worldwide in any and all formats and media, now known or hereafter devised, in any and all languages, in perpetuity.

(d)     Except as expressly provided otherwise in this Agreement, and subject to Netflix's rights and obligations under the terms of Netflix Agreement, and subject to Netflix's rights, approvals and controls under the Netflix Agreement, Pacquiao, Mayweather and Players shall cooperate in good faith regarding the decisions relating to the promotion of the Event and the Match which shall include the date and Site of the Match, ticket allocations, ticket scaling including VIP ticket packages, the number and location of press conferences, the undercard bouts, and other promotional activities in which Paquiao and Mayweather will participate.  In connection therewith, neither Pacquiao, Mayweather or Players shall unreasonably withhold, condition or delay approval or consent with respect to any such matters, and all decisions relating to any of the foregoing shall be within the Netflix approved "Budget" (as defined below)

Docusign Envelope ID: E77D43C7-03AD-4236-9CE7-6E6EAB13B6ED

for the Event and the Match. If, following good faith discussions, the Parties (including Pacquiao) are unable to reach an agreement on any decision relating to any of the foregoing matters, Netflix shall have the tie-breaker right and the decisions of Netflix with respect to any and all such matters shall be final, binding and controlling. Notwithstanding the foregoing, Players together with Netflix shall have the sole and exclusive right to make all decisions regarding the production of the Event including without limitation all venue costs and expenses, the production of any publicity and promotion events, appearances, press conferences and other matters as provided for in the Budget; provided, however that Lender and Mayweather shall have approval over the Site and the date of the Match, not to be unreasonably withheld, and subject to Netflix's final approval. For the avoidance of doubt, the following matters shall not be subject to the Parties or Netflix's approval rights or tie-breaker right: (i) any matters that are subject to the health and safety rules and regulations promulgated by the Boxing Commission and Governing Authorities, and (ii) compliance with all applicable local, state and federal laws.

(e)     As a condition to Players' obligations hereunder and for the purposes of securing "key man" or other insurance policies for the Match and the Event, Mayweather shall complete and pass a physical medical examination, along with an EKG and EEG, and will undergo testing customary to the industry at a time subject to Mayweather's reasonable availability. Mayweather may have his own physician present at any such medical examination. If at any time during the term of this Agreement, Mayweather refuses to participate in or attempts to cancel or postpone the Match for reason of a claimed injury or medical disability, Players shall have the right, but not the obligation, to have Mayweather examined by a medical doctor of Players' choice, at Players' expense, and, if Players so elects, Mayweather shall appear for examination on not less than two (2) business' days advance notice at Mayweather's then-current location. Mayweather may have his own physician present at any such medical examination. It is of the essence of this Agreement that Players be able to secure "key man" or other similar insurance to insure against Mayweather being unable to participate in the Match based on Mayweather's physical condition. In the event that either Pacquiao or Mayweather are unwilling or unable to submit to such medical examinations, are not medically cleared to participate in the Match, or Players is unable to obtain such key man or other insurance policies deemed necessary or desirable by Players at customary rates, then the provisions of Section 9 below shall apply. Mayweather shall submit to any further medical exams prior to the Match as may be required by the Boxing Commission and/or Governing Authorities, as applicable.

(f)     The Match shall be co-promoted by Mayweather Promotions, on behalf of Lender and Mayweather, and by Manny Pacquiao Promotions (or its designee), as the lead promoters, and Mayweather Promotions shall be included in the public address announcement at the Site for the Match immediately preceding the announcement of Pacquiao (with Mayweather to be included in first position) and shall be listed in the advertising and promotion that is produced, distributed or published by Players in first position to Pacquiao. Players' billing as producer shall be in third (last position) in the form of "in association with EverWonder Productions" (or similar as Players' shall determine) following Pacquiao and Mayweather's co-promoter billing. Lender and Mayweather (on its and his behalf and on behalf of Mayweather Promotions) acknowledge and agree that no additional compensation or other entitlements shall be paid or provided to Lender, Mayweather or Mayweather Promotions in or in connection with this Agreement, the Match, the Event or otherwise. Any inadvertent or casual omission of such co-promotion mention or credit shall not be deemed a breach of this Agreement.

(g)     The undercard bouts prior to the Match shall be determined by Pacquiao, Mayweather and Players, provided such undercard bouts are within the "Budget" (as defined below), and in the event of an impasse, Netflix shall have the tie-breaker right in all cases. Lender and Mayweather further acknowledge and agree that Netflix has final approval over all televised or streamed undercard bouts.

CONFIDENTIAL

3.  Compensation.

(a)    In full and complete compensation and consideration for all of Mayweather's services under this Agreement, including his appearance and engagement in the Match and the Event, performing his promotional obligations, and for granting the rights transferred herein, Mayweather (or Lender on Mayweather's behalf) will be entitled to the following remuneration:  (i) Twenty Seven Million Five Hundred Thousand U.S. Dollars ($27,500,000.00) (the "**Base Compensation**"), to be paid as follows:  (x) a deposit (the "**Deposit**") in the amount of Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00) payable to Lender within three (3) business days of the satisfaction of all of the Conditions Precedent, and (y) the balance of Twenty-Four Million Seven Hundred Fifty Thousand.  U.S. Dollars ($24,750,000.00) payable to Lender as soon as practical but not later than three (3) business days after the Match and subject to Mayweather and Lender's full and complete satisfaction of all of Mayweather and Lender's obligations hereunder and delivery of all materials required to be delivered by Mayweather and Lender under this Agreement, (ii) If cumulative global streaming views of the Event (measured on a live basis plus the twenty-four (24) hours immediately following the initial live broadcast across all authorized platforms) equal or exceed twenty-six million three hundred thousand (26,300,000) verified views, then Mayweather shall be entitled to a one-time bonus payment of three million, seven hundred fifty thousand U.S. dollars (US$3,750,000), payable to Mayweather (or Lender on Mayweather's behalf) no later than ten (10) business days after Players' receipt of reasonably satisfactory platform/partner statements evidencing achievement of such threshold; such bonus shall be in addition to, and not recoupable against, any Base Compensation or Net Proceeds Compensation, and (iii) Forty Five (45%) Percent of the Event Net Proceeds (the "**Net Proceeds Compensation**") paid and retained by Players related to the Event (the "**Event Net Proceeds**").  To the extent that the Boxing Commission and/or Governing Authorities require a portion of the Base Compensation to be paid immediately after the Match, such amount shall be mutually agreed between Lender, Mayweather, Players and Netflix, and shall be deducted from and reduce the remaining balance of Base Compensation payable by Netflix pursuant to the NOIA.  As used herein, "**Event Net Proceeds**" means:

(A) The gross receipts paid to Players from the media distribution of the Event (including the license fee paid by Netflix), ticket sales, merchandising, sponsorships (to the extent that sponsorships are not bought out by the media distributor (e.g., Netflix), host fees, and revenue from other sources that are earned by Players from the Event (collectively, "**Gross Receipts**"),

*Minus*

(B)  The sum of (i) all costs and expenses incurred by Players to develop, organize, produce, promote, manage, operate, distribute and license the Event and otherwise fulfill all its obligations in connection with the Event (as further described in the Netflix Agreement) including without limitation the Base Compensation amounts payable to Mayweather (or Lender) and all base compensation payable to Pacquiao (or his lending company), the compensation to all other fighters and performers, venue rental, broadcast talent, production and technical personnel, equipment rental, legal, accounting, insurance, security, travel, transportation, Event laborers, accommodations, personnel, third party vendors and service providers, subcontractors fees, fees and costs incurred to produce any audio-visual programs or series in connection with the Event, all music, audio and video clearances, all licenses and permits, announcers, ring personnel, judges, referees, and all other expenses, *plus* (ii) all costs and expenses incurred by Players to purchase, acquire and sell Event merchandise in the Event venue (such as costs of goods sold, shipping, licensing fees, returns, taxes paid or payable, labor costs, commissions and other expenses) *plus* (iii) all costs and expenses incurred by Players to offer and sell live attendance ticket sale and Players packages for the Event (such as ticket brokerage fees, service fees incurred, taxes paid or payable, labor costs, commissions and other expenses), *plus* (iv) a distribution and production fee

CONFIDENTIAL

to Players in an amount up to Eleven Million Dollars ($11,000,000). For the avoidance of doubt, this shall include traditional producing, distribution and associated out of pocket expenses that are outside of the physical production budget and shall not be double billed at any point.

(b)    Budget; Payment Timing.

(i)    At Mayweather's request, Players will provide Mayweather with a pro-forma profit and loss statement and tentative line-item budget two (2) months prior to the Event (the "**Budget**") setting forth the expected expenses (including all production related expenses, undercard bouts, etc.), an updated Budget the week of the Event, and a final Budget after the Event.  Mayweather shall have the right of meaningful consultation with respect to the initial and interim Budgets prepared by Players, but in the event of any disagreement between Players, Lender and Mayweather, Players' decisions with respect to all matters concerning the Budget shall be final and controlling.  To the extent that Players believes that the actual costs for the Event will exceed the Budget by an amount greater than ten (10) percent in the aggregate, Players shall resubmit the Budget and, in such instance, Lender and Mayweather shall have the right to approve the overage, not to be unreasonably withheld, conditioned or delayed, and subject to Netflix having the tie-breaker right in all instances (Lender and Mayweather shall provide its, his or their disapproval within 48 hours of submission of such overages by Players).  Lender and Mayweather shall have the right to propose line-item substitutions in the Budget to reduce expenses which shall be subject to Players and Netflix's reasonable approval, as applicable.  Notwithstanding the foregoing, Players shall have the right to approve and expend overages on an "emergency basis" necessitated by the exigencies of production if, in Players' good faith business judgment, such overages are necessary in order for Players to fulfill its obligations to Netflix and pursuant to the Netflix Agreement and subject to Netflix's final approval.  The Base Compensation (less the Deposit previously paid as described above and any amounts that are paid to Lender immediately after the Match) will be payable to Lender by Netflix pursuant to the NOIA no later than three (3) business days after the Event.

(i)    Players shall keep accurate books and records relating to the Budget, all receipts generated by the Event and the Match, and all amounts payable to Pacquiao (and/or his designee) hereunder, and Pacquiao (and/or his designee) shall have the right, on fifteen (15) days' prior written notice and no more than one (1) time in any twelve (12)-month period, to have an independent certified public accountant audit such books and records during Players' normal business hours. Any such audit shall be at Pacquiao's expense unless it reveals an underpayment to Pacquiao of more than ten percent (10%) for the audited period, in which case Players shall promptly pay the shortfall and reimburse Pacquiao's reasonable out-of-pocket audit costs. All information reviewed in any audit shall be kept confidential and used solely to verify payments, and these audit rights shall survive for two (2) years following the final accounting for the Event.

(ii)    The Net Proceeds Compensation will be payable to Lender no later than ten (10) business days after Players receives all revenue and pays all costs and expenses necessary to determine the Event Net Proceeds (which Players expects to be no later than thirty (30) days after the Event) but in no event more than sixty (60) days after the completion of the Event.  Players shall provide a final profit and loss statement to Lender and Mayweather together with any remittances payable to Lender within the sixty (60) day period.  Lender shall be solely responsible for any applicable tax withholdings, if any, provided that Players (and Netflix, if applicable) shall comply with all legal withholding requirements, if any, with respect to the Base Compensation and the Net Proceeds Compensation, if and as applicable.

(c)    Ticket Allocation; Scaling; Credentials.  Mayweather shall be entitled to fifty (50) complimentary tickets to the Match in the first six (6) rows with at least ten (10) seats to be ringside  and fifteen (15) in the lower bowl.  Players shall use all commercially reasonable efforts to secure such tickets as close to Mayweather's corner as possible with unobstructed views.  All matters relating to credentials including categories, the number of credentials to be issued, access levels (including in-ring

access), additions, reallocations, revocations and updates (the "Credential Plan") shall be mutually agreed in writing by Pacquiao, Mayweather and Players in good faith, such approval not to be unreasonably withheld, conditioned or delayed and shall be accorded on a most favored nations basis to each of Pacquiao and Mayweather. If and to the extent that the Parties (with Pacquiao) cannot agree on any aspect of the Credential Plan, Netflix shall have the tie-breaker right and the decision of Netflix with respect to any and all such matters shall be final and binding on the Parties. In addition, Players shall make available to Mayweather and to Pacquiao a number of tickets to be mutually agreed that may be purchased by Pacquaio and Mayweather at Player's cost (including any service or hospitality fees incurred by Players but excluding any promoter mark-up) prior to the on-sale date of the Match to the public; provided, however, that any such allocation shall not violate any commitment, contract or agreement of Players with the venue, any sponsor, Netflix or any local, state or federal ordinance, regulation or law (in the event the Parties and Pacquiao cannot agree on the ticket allocation or any aspect thereof, Netflix shall have the tie-breaker right and its decisions with respect to all such matters shall be final and binding on the Parties). Players shall provide a seating plan and initial hold map promptly following receipt of a fully-executed copy of the Site agreement (but in any event within thirty (30) days thereafter, and will use commercially reasonable efforts to provide periodic inventory updates to Mayweather through fight week upon Mayweather's request therefor.

(d)     No Further Remuneration.    Except as expressly set forth in this Agreement with respect to the Base Compensation and Net Proceeds Compensation, neither Mayweather nor Lender (or any entities rendering services on his or its behalf) shall be entitled to any compensation or remuneration of any kind or nature (including, without limitation, any entitlement to any portion of gate receipts, ticket fees, sponsorship fees, merchandising receipts or receipts from the sale, lease transfer, license or other exploitation of any broadcast, streaming, television or motion picture rights, or any other intellectual property rights relating to the Event) for participating in the Event, Match or otherwise performing his or its services under this Agreement.

4.  Marketing and Promotional Obligations.

(a)     Mayweather shall promote and publicize the Event with the goal of maximizing overall worldwide interest in and viewership of the Event. Mayweather shall cooperate and assist in the publicizing, advertising and promoting of the Event, Netflix, and, subject to Players providing no less than five (5) calendar days' prior notice to Mayweather for any promotional obligations that require Mayweather to travel from the location of his training camp in Los Angeles, California, shall appear at and participate in a reasonable number of press conferences, interviews, and other publicity, appearances or activities (any or all of which may be streamed, telecast, broadcast, recorded or filmed). Players will use commercially reasonable efforts to limit any promotional activities, press conferences and personal appearances of Mayweather to within the greater Los Angeles metropolitan area (either by phone, videoconference or in-person at his training camp or other mutually convenient location) during the thirty (30) days prior to "fight week" preceding the Match, provided, however, certain promotional appearances or press conferences that are essential to and required by Netflix during this period may require Mayweather to travel to a distant location in connection therewith. Mayweather shall participate in all traditional "fight week" interviews, promotions, weigh-ins and media days, as well as public training sessions, including a "face off" and such other media as are reasonably requested, all at times and places reasonably designated by Players. Without limiting the foregoing, Mayweather will cooperate and participate in the filming, shooting and production of photographical and video content including interviews and footage of Mayweather and his team training and preparing for the Match and as otherwise as reasonably requested to assist in the production of promotional materials such as commercials, advertisements, print-based content, merchandise, and other audiovisual and non-audiovisual content solely relating to the promotion of the Event as requested by Players or Netflix.

(b)    Mayweather, and his trainer, corner personnel and camp, advisors and family members, shall grant Players and its designees with reasonable access to film them in connection with the production of a one or two-part reality-style "24/7 style" docuseries (which is expected to run on Netflix prior to the Event) to promote the Event and the creation of feature material and social media content; provided, however, such filming and access shall not materially hinder, disrupt or interfere with Mayweather training for the Match; and provided further, that the docuseries shall not prevent or restrict Mayweather from developing or producing his own documentary about his life on a non-interfering basis and subject to the terms and conditions of this Agreement. Mayweather shall cause Mayweather's trainer, corner personnel and camp, advisors and family members to provide written clearances and permissions relating to the use of their image in the docuseries. Such access shall include, without limitation, the following: master interview with Mayweather, sit-down interviews in the gym, conference calls with media, shoot elements for the series (gym training, outside training facilities besides boxing gym, and Mayweather in his home element), full access to gym training and runs, interviews with Mayweather's trainer and corner personnel, and behind-the-scenes filming of media obligations, filming other segments, fight week and fight night activities and as otherwise reasonably requested by Players. In addition, Mayweather shall provide access on his designated media days and on at least five (5) consecutive or non-consecutive days of access, during the build-up to the Event, chosen at the reasonable discretion of Players or its designee, as the case may be, in consultation with Mayweather's representatives, to training sessions, including for the purposes of producing additional programming, including access for filming at Mayweather's training facilities at each training session as well as at pre-camp and in non-boxing locations at any point to be agreed between the Parties to enable the recording of promotional content including exclusive interview(s) with respect to the Match for use by Players, Netflix or their respective designees as well as other interviews reasonably requested by Players, Netflix or their respective designees. Players shall provide Mayweather with copies of all raw footage and all finished episodes of the docuseries for Mayweather's archival and personal use (the "**Docuseries Footage**"). Mayweather understands that the use of the Docuseries Footage for any other purpose requires the prior approval of Netflix, and Players will facilitate good faith conversations with Netflix for such approvals. Mayweather's use of such materials shall be non-exclusive and shall not interfere with, delay, or diminish Players' or Netflix's exploitation of the docuseries or related promotional content.

(c)    Mayweather shall fully cooperate and assist in the advertising, publicity, and promotion of the Event and the Match as reasonably requested by Players and Netflix. Mayweather shall use commercially reasonable efforts to comply with the promotional obligations set forth in this Section, and such obligations will include:

(i)    No less than one (1) post per week on all of Mayweather's social media channels from announcement through the Event;

(ii)    Four (4) posts the week of the announcement on all of Mayweather's social media channels, including sharing and reposting five (5) Players or Netflix social media posts (and videos) relating to the Match on his social media platforms;

(iii)    Four (4) posts the week of the press conference(s) on all of Mayweather's social media channels;

(iv)    Daily posts the week of the Event on all of Mayweather's social media channels;

8

CONFIDENTIAL

(v)     Four (4) posts the day before the Event on all of Mayweather's social media channels;

(vi)     Four (4) posts the day of the Event (prior to the start of the broadcast of the Event) on all of Mayweather's social media channels, including posting links to a pre-fight countdown show and calls to action as requested by Players;

(vii)     Signing boxing apparel and memorabilia as requested by Players and Netflix; and

(viii)     Participating in a kick-off press conference/media day which will include reasonable local and national media interviews, a fight week press conference/media day, post-fight press conferences and interviews, not less than one (1) promo shoot day to capture key art photography, AV and footage and clips for social media publicity and promotion, and one (1) press visit during and at the location of Mayweather's training camp.

Players and/or Netflix shall have the right to provide Mayweather the artwork, copy or other promotional materials for Mayweather to include in the social media posts described above. Mayweather, Players and Netflix shall create and in a timely fashion provide to Mayweather for prior approval (such approval not to be unreasonably withheld, delayed, or conditioned) any artwork, copy and promotional materials for Mayweather's social media that integrate Mayweather's image or likeness; provided, however, that if such artwork or promotional materials utilize images (photos, videos or otherwise) that were provided by Mayweather or his representatives or were integrated into artwork or promotional materials previously approved by Mayweather, then those images shall be deemed to have been pre-approved by Mayweather for all other uses and shall not be subject to Mayweather's further review or approval. If any request for approval is sent via email in accordance with the Notices provision below and Mayweather does not reject such request within forty-eight (48) hours, then such request will be deemed approved. The Parties acknowledge and agree that any requested social media posts provided to Mayweather may also include Players and/or Netflix logos and branding. Subject to the foregoing, Mayweather grants to Players, Netflix and any other event producer(s), promoters and their respective designees and assigns, the royalty-free and irrevocable right and license to use Mayweather's name, likeness, image, biography, sobriquet, personal and commercial identifiers, voice and video, at Players', Netflix's and/or such producer's, promoter's or designee's, as the case may be, sole discretion in connection with the promotion (including in connection with Netflix's marketing and sponsorship partnerships), broadcast and re-broadcast of the Event and Match, broadcast and re-broadcast of the Event and Match, in all media, now known or hereafter, in all media, now known or hereafter devised, in any and all languages, formats throughout the universe, in perpetuity, and to make such changes, alterations, modifications and additions (including without limitation digital enhancements) as Players (on Netflix's behalf) or Netflix deems reasonable or advisable to market, promote, advertise or publicize the Event in its sole and absolute discretion.

(d)     Mayweather hereby grants to Players (for the benefit and ownership of Netflix) and Netflix, and their assigns and designees, in perpetuity, without any further compensation to Mayweather or any affiliate of Mayweather (including, without limitation, Lender), the exclusive irrevocable, perpetual and royalty-free right to the results and proceeds of Mayweather's services in the Match and the Event, and all footage, photos, recordings and elements thereof, and the right to receive and retain all proceeds therefrom including without limitation all live gate and promotional rights, sponsorship rights, the unrestricted right to project, telecast, stream, photograph, record and otherwise reproduce and exploit the Match and the Event, and all recordings and elements thereof, live and at all times thereafter (including on-demand access), and the events immediately preceding and following the Match, and between the rounds, and the Event, in any and all media and technologies, in or by any manner, method or device

9

CONFIDENTIAL

(now known or hereafter developed, created or devised), in any and all languages and formats, including, without limiting the generality of the foregoing, the unlimited and unrestricted right to stream and/or telecast the Match by any and all means and in any and all media including, without limitation, live or delayed free over-the-air, streaming, cable, pay or subscription satellite or cable, PPV television by means of terrestrial, cable, satellite, direct-to-home, analogue and digital transmission as well as Video On Demand, Near Video On Demand (including without limitation all forms of SVOD, PVOD, TVOD, AVOD, etc.) and HDTV, PDAs, streaming services and other multimedia services, closed circuit, subscription, master antenna, films and tapes, for exhibition in all media and in all gauges, whether for theatrical exhibition or for sale, lease or license for home use, including audio and audio-visual cassettes and discs, CD-ROM, games and toys, and the unlimited right to deal with any or all of the foregoing, and to obtain copyright or similar protection in the United States and all other countries of the world where such protection is available in the name of Players and/or Netflix, or their nominees or assignees and all other rights, privileges, benefits, matters and things incident to or arising out of all or any of the foregoing, all in such manner as Players and Netflix in their sole discretion shall determine, including, without limitation of the foregoing, for purposes of advertising and promoting subsequent bouts, matches, events, programs and/or services including, without limitation, promotional spots and advertisements for the Netflix service generally. As between Players and Netflix, Netflix shall be the owner of all of the results and proceeds of Lender and Mayweather's services, the intellectual property, copyrights (including renewals and extensions) and publicity rights herein granted by Lender and Mayweather or on their behalf, and all materials created for use in, and in connection with, the Match, the Event and any productions and/or programs associated therewith.

(e)    Mayweather hereby irrevocably grants to Players (for the benefit of Netflix) and Netflix, and their assigns and designees, the exclusive irrevocable, perpetual and royalty-free right to use in any media and technologies, in or by any manner, method or device (now known or hereafter developed, created or devised), in any and all languages and formats, Mayweather's name, likeness, image, biography, sobriquet, personal and commercial identifiers, voice and video, and the name, likeness, image, biography, sobriquet, and commercial identifiers, voice and video of his trainers and seconds (which he represents he is authorized to grant), for the purpose of the marketing, promotion, exploitation and distribution of the Event, the Match, and the Ancillary Rights (as defined herein). Players and Netflix and their assigns and designees shall have the irrevocable, perpetual and royalty-free right to use the name, likeness, image, biography, sobriquet, personal and commercial identifiers, voice and video, of Mayweather and of his trainers and seconds, for purposes of and in connection with, commercial and merchandising tie-ups and advertisements, securing sponsorships for the Event, banners, buttons, posters, T-shirts, clothing (such as hats, hoodies and jackets), non-fungible tokens (NFTs), other digital assets currently known or yet to be developed, created or devised, jewelry and other souvenir items, and all similar products, in connection with the Match, the Event and the Ancillary Rights. All of the rights, privileges and benefits granted to Players and Netflix by Mayweather pursuant to this Section 4(e) are herein referred to as "**Ancillary Rights**."

(f)    Notwithstanding the foregoing, the Parties acknowledge and agree that Players and Netflix shall have no rights to use or permit any third party to use Mayweather's name, likeness, image, biography, personal and commercial identifiers, voice and video other to their respective promoters, producers, distributors, vendors and other third parties who are performing Event-related tasks on their respective behalf except as authorized by Players and Netflix in and in connection with rights granted by Mayweather and Lender hereunder with respect to the Match, the Event and the Ancillary Rights, and the marketing, promotion, advertising and publicity related to the exploitation of such Players or Netflix's rights granted pursuant to this Agreement.

5.    Expenses. Mayweather shall be solely responsible for paying all of his own costs and expenses related to the Match and the Event, including, but not limited to, his training expenses, boxing

CONFIDENTIAL

license and other charges from the Boxing Commission, sanctioning fees, and travel and accommodation expenses for him, his assistants and entourage and guests for all events and activities related to the Event, including, without limitation, press conferences, official announcements, and arriving and departing fighting week from the location of the Match. Notwithstanding the forgoing, if Players and/or Netflix requires Mayweather to render promotional or marketing services (other than those rendered during "fight week") at a location ("**Location**") that is more than seventy-five (75) miles from Mayweather's training camp in Los Angeles, California, Players shall provide Mayweather at Players' sole cost and expense with four (4) round trip airline tickets (two (2) of which shall be business class) to such Location for Mayweather's use, four (4) hotel room accommodations (not including incidentals which shall be the sole responsibility of Mayweather) (on the same floor, if possible but not guaranteed) one of which shall be a one (1) bedroom suite while at such Location, and exclusive ground transportation between all airports, hotels and the location where Mayweather's promotional services are to be rendered. In addition, during the week of the Match, Players shall provide Mayweather with a minimum of eight (8) hotel rooms (on the same floor, if possible but not guaranteed), one (1) of which shall be a three (3) bedroom suite (provided a three bedroom suite is available at the designated hotel), and three (3) rooms be one (1) bedroom suites at the location of the Match in the same hotel as Pacquiao (and Players shall use commercially reasonable efforts to secure Mayweather's rooms in the same wing or tower of the hotel as Pacquiao's rooms) or an alternative which is equally rated, and exclusive ground transportation between all airports, hotels and the site of the Match. Notwithstanding the foregoing, Pacquiao, Mayweather and Players shall discuss in good faith an allocation of additional hotel rooms for Pacquiao and Mayweather if Players can secure such additional hotel rooms on a complimentary basis or at a discounted rate which shall be subject to the mutual approval of Pacquiao, Mayweather and Players, not to be unreasonably withheld, conditioned or delayed and provided the cost of such additional rooms is within the Budget, and which shall be allocated on a most favored nations basis between Pacquiao and Mayweather. If the Parties and Pacquiao are unable to agree as to the allocation of hotel rooms or any related matters, Netflix shall have the tie-breaker right and its decisions with respect to any such matters shall be final and binding on the Parties and Pacquiao.

6.      Rules and Regulations.

(a)      Mayweather shall fully cooperate to ensure that all necessary medical examinations and other testing of Mayweather (including, without limitation, drug testing) are undertaken prior to the Match and likewise address all related matters in preparation for the Match to ensure full compliance with the applicable sanctioning body, Boxing Commission or other regulatory requirements. Mayweather shall submit to such medical tests that may be required by the Boxing Commission, as applicable, and/or applicable sanctioning body and understand and agree that he may be disqualified, fined, suspended or otherwise disciplined if he fails to take and pass such tests as required by the Boxing Commission.

(b)      Players shall use its reasonable efforts to comply with all statutorily required health and safety criteria during the Match as required by the Boxing Commission and/or sanctioning body having oversight over the Match and to acquire and maintain any accident or other insurance policy required by the applicable sanctioning bodies and Boxing Commission.

(c)      Mayweather's gloves shall be subject to approval by the Boxing Commission and sanctioning organizations including without limitation the Governing Authorities, as applicable. In no event will the weight of the gloves be in violation of, or contrary to, the weights stated in the rules of the sanctioning body or the rules of the Boxing Commission. The gloves shall be available for inspection by each fighter and trainer at the rules meeting, including spares and then held by the referee or otherwise pursuant to the rules of the Boxing Commission.

7.    Representations, Warranties and Covenants of Lender and Mayweather.

(a)    Lender and Mayweather represent and warrant to Players and Netflix that he is free to enter into this Agreement and perform all his obligations under this Agreement.  Lender and Mayweather further represent and warrant to Players and Netflix that there are no claims, demands, actions, criminal or regulatory matters, or causes of action pending or threatened affecting Lender and Mayweather or its or their affiliated entities or promoters which would interfere with the full and complete performance of its or his obligations hereunder, and that Lender and/or Mayweather have not heretofore entered into, and will not hereafter enter into, any contract, agreement or understanding, whether written or oral, which would interfere with its and his full and complete performance hereunder and no contracts, agreements, promises, encumbrances or other commitments have been made or exist that would or might interfere, restrict, prohibit or otherwise hinder Mayweather from participating in the Match and/or the Event, or any associated marketing, promotion, advertising or publicity as contemplated or required pursuant to this Agreement. Mayweather shall not participate in any boxing match, whether professional or exhibition, during the period between the date of this Agreement and the scheduled date of the Match; provided, however, Mayweather may participate in one (1) exhibition bout against Mike Tyson prior to the June 19, 2026.

(b)    Mayweather has and will maintain all of the licensing and authorizations necessary to perform its obligations under this Agreement, including but not limited to any professional boxing license required by the Boxing Commission and the Governing Authorities having jurisdiction over the Match.

(c)    Mayweather has or will obtain at least one hundred twenty (120) days from the date of the Match, all documents that are required  by any government agency or otherwise for Mayweather to render his services hereunder for the full period during which such services are required by Players including, without limitation, if applicable a completed   INS Form I-9 (Employment Eligibility Verification Form), original documents establishing Mayweather's employment eligibility (if required) and any and all other visas, work permits and other documents establishing Mayweather's right to enter and work in the applicable jurisdiction where his services are required including but not limited to the jurisdiction where the Match and the Event will take place.

(d)    Mayweather has not engaged and will not prior to the Match engage in any conduct described in the "Conduct Clause" set forth in Section 9(a)(iv) below.

(e)    Lender and Mayweather will indemnify, defend and hold Players and Netflix and their respective affiliates harmless from and against any and all claims, demands, actions, causes of action, losses, liabilities, cost, or expense, including without limitation reasonable attorney's fees and costs, that Players or Netflix or their respective affiliates may sustain or incur as a result of Lender and/or Mayweather's breach of any representation, warranty or covenant in this Agreement.

(f)    Players and Netflix shall each have the right, at its respective election, to obtain life or other insurance upon Mayweather in such amounts as it may determine, at its cost and expense including, but not limited to, insurance against the failure of Mayweather to appear and to participate in the Match; and Mayweather shall not have any right, title or interest in such insurance policy or the proceeds thereof.  Mayweather will cooperate in all reasonable respects and timely respond to all requests in connection with the related application and examinations.

(g)    Lender and Mayweather acknowledge and agrees that the services to be rendered or furnished by Lender and Mayweather and the rights granted to Players and Netflix hereunder

12

CONFIDENTIAL

are of a special, unique, unusual and extraordinary character, giving them peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law and could cause Players and Netflix irreparable damage and injury. Accordingly, Players and Netflix shall be entitled to injunctive and other equitable relief to prevent any breach or default hereunder, without bond, which relief shall be in addition to and without prejudice to any other rights or remedies each may otherwise or additionally have. The sole right or remedy of Lender and/or Mayweather as to any breach or alleged breach of Players or Netflix (or their respective assigns, successors or licensees) of any of the terms, conditions or other provisions of the Agreement will be the recovery of money damages, and in no event will Lender or Mayweather be entitled to equitable or injunctive relief or to enjoin, prohibit or restrict the development, production, exhibition, broadcast or other exploitation of the Match, the Event or any of the Ancillary Rights set forth herein, and the rights herein granted by Lender and Mayweather will not terminate by reason of such breach or alleged breach.

(h)     Lender and Mayweather acknowledge that the Netflix Agreement includes an exclusive first right of negotiation in favor of Netflix to produce, distribute, stream, exploit, market and promote any rematch between Mayweather and Pacquiao live and on-demand on terms to be negotiated in good faith (to be negotiated by the parties during the thirty (30) day period following the Event). Mayweather agrees to participate in good faith in any rematch negotiation.

(i)     Lender and Mayweather shall, and shall cause its personnel, contractors and employees, to comply with all applicable laws, rules, regulations and ordinances of any local, state or federal governing authority including without limitation the Boxing Commission and the Governing Authorities having jurisdiction over the Match and the Event including, but not limited to, any applicable laws relating to anti-corruption, employment, data privacy, tax withholding and athletic commission and sanctioning body rules.

(j)     All of the representations and warranties of Lender and Mayweather set forth herein shall be, and are, joint and several.

7.A   Representations, Warranties and Covenants of Players.

(a)     Players represents and warrants to Lender and Mayweather that Players is a Delaware limited liability company duly formed under the laws of the jurisdiction in which it was formed, that it is free to enter into this Agreement and perform all its obligations under this Agreement, and that neither Lender nor Mayweather has not heretofore entered into, and will not hereafter enter into, any contract, agreement or understanding, whether written or oral, which would interfere with its full and complete performance hereunder.

(b)     Players represents and warrants it has not and will not enter into any agreement, arrangement or side letter with Netflix (or any of its affiliates) for the payment of compensation, whether as a fixed fee, bonus, deferred payment or other amounts other than Players' participation in Gross Receipts as set forth in this Agreement; and as disclosed to Pacquiao pursuant to Sections 1(d) and 7.B. For clarity, Players (and/or its affiliates) shall have the right to engage its or their personnel to provide services for the Event and/or the Match in production related capacities at customary rates in lieu of hiring third parties to perform similar functions and consistent with the Budget, and such internal production compensation shall not be deemed "Gross Receipts" for purposes of this Agreement, provided that any production or distribution fee charged by Players or its affiliates shall be limited to the amount set forth in Section 3(a)(iii)(B)(iii) and any such fees shall not be double-counted or otherwise increase the aggregate charges to the Event.

13

CONFIDENTIAL

(c)    Players shall, and shall cause its personnel, contractors and employees, to comply with all applicable laws, rules, regulations and ordinances of any local, state or federal governing authority including without limitation the Boxing Commission and the Governing Authorities having jurisdiction over the Match and the Event including, but not limited to, any applicable laws relating to anti-corruption, employment, data privacy, tax withholding and athletic commission and sanctioning body rules.

(d)    Players will indemnify, defend and hold Lender and Mayweather and their respective affiliates harmless from and against any and all claims, demands, actions, causes of action, losses, liabilities, cost, or expense, including without limitation reasonable attorney's fees and costs, that Lender or Mayweather or their respective affiliates may sustain or incur as a result of Player's breach of any representation, warranty or covenant in this Agreement.

(e)    Most Favored Nations – Economic Terms. Players represents that, taken as a whole, base compensation, bonus, and the percentage of Event Net Proceeds payable to Mayweather under this Agreement is no less favorable than the amount or percentage of any analogous net participation in Event-related base compensation, bonus, and net proceeds (however defined) payable to Pacquiao under the Pacquiao Agreement. If, at any time, Pacquiao receives more favorable net participation economics with respect to the Event than Mayweather, Players shall promptly notify Mayweather in writing and this Agreement shall be deemed automatically amended so that Mayweather receives such more favorable economic terms on a prospective and retroactive basis.

8.    Personal Sponsorships.  Mayweather acknowledges and agrees that the Netflix Agreement contains certain restrictions and limitations on sponsorships including personal sponsorships for the Match and the Event including without limitation Exclusive Categories, timing limitations and prohibited categories (such as, for example and not by way of limitation, the sponsors not being a Netflix competitor or in the following Netflix prohibited categories: Unlawful gambling operators, tobacco, cannabis/CBD, firearms, adult-oriented content or services, alcohol and alcoholic beverages, energy drinks and supplements, telecommunications and other products and services to be determined, and Mayweather shall otherwise comply with Netflix's advertising or sponsorship guidelines).  Players does not guarantee that Netflix will agree to allow any such Sponsorship opportunities.  Mayweather shall provide a list of all of his pre-existing sponsorships and endorsements within thirty (30) days of the execution of this Agreement ("Disclosed Pre-existing Deals"), and Players shall use reasonable commercial efforts to obtain approval from Netflix to permit Mayweather to wear personal apparel (i.e., his robe and trunks) that contain logos, marks or other indicia reflecting Mayweather's pre-existing sponsorships and endorsements as reflected in the Disclosed Pre-Existing Deals which remain subject to Netflix's approval in each instance.

9.    Postponement or Cancellation; Right of Termination.

(a)    In the event that:

(i)    a physician licensed or recognized by the Boxing Commission certifies that Mayweather or Pacquiao is mentally or physically disabled or injured to such an extent that one or both cannot participate in the Match as scheduled;

(ii)    the Match is prevented from taking place or the Event is prevented from taking place or is rendered commercially or logistically unfeasible or impractical by reason of any act of God, fire, flood, war or act or terrorism, civil unrest, riot or other public disturbance, epidemic or pandemic (including, without limitation, the COVID-19 pandemic), labor dispute, strike or walkout, public disaster, national or regional emergency, power failure, transmission or other technical issues impacting the streaming or broadcast of the Event, other calamity, inability to secure necessary materials, closure of the venue or Site of the Match, government restrictions, ordinances or regulations which may the

CONFIDENTIAL

occurrence of the Event impractical or unduly expensive, violence or threat of violence, or any governmental or boxing or athletic commission or association enactment, determination or action or regulation, shortage of adequate power or transportation facilities, any circumstances impacting the desired venue's availability, or any other events beyond the reasonable and direct control of Players (each a "**Force Majeure Event**");

(iii)    the telecast (streaming) of the Event is delayed, prevented from occurring on the scheduled date or canceled as provided in Players' agreements for production or distribution of the telecast including, without limitation, the Netflix Agreement; or

(iv)    Netflix invokes a "Conduct Clause" in the Netflix Agreement, which shall substantially provide that if, in Netflix's good faith determination following a third-party investigation, Mayweather or Pacquiao, or any other party engaged to provide services for the Match, the Event or any production or program made or to be made in connection therewith, has engaged in conduct or otherwise participated in any situation or occurrence that brings Netflix into public disrepute, contempt, or scandal, or that reflects or would reflect unfavorably upon Netflix (or its assigns or licensees) or the Match, Event, or any production or program made or to be made in connection therewith, then Netflix (or its assigns or licensees) shall have the right to suspend and/or terminate Netflix's obligations under the Netflix Agreement;

then Players shall, within ten (10) business days after the physician so certifies, or within ten (10) business days of the occurrence of a Force Majeure Event or any other event causing the delay or termination of the Match as described in this Section 9, give Mayweather written notice of (1) the reason why the Match cannot be conducted as scheduled, and (2) Players' decision, which decision shall be within Players' sole discretion, to (x) reschedule the Match ("**Rescheduled Match**") to a date mutually agreed upon, or (y) terminate this Agreement. Should Players determine in its sole discretion to reschedule the Match hereunder, this Agreement shall remain in full force and effect during the period of any such extension or postponement. Should Players determine to terminate this Agreement, then this Agreement shall terminate and no payment shall be due to Mayweather or to Lender under this Agreement or otherwise in connection with the Event. If there is a Rescheduled Match, all of the terms, conditions and other provisions of this Agreement including but not limited to all of the terms and conditions of this Section 9 shall apply to such Rescheduled Match as if such Rescheduled Match was the initial Match contemplated pursuant to this Agreement.

(b)    If Lender or Mayweather shall fail or refuse for any reason to fully perform its or his obligations or agreements set forth in this Agreement, or breaches any representation, warranty, agreement or covenant in this Agreement, and fails to cure such failure or breach within ten (10) business days if such failure or breach occurs sixty (60) or more days from the Match (which cure period shall be reduced to two (2) business days if such failure or breach occurs less than sixty (60) days of the Match) from receipt of written notice (if such failure or breach is reasonably curable in Players' sole discretion), then in addition to any other rights and remedies it may have in such event, Players may terminate this Agreement by notice to Lender and Mayweather.

(c)    Lender and Mayweather acknowledge that Players' obligations with respect to the Event and the Match, including without limitation its payment of all amounts due to Lender and/or Mayweather under this Agreement, is contingent upon Netflix satisfying its obligations to Players under the Netflix Agreement. In furtherance thereof, Lender and Mayweather acknowledge and agree that if Netflix fails to perform its obligations or terminates the Netflix Agreement by reason of any cause, act or event, including, without limitation, due to any act or omission on the part of Mayweather or Pacquiao, or any other person, then Players may, at its sole option, terminate this Agreement upon written notice to Mayweather.

CONFIDENTIAL

(d)    If at any time after the date hereof and prior to the Match, Mayweather should commit any act or be charged with any crime or misdemeanor and due to such occurrence, the Site host, arena, distributor, Event host or sponsor informs Players or Netflix of its intention to cancel its contract with Players or Netflix for the Match or Event, Players shall have the right and option, in its sole discretion, and in addition to all of its other rights and remedies, to terminate this Agreement upon notice to Mayweather, without any further obligation or liability to Lender or Mayweather.

(e)    If Players exercises its right to terminate this Agreement pursuant to any of the preceding provisions of this Section 9(a) through (d) above or any other provision of this Agreement including, without limitation, Section 2(e) above, neither Lender nor Mayweather shall have any further rights hereunder, and Players shall have no further obligations under this Agreement including, but not limited to, with respect to the Base Compensation, the Net Proceeds Compensation or otherwise.   In the event of any termination by Players pursuant to this Section 9, Lender and/or Mayweather shall immediately, but within ten (10) calendar days, return to Players any and all monies or sums paid or advanced to Lender or Mayweather in connection with this Agreement in full.   Notwithstanding the foregoing, if the Match or the Rescheduled Match, if such Match is rescheduled pursuant to the provisions of this Section 9, does not occur as a direct result of Pacquiao's inability to obtain medical clearance to participate in the Match (or the Rescheduled Match, as the case may be), and Mayweather is ready, willing and able to participate in the Match (or the Rescheduled Match, as applicable) and Mayweather is not in breach or default of any of the terms, conditions or other provisions of this Agreement, then Players at the request of Netflix may substitute a new opponent in the place of Mayweather to be mutually approved by Players, Netflix and Mayweather (Mayweather's approval not to be unreasonably conditioned, withheld or delayed) for a new boxing match to occur and, in the event Players is unable to secure a closed deal terms with a new opponent by January 31, 2027, then Mayweather shall retain the Deposit as a termination fee in lieu of any other remuneration, compensation or payments pursuant to this Agreement (including, without limitation, the balance of the Base Compensation and/or the Net Proceeds Compensation).

10.    Integrity of Performance.

(a)    During the term of this Agreement, Mayweather shall be ready, willing and able to participate in the Match to the best of his ability and shall honestly compete and give an honest exhibition of skills.  Without limiting any of Players' rights or remedies at law or in equity, Players shall have the right to terminate this Agreement with respect to the Match if Mayweather is not ready, willing and able to participate in the Match to the best of his ability.

(b)    Mayweather and his accompanying personnel shall conduct themselves in a reasonable manner in conformity with public conventions, morals and standards of decency while at the Site of the Match or otherwise participating in activities relating to the Event and shall not do or commit any act that could degrade Mayweather, Pacquiao, Netflix, Players or the entities which own or manage the Site of the Match, or any Event host or sponsor, or television broadcaster, distributor or exhibitor, or their respective affiliates and related parties, or subject any of them to public hatred, contempt, scorn, ridicule or disrepute, or shock or offend the patrons or employees of any such entity, prejudice their standing in the community or subject them to liability.  A breach of this provision shall entitle Players to terminate its obligations under this Agreement.

11.    Governing Law; Jurisdiction and Venue.  This Agreement is to be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and to be fully performed therein.  Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the

CONFIDENTIAL

determination of the scope or applicability of this Agreement to arbitrate (collectively, a "**Dispute**"), shall be submitted to final and binding arbitration in New York City in the County of New York pursuant to the arbitration rules of JAMS, or its successor ("**JAMS**"), pursuant to the procedure set forth below. The arbitration will be initiated and conducted according to either the JAMS Streamlined Arbitration Rules (for claims at or under US$250,000) or the JAMS Comprehensive Arbitration Rules (for claims over US$250,000), except as modified herein, in effect at the time the request for arbitration is made (the "**Arbitration Rules**"). The Parties agree that a Dispute will include the determination of the scope or applicability of this Agreement to arbitrate and the arbitrability of the Dispute, including but not limited to any claim of waiver. The arbitration will be conducted before a single neutral arbitrator appointed in accordance with the Arbitration Rules. Unless the Parties agree otherwise, the neutral arbitrator will be a former or retired judge with substantial experience in matters involving the entertainment industry, who is affiliated with JAMS. The arbitrator will follow New York substantive law in adjudicating the Dispute. The arbitrator will provide a detailed written statement of decision which will be part of the arbitration award. The arbitrator's award will be final and binding except to the extent that limited judicial review is permitted by applicable law. The Parties will equally pay all JAMS arbitration costs and the arbitrator's fees; provided, however, that the prevailing party in any arbitration as determined by the arbitrator shall be entitled to recover its costs and expenses of arbitration, including without limitation reasonable attorneys' fees and costs. The parties waive the right to seek punitive damages and the arbitrator will have no authority to award such damages. Further, the arbitrator shall have no authority to enjoin, restrict, prohibit or otherwise impede the broadcast, exhibition or other exploitation of the Match, the Event or any of the Ancillary Rights set forth in this Agreement. If either Party refuses to perform any or all of its obligations under the final arbitration award within thirty (30) days of such award being rendered, then the other Party may confirm or enforce the final award in any court of competent jurisdiction in New York City, New York. All Parties consent to the personal jurisdiction of the state and federal courts located in the County of New York, for purposes of confirming or enforcing any arbitration award. Judgment on the award may be entered in any court having competent jurisdiction. **THE PARTIES UNDERSTAND AND AGREE THAT BY CONSENTING TO ARBITRATION, THEY ARE WAIVING THE RIGHT TO A TRIAL BY JURY.**

12.     Entire Agreement.  This Agreement sets forth the entire understanding and agreement of the parties hereto regarding the subject matter hereof, and supersedes all prior agreements, statements, negotiations and understandings (whether written or oral, express or implied) between the parties hereto regarding such subject matter. This Agreement may only be modified by a writing signed by both parties.

13.     Further Assurances.  Lender and Mayweather shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, without limitation, a standard boxing contract in such form as may be required by the local governmental authority with jurisdiction over the Match and/or the world organization(s) sanctioning the Match, if applicable. In the event of any conflict between the terms of this Agreement and any standard boxing contract, the terms of this Agreement shall prevail. No Party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby. Without limiting the foregoing, Lender and Mayweather shall promptly execute, deliver, file or consent to the filing of, and comply with, all contracts, agreements and other documents, if any, as may be required by any Governing Authority, or by Players, in each case as it pertains to Mayweather participating in the Match in a manner consistent with the terms and conditions set forth in this Agreement.

14.     Counterparts.  This Agreement may be executed in counterparts, including by electronic signature, each of which shall be deemed an original and all of which shall together constitute one and the same instrument.

17

CONFIDENTIAL

15.    <u>Notices</u>.  Any notice required or desired to be given hereunder shall be in writing and sent via e-mail as follows:

a) <u>To Players Era, LLC</u>:

Players Era, LLC
460 Park Avenue  South
7th Floor
New York, NY 10016
Attn: Mike Beck
Email: Mike.Beck@Everwonder.studio and legal@everwonder.studio

b) <u>To Lender or Mayweather</u>:

Frist Apex Ventures LLC
7300 West Camino Real, Ste. 201
Boca Raton, FL  33433
Attention:  Jona Rechnitz
Email: jona@vadaproperties.com

16.    <u>Announcement and Confidentiality</u>.  The official announcement of the Match will be made as and when determined by Players and Netflix and after meaningful consultation with Mayweather.  Mayweather will not disclose or make any comment, press release or social media post concerning the existence of this Agreement or the Match prior to such official announcement. Mayweather will maintain the terms of this Agreement as strictly confidential and will to refrain from publicly announcing or reporting such terms, unless and until expressly authorized in writing by Players. Mayweather will maintain the terms of this Agreement, and any copies or summaries of the Pacquiao Agreement and the Netflix Agreement Documents provided pursuant to Sections 1 and 7.B, as strictly confidential and will refrain from publicly announcing or reporting such terms, unless and until expressly authorized in writing by Players; provided that Mayweather may disclose such information on a confidential, need-to-know basis to his attorneys, accountants, tax advisors and other professional representatives who are subject to professional or contractual confidentiality obligations.

17.    <u>Assignment</u>.  Subject to Players entering into the Netflix Agreement, Netflix is an intended third-party beneficiary of the rights granted by Lender and Mayweather hereunder.  Players and Netflix shall each have the right to assign, license or transfer any or all of the rights granted to it hereunder to any other person, firm or corporation in connection with the performance of its obligations or exploitation of any of the rights set forth herein, including, without limitation, to third parties engaged by Players or Netflix to assist with the production, distribution, marketing or promotion of the Event and/or Match, and to its designated production a licensed professional boxing promoter engaged to stage, arrange and promote the Match and the Event of which it is a part.

*[Signature Page Follows]*

Docusign Envelope ID: F77D43C7-03AD-423C-9CE7-6E6EAB13B6ED

CONFIDENTIAL

IN WITNESS WHEREOF, each of the Parties hereto as executed this Agreement as of the date first above written.


**PLAYERS ERA, LLC**,
a Delaware limited liability company


By_____

Title_____


**FRIST APEX VENTURES LLC**
a Florida limited liability company


By_____

Title_____

Mgr


_____
**FLOYD MAYWEATHER, JR.**