UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
CSI ENTERTAINMENT, LLC, CSI SPORTS
EVENTS, LLC, and CSI ENTERTAINMENT
EVENTS, LLC,

<em>Plaintiffs</em>,

CASE NO. 1:26-CV-05150 (VSB)

– against –

FLOYD MAYWEATHER, JR. and
FRIST APEX VENTURES LLC,

<em>Defendants</em>.
------------------------------------------------------------X

## **SPECIALLY APPEARING DEFENDANT FLOYD MAYWEATHER, JR.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

SINGER WEINSTEN WOLF & JONELIS LLP
2049 Century Park East, Suite 2400
Los Angeles, California 90067
(310) 556-3501
*Attorneys for Specially Appearing Defendant*
*Floyd Mayweather, Jr.*

7843-2

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................6

II.     SUMMARY OF ARGUMENT ...................................................................................6

III.    STATEMENT OF FACTS ..........................................................................................8

       A.      The Parties. ......................................................................................................8

       B.      In May 2025, Mayweather Agrees to Fight Zambidis. .......................................9

       C.      Beginning in August 2025, Rechnitz Uses Frist Apex to Contract with CSI and Others for Additional Mayweather Fights. ...........................................................9

       D.      CSI Learns About the EverWonder Agreements on January 7, 2026 and About the Zambidis Fight on February 3, 2026. ...................................................................10

       E.      In February 2026, CSI Enters into a Series of Agreements with Frist Apex and EverWonder Regarding the Mayweather-Pacquiao and Mayweather-Tyson Fights. .............................................................................................................................11

       F.      After Mayweather Posts About the Zambidis Fight on Instagram on March 2, CSI Does Not Seek Injunctive Relief to Prevent the Fight from Proceeding. ..............12

       G.      Even After Mayweather Confirms the Zambidis Fight at a Press Conference on May 7, CSI Does Not Seek Injunctive Relief to Prevent the Fight from Occurring. ....................................................................................................................13

       H.      Plaintiffs Repeatedly Delay the Mayweather-Tyson Fight Because They Cannot Perform Their Contractual Obligations in a Timely Manner. ...............................13

IV.     STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF .........................................15

V.      LEGAL ARGUMENT ...............................................................................................15

POINT I

THERE IS NO BASIS FOR PLAINTIFFS TO SEEK A TRO REGARDING THE

PACQUIAO OR TYSON FIGHTS ...............................................................................15

POINT II

PLAINTIFFS CANNOT ESTABLISH THE REQUISITE ELEMENTS FOR A
PRELIMINARY INJUNCTION OR TRO TO STOP THE ZAMBIDIS FIGHT.............16

A.      Plaintiffs Cannot Establish a Likelihood of Success on the Merits of Their
Claims Against Mayweather........................................................................................16

B.      Plaintiffs Cannot Demonstrate They Are Likely to Suffer Irreparable Harm ....19

   1.  Plaintiffs' Purported Harm Is Highly Speculative. ...........................................19

   2.  Plaintiffs' Delay in Seeking Injunctive Relief Undermines Their Claim of
       Irreparable Harm. ..............................................................................................22

   3.  Plaintiffs Have an Adequate Remedy at Law. ...................................................23

   4.  Plaintiffs' Own Conduct Guarantees Minimal Harm from the Zambidis Fight. 24

C.      The Balance of the Equities Weighs Against Plaintiffs and in Favor of
Mayweather.................................................................................................................25

   1.  Plaintiffs' Inexcusable Delay in Seeking Injunctive Relief Weighs Against
       Them. ..................................................................................................................25

   2.  Plaintiffs' Unclean Hands Weigh Against Them...............................................26

   3.  The Requested Relief Will Unquestionably Harm Mayweather. .......................26

D.      The Relief Sought by Plaintiffs Is Not in the Public Interest. ............................27

POINT III

IN THE ALTERNATIVE, THE COURT SHOULD SET THE MOTION FOR
PRELIMINARY INJUNCTION FOR HEARING AS A REGULARLY NOTICED
MOTION.........................................................................................................................27

VIII.  CONCLUSION.........................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias v. Solis*,
    754 F. Supp. 290 (E.D.N.Y. 1991) ...................................................................................17, 18

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020).........................................................................................................23

*In re Document Techs. Litig.*,
    275 F. Supp. 3d 454 (S.D.N.Y. 2017)........................................................................................15

*JTH Tax, LLC v. Agnant*,
    62 F.4th 658 (2d Cir. 2023) .................................................................................................19, 23

*Madison Square Garden Boxing, Inc. v. Shavers*,
    434 F. Supp. 449 (S.D.N.Y. 1977) ...........................................................................................18

*Madison Square Garden Corp. III v. Carnera*,
    52 F.2d 47 (2d Cir. 1931).............................................................................................................18

*Majorica, S.A. v. R.H. Macy & Co., Inc.*,
    762 F.2d 7 (2d Cir. 1985) (per curiam)....................................................................................22

*Paradigm Sports Mgmt., LLC v. Pacquiao*,
    Case No. 30-2021-01207553, July 1, 2024, Minute Order Adopting Tentative ....................17

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945)........................................................................................................................26

*SportsChannel America Associates v. National Hockey League*,
    186 A.D.2d 417 (1st Dep't 1992) ...............................................................................................25

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
    60 F.3d 27 (2d Cir. 1995)...........................................................................................................22

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008)............................................................................................................................15

**Statutes**

15 U.S.C. § 6301(9) ....................................................................................................................16

**Court Rules**

Fed. R. Civ. P. 65....................................................................................................................15

Local Civil Rule 7.1(c) .............................................................................................................29

**Other Authorities**

19 N.Y.C.R.R. §§ 207.1(a), 206.5(a).........................................................................................16

## I.     INTRODUCTION

Defendant Floyd Mayweather, Jr. ("Mayweather") specially appears to oppose Plaintiffs CSI Entertainment, LLC ("CSI Entertainment"), CSI Sports Events, LLC ("CSI Sports") and CSI Entertainment Events, LLC's ("CSI Events") (collectively referred to herein as the "CSI" or "Plaintiffs") Motion for Preliminary Injunction and Temporary Restraining Order Pursuant to Fed. R. Civ. P. 65 (ECF Nos. 5-10) ("Motion") and respectfully submits this Memorandum of Law in Opposition thereto.

## II.     SUMMARY OF ARGUMENT

Plaintiffs' claimed emergency is one of their own making. By their own admission, Plaintiffs have known about Mayweather's June 27, 2026 fight against Mike Zambidis ("Zambidis") in Athens since February 3, 2026 – *over four and a half months ago* – but made a tactical decision to stop the fight through Greek counsel. Plaintiffs have no explanation, reasonable or otherwise, for waiting until eight days before the scheduled fight to move for a temporary restraining order ("TRO") and preliminary injunction to prevent the Mayweather-Zambidis event from taking place.

Plaintiffs are not entitled to the extraordinary equitable relief they belatedly seek because they cannot meet their burden to establish a likelihood of success on the merits, likelihood of suffering irreparable harm, a balance of equities in their favor or furtherance of public interest.

First, Plaintiffs cannot demonstrate a likelihood of success on the merits of their claims for breach of contract and unjust enrichment. *See generally* ECF No. 1 ("Compl."), ¶¶118-137. CSI's agreements pertaining to Mayweather's fights are void ab initio because they contemplate CSI's operation as an unlicensed boxing promoter, in violation of New York and federal law. CSI also contracted with Defendant Frist Apex Ventures LLC ("Frist Apex"), a company owned by a friend of Jona Rechnitz ("Rechnitz"), Mayweather's now estranged former manager and proven fraudster. At the time, Mayweather was not aware of all the representations being made by Frist Apex and Rechnitz to CSI. Moreover, CSI continued to transact business with Rechnitz and Frist Apex even after learning that Rechnitz had retained all monies paid by CSI as purported

"advances" to Mayweather, negotiated conflicting agreements with multiple parties and generally acted in bad faith. Even setting aside these substantial questions concerning the validity and enforceability of the agreements, CSI never had the ability to produce Mayweather's fights with Mike Tyson ("Tyson") or Manny Pacquiao ("Pacquiao"). In fact, CSI entered into a separate agreement conceding the right of a different entity to put on the Mayweather-Pacquiao fight in Las Vegas in September 2026 and distribute the fight on Netflix.

Second, Plaintiffs cannot establish they are likely to suffer irreparable harm. In fact, their months-long delay in seeking injunctive relief after learning about the Mayweather-Zambidis fight on February 3, 2026 and affirming a September 2026 date for the Mayweather-Pacquiao fight in February 2026 directly contradicts their claim of irreparable harm. Nor does the substance of Plaintiffs' alleged injury support emergency relief. Plaintiffs' claimed harm is highly speculative and, at best, has only attenuated links to the Zambidis fight or the Pacquiao fight — the latter of which has no scheduled date and may not occur at all. Moreover, even assuming such harm were to occur, the claimed harm is wholly economic in nature. CSI has an adequate remedy at law: monetary damages.

Third, the balance of the equities is not in Plaintiffs' favor. Plaintiffs' lack of diligence in pursuing injunctive relief weighs against them. As opposed to the hypothetical harm they may suffer if the Court denies their Motion, a TRO preventing the Zambidis fight from going forward or a preliminary injunction prohibiting the Pacquiao fight will certainly cause significant harm to Mayweather.

Fourth, granting the injunction is not in the public's interest. Shutting down the Mayweather-Zambidis event (and a hypothetical future Mayweather-Pacquiao fight) punishes millions of innocent ticket holders and viewers, as well as those who have invested significant resources in producing these events.

For these reasons and as set forth below and in the accompanying declarations of Stephen Espinoza, Walter Jordan and Cesie C. Alvarez and exhibits thereto, Mayweather requests that the

7

Court deny Plaintiffs' Motion in full, or, in the alternative, deny the request for TRO and set the request for **a** preliminary injunction for hearing on regular notice.

### III.    STATEMENT OF FACTS

#### A.    The Parties.

Mayweather is an undefeated professional boxing champion with a 50-0 record. He is widely regarded as one of the best boxers of all time. Over his career, he has won 15 major world championships spanning five weight classes (from super featherweight to light middleweight). He holds many world records and has received numerous honors, including his induction into the International Boxing Hall of Fame in the class of 2021.

CSI is a sports media company with rights to boxing and other high-profile fight-related sports events. ECF No. 1 ("Compl.") ¶ 18. CSI Entertainment launched a sports network under the FIGHT SPORTS brand in 2012. *Id.* ¶ 19.

Beginning in or about 2017, Jona Rechnitz developed Mayweather's trust and confidence and insinuated himself into Mayweather's life. Declaration of Cesie C. Alvarez ("Alvarez Decl.") ¶ 3, Ex. B ("Rechnitz Compl."), ¶ 2. By 2024, Rechnitz was not only working as his manager, but had assumed the de facto role of Mayweather's investment manager, real estate advisor and banking liaison. Rechnitz Compl. ¶ 2. Over the following years, Rechnitz carried out a fraudulent scheme with the help of his cronies Ayal Frist ("Frist") and Alexander Seligson ("Seligson"), using Frist's shell company, Frist Apex, to misappropriate or divert at least $175 million of Mayweather's money and assets for his and his co-conspirators' benefit. *See id.* ¶¶ 1-2. Mayweather severed ties with Rechnitz after uncovering evidence of his tortious and bad faith conduct, including concealment of his criminal past. Mayweather hired his current business manager, Walter Jordan ("Jordan"), in or about February 2026. Declaration of Walter Jordan ("Jordan Decl."), ¶ 2. On May 21, 2026, Mayweather and various of his business entities sued Rechnitz, Frist, Seligson and Frist Apex in the New York County Supreme Court, asserting seven causes of action, including fraud, breach of fiduciary duty, aiding and abetting and conversion. Rechnitz Compl. ¶¶ 49-83.

**B.**     <u>**In May 2025, Mayweather Agrees to Fight Zambidis.**</u>

In the spring of 2025, Mayweather agreed to fight Zambidis in Athens, Greece. On May 15, 2025, Mayweather signed a Letter of Authority authorizing Front Row Fight Series and Keane Anis to act on his behalf to organize, negotiate, promote and coordinate the Zambidis fight. Jordan Decl. ¶ 4, Ex. A. At all times, Mayweather had actual personal knowledge of his commitment to the Zambidis fight and intended to participate in the event and honor his contractual obligations. Jordan Decl. ¶ 5.

**C.**     <u>**Beginning in August 2025, Rechnitz Uses Frist Apex to Contract with CSI and Others for Additional Mayweather Fights.**</u>

In or about August 2025, Rechnitz negotiated a deal between Frist Apex and CSI Sports, granting the latter rights in a Mayweather-Tyson exhibition fight. Compl. ¶ 22; *see also* ECF No. 1-1 ("M-T Agr."). This August 2025 agreement not only granted CSI broadcast and distribution rights but also contemplated that CSI would produce and promote the Mayweather-Tyson event. M-T Agr., §§ 3-4, 6. The fight was to occur no later than April 25, 2026, unless certain conditions occurred that extended the date to June 30 or by agreement of the parties. *Id.* §§ 10, 12. Under the terms of the agreement, CSI granted Mayweather the right to participate in one other boxing event against a different opponent prior to the Mayweather-Tyson fight. *Id.* § 12.

In or about October 2025, Rechnitz, Frist Apex and/or others acting through Frist Apex participated in negotiations, payment arrangements or asserted rights with Players Era, LLC dba EverWonder Studios ("EverWonder") to a proposed Mayweather-Pacquiao fight. Jordan Decl. ¶ 6. The arrangements contemplated that EverWonder, in cooperation with Netflix, would produce and exploit the Mayweather-Pacquiao event. *Ibid.*

On November 6, 2025, Rechnitz purported to negotiate another deal, this time between Frist Apex and CSI Entertainment, for the same Mayweather-Pacquiao fight. ECF No. 1-5 ("M-P Agr."); *see also* Jordan Decl. ¶ 6. As with the August agreement between Frist Apex and CSI, the deal signed in November 2025 provided that CSI would produce, promote and distribute the

Mayweather-Pacquiao fight. *See* M-P Agr. §§ 3, 6-7, 11. CSI Sports paid a $2.5 million advance to Frist Apex, purportedly for Mayweather's benefit, as part of the November agreement. Compl. ¶ 50. However, there is no evidence to suggest the funds received by Rechnitz through Frist Apex were ever transferred to Mayweather or his entity, Mayweather Promotions. Jordan Decl. ¶ 6. In December 2025, Frist Apex signed a Boxing and Promotional Services Agreement with EverWonder setting forth amended terms concerning the Mayweather-Pacquiao fight to be aired worldwide via live stream and on-demand on the Netflix platform.

Mayweather did not personally negotiate Frist Apex's contracts with CSI. *Id.* ¶ 7. At the time those agreements were negotiated and executed, Mayweather's business affairs relating to these proposed events were being handled by Rechnitz and Frist Apex. *Ibid.* Consistent with his pattern and practice of concealing material information or misrepresenting his activities, Rechnitz did not inform Mayweather about his double-dealing concerning rights to a Mayweather-Pacquiao event. *Ibid.; see also* Rechnitz Compl. ¶¶ 2-3, 23-24.

> ### D. CSI Learns About the EverWonder Agreements on January 7, 2026 and About the Zambidis Fight on February 3, 2026.

On or about January 7, 2026, CSI first learned that Rechnitz, through Frist Apex, had negotiated a deal with EverWonder for the Mayweather-Pacquiao fight to take place in the fall of 2026. Compl. ¶ 62. At some point thereafter, CSI discovered that Frist Apex had retained the advance paid under the November agreement, although CSI had intended to pay the money for Mayweather's benefit. ECF No. 9 ("PMOL") at p. 5.

CSI first learned about the Mayweather-Zambidis fight on February 3, 2026, when Zambidis posted about it on his Instagram account. Compl. ¶ 65. Zambidis' Instagram post stated the fight was scheduled to take place on June 27, 2026 at the OAKA Arena in Athens, Greece. *See* ECF No. 1-9.[1] Despite having actual knowledge of the Mayweather-Zambidis fight, including

---

[1] Plaintiffs conveniently omit from their moving papers any mention of the February 3 date on which they first became aware of the Zambidis event. Instead, Plaintiffs insinuate they first learned of it on March 2 through Mayweather's social media post. PMOL at p. 8.

when and where it would occur, CSI did not request an injunction to prevent the event from going forward.

### E.    In February 2026, CSI Enters into a Series of Agreements with Frist Apex and EverWonder Regarding the Mayweather-Pacquiao and Mayweather-Tyson Fights.

Even after learning in early January that Rechnitz and Frist Apex had purported to grant rights in the Mayweather-Pacquiao fight to CSI despite having previously granted them to EverWonder and that Rechnitz had concealed Mayweather's pre-existing contractual commitment to fight Zambidis from them, Plaintiffs opted to continue doing business with him. PMOL at pp. 5-8. On February 22, 2026, CSI signed the First Amendment to the August 2025 agreement with Frist Apex ("First Amendment"). Compl. ¶85. The First Amendment extended the deadline for the Mayweather-Tyson fight to proceed from April 25 to May 31, 2026, absent certain circumstances. ECF No. 1-16 ("First Am."), § 3. Despite the mounting evidence that Rechnitz's word was worthless, the First Amendment purported to include a representation and warranty made jointly by Frist Apex and Mayweather (who was not a signatory) that no agreements existed for Mayweather to participate in any other, non-CSI fight and would not make any announcements or public statements regarding same. *Id.* § 8.

On the same day, Frist Apex and CSI also signed a Second Amendment to the November 2025 agreement. ECF No. 1-14 ("Second Am."). Therein, CSI acknowledged that the Mayweather-Pacquiao fight was scheduled to occur on September 19, 2026 at The Sphere in Las Vegas and broadcast on Netflix. *Id.* §§ 2-3. Again, despite Rechnitz's proven track record of deception, the Second Amendment contained the same purported representation and warranty clause from the First Amendment. Compare *id.* § 11 and First Am. § 8. Also, despite knowing full well that Mayweather was fighting Zambidis on June 27, the Second Amendment contained a purported representation and warranty clause by Mayweather (again, not a signatory), that he "has not entered into any other agreements with any third parties to participate in any other professional or exhibition boxing matches subsequent to [May 31, 2026]." Second Am. § 2. The Second

11

Amendment obligated Frist Apex to repay CSI the $2.5 million advance and gave CSI "the exclusive right with respect to [Mayweather]'s Subsequent Fight" following the fight against Pacquiao. *Id.* §§ 7-8.

On February 23, 2026, CSI signed a settlement agreement with EverWonder to fully and finally resolve all disputes regarding the rights to the Mayweather-Pacquiao event rights. *See* ECF No. 1-15 ("CSI-EW Agr."). By way of this settlement agreement, CSI again expressly agreed that the fight would take place on September 19, 2026 in Las Vegas. *Id.* § 2. CSI received valuable CSI/FIGHT SPORTS logo placements and branding for the Mayweather-Pacquiao fight, including at press conferences, in digital signage at the venue, "in any all marketing, advertising or promotional materials (digital or otherwise) connected with" the fight and verbal mention during the Netflix broadcast of the fight. *Id.* § 1. CSI received approval rights over EverWonder's ability to film behind the scenes content or footage of Mayweather at the Tyson event. *Id.* § 6. CSI also received guaranteed VIP tickets and credentials to the Mayweather-Pacquiao fight and a payment of $5 million dollars within three days after the completion of the event. *Id.* §§ 3-4.

The CSI-EverWonder agreement contained a mutual release, confidentiality and non-disparagement clause:

> Upon execution, the settlement agreement will constitute a full and final resolution of all claims between CSI/FIGHTSPORTS, EverWonder, and Netflix relating to this Event [the Mayweather-Pacquiao fight] and the terms hereof shall be mutually kept strictly confidential; and the parties shall further not-disparage each other.

*Id.* § 5.[2]

### F.      After Mayweather Posts About the Zambidis Fight on Instagram on March 2, CSI Does Not Seek Injunctive Relief to Prevent the Fight from Proceeding.

Plaintiffs contend that Mayweather breached the CSI agreements merely by posting about the Zambidis fight on March 2, 2026. PMOL at pp. 8-9; *see also* Compl. ¶ 81. Yet CSI did not

---

[2] CSI breached the settlement agreement by publicly filing a copy of the document in this action, to which EverWonder is not a party.

terminate the parties' agreements or seek injunctive relief at that time. This was clearly a tactical decision. The legal steps taken by CSI consisted of retaining Greek counsel to send cease-and-desist notices to various third parties located overseas that were involved in putting on the fight. Compl. ¶ 96. On March 12, 2026, CSI's Greek counsel sent a cease-and-desist notice to Ticketmaster Hellas. *Ibid.* The next day, Ticketmaster Hellas suspended ticket sales for the Zambidis fight. *Id.* ¶ 97. For no discernable reason, CSI assumed that its overseas legal maneuvers had caused Mayweather to "back[ ] down" and not fight Zambidis. PMOL at p. 9 (citing Compl. ¶ 99).

### G. Even After Mayweather Confirms the Zambidis Fight at a Press Conference on May 7, CSI Does Not Seek Injunctive Relief to Prevent the Fight from Occurring.

On May 7, Mayweather held a press conference at which he publicly confirmed his participation in the Zambidis fight on June 27. Compl. ¶ 101. On May 12, Richard Miele of CSI sent Mayweather, Jordan, Frist Apex and others a letter on CSI Sports letterhead, accusing Mayweather and Frist Apex of materially breaching the CSI agreements and "stating an openness to resolve the parties' disputes." PMOL at p. 9; Compl. ¶ 102; ECF No. 22. Again, CSI made a conscious decision not to apply for injunctive relief. Instead, CSI reengaged Greek counsel to take legal action overseas to prevent the fight from occurring. Compl. ¶¶ 105-06. CSI also convinced DAZN Media Holdings LLC ("DAZN"), which began advertising the Mayweather-Zambidis fight on June 11, not to broadcast the event. PMOL at p. 10. On June 17, DAZN removed all references to the event from its platform, confirming its withdrawal as a broadcaster of the fight. *Id.* at pp. 10-11.

### H. Plaintiffs Repeatedly Delay the Mayweather-Tyson Fight Because They Cannot Perform Their Contractual Obligations in a Timely Manner.

Under the August 2025 agreement, the Mayweather-Tyson event was required to occur on or before April 25, 2026. M-T Agr. § 10. In September 2025, CSI issued a press release promising the fight was slated for "spring 2026." ECF No. 1-3. The April 25 date was announced publicly.

Alvarez Decl. ¶ 5, Ex. D. However, by February, CSI needed more time. In the Second Amendment, the parties agreed to extend the deadline for the Mayweather-Tyson fight to May 31, 2026. Second Am. § 3.

During an appearance on The Ariel Helwani Show on March 11, 2026, Tyson appeared wearing a right-hand cast, but confirmed his hand was not broken. Alvarez Decl. ¶ 4, Ex. C. Tyson referred to it as "just a little sprain." *Ibid.* He also indicated his belief that the fight against Mayweather was going to take place on April 25, 2026 (the first reported target date for the fight). *Ibid.*; *see also* Alvarez Decl. ¶ 5, Ex. D. However, on May 12, 2026, CSI purported to invoke their right to postpone the Mayweather-Tyson fight to some time on or before December 31, 2027, claiming that Tyson had broken his hand and could not fight Mayweather in the next six months. *Id.*; *see also* ECF No. 1-22; M-T Agr. § 28 (at p. 23).[3]

On May 20, 2026, CSI publicly characterized Tyson's injury as a broken hand (and not "just a little sprain"), and announced Mayweather-Tyson event was pushed from spring 2026 to fall 2026. *See* Alvarez Decl. ¶ 5, Ex. D. CSI then reneged on its settlement agreement with EverWonder and the agreements with Frist Apex by demanding that Netflix postpone the Mayweather-Pacquiao fight (which Netflix and EverWonder had later confirmed for September 25, 2026) so the Tyson event could take place first. Jordan Decl. ¶ 22. CSI's position was also contrary to the plain terms of the August 2025 agreement with Frist Apex, which expressly permits Mayweather "to engage in another boxing [m]atch (the **'Replacement Fight'**) prior to December 31, 2026" if Tyson is injured and unable to fight. M-T Agr. § 28 (at p. 23).

CSI demanded that the Tyson event be scheduled for September 26. Jordan Decl. ¶ 22. When EverWonder and Mayweather refused to postpone the Mayweather-Pacquiao fight, CSI threatened litigation, refused to act in good faith to find a workable resolution and ultimately caused Netflix to withdraw from the event. *Ibid*. As a result, there are currently no scheduled dates for Mayweather's fights against Pacquiao or Tyson. *Ibid*.

---

[3] The applicability of this tolling provision is doubtful at best. Plaintiffs claim Tyson is unable to fight until November 30, 2026, yet have demanded that the Mayweather-Tyson fight occur two months earlier in late September. Jordan Decl. ¶ 22.

On June 9, 2026, after CSI's material breaches of its contractual obligations and interference with the Netflix-EverWonder deal, Mayweather terminated all agreements with CSI through counsel. ECF No. 5-1. As of the date of this filing, Mayweather has already traveled to Greece for the Zambidis fight. Jordan Decl. ¶ 23.

## IV.     STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

Federal Rule of Civil Procedure 65 governs the procedure for obtaining TROs and injunctions in federal court. Fed. R. Civ. P. 65. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). "A preliminary injunction is an ***extraordinary remedy never awarded as of right***. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 22 (emphasis added). Courts must also "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Ibid.* As the moving parties, Plaintiffs bear the burden of persuasion on each factor for preliminary injunctive relief. *See In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 460-61 (S.D.N.Y. 2017) ("A preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a <u>clear showing</u>, carries the burden of persuasion.' [Citations.]") (emphasis in original).

## V.     LEGAL ARGUMENT

### POINT I

### THERE IS NO BASIS FOR PLAINTIFFS TO SEEK A TRO REGARDING THE PACQUIAO OR TYSON FIGHTS

Plaintiffs group the Zambidis fight scheduled for Saturday with two other fights – Mayweather-Pacquiao and Mayweather-Tyson – for the dual purposes of inflating their purported harm and confusing matters. Jordan Decl. ¶¶ 20, 22. There is ***no*** basis for emergency relief with

respect to the Mayweather-Pacquiao or Mayweather-Tyson fights, neither of which have a scheduled date or venue at this point. *Ibid.* In fact, the Mayweather-Pacquiao fight scheduled for September 25, 2026 is no longer going forward after Netflix's withdrawal from the event as a direct consequence of CSI's threats. *Id.* ¶ 22. There is no likelihood of irreparable harm or any urgency given these recent developments. For this reason alone, the Court should deny Plaintiffs' request for a TRO or preliminary injunction concerning the Mayweather-Pacquiao and Mayweather-Tyson events.

**POINT II**

**PLAINTIFFS CANNOT ESTABLISH THE REQUISITE ELEMENTS FOR A PRELIMINARY INJUNCTION OR TRO TO STOP THE ZAMBIDIS FIGHT**

**A.    Plaintiffs Cannot Establish a Likelihood of Success on the Merits of Their Claims Against Mayweather**

Plaintiffs cannot establish a likelihood of success on the merits because there are substantial disputes concerning the validity, enforceability and termination of the agreements on which Plaintiffs rely. The agreements were negotiated by Jona Rechnitz through Frist Apex, both of which are currently being sued by Mayweather and related entities for fraud, breach of fiduciary duty, and the alleged misappropriation of substantial assets. Alvarez Decl. ¶ 3, Ex. B. Mayweather did not personally negotiate the agreements with CSI and was not aware of all the agreements and representations being made by Rechnitz and Frist Apex concerning rights to a potential Mayweather-Pacquiao fight. Jordan Decl. ¶ 7. Those allegations go directly to the circumstances under which the agreements were procured and whether the agreements may be enforced against Mayweather.

Separately, the CSI-Frist Apex agreements are arguably unenforceable because of their illegal purpose, namely permitting CSI to act as an unlicensed promoter of boxing events in violation of New York state and federal law (*i.e.*, 19 N.Y.C.R.R. §§ 207.1(a), 206.5(a); 15 U.S.C. § 6301(9)). Declaration of Stephen Espinoza ("Espinoza Decl.") ¶¶ 5-6. There is precedent for courts to declare agreements involving regulated boxing activities void where a party lacks the

16

required license. *See, e.g.*, Alvarez Decl. ¶ 6, Ex. E (*Paradigm Sports Mgmt., LLC v. Pacquiao*, Case No. 30-2021-01207553, July 1, 2024, Minute Order Adopting Tentative).

The CSI agreements were also suspect because they were inconsistent with the significantly higher prices commanded by Mayweather in the past as one of the most accomplished and skilled boxers of his generation. *Id.* ¶ 8. In that regard, Plaintiffs acknowledge that the Mayweather-Pacquiao fight between "two of the greatest fighters in boxing history" would be a "rematch of their 2015 bout which Mayweather won by unanimous decision" and "Mayweather's undefeated record will be on the line." PMOL at p. 4. Plaintiffs apparently concede that the rematch would be even more lucrative than the 2015 original, which was the highest grossing boxing event of all time, "generating $560 million in PPV buys." *Ibid.*

Moreover, before Plaintiffs sought emergency relief, Mayweather formally terminated the CSI agreements on June 9, citing CSI's fraud, failure of consideration and nonperformance. *See* ECF No. 5-1. Whether that termination was effective is itself a disputed issue. *See* PMOL at p. 10. At a minimum, the existence of that dispute precludes any finding that Plaintiffs have demonstrated a clear likelihood of success on the merits sufficient to justify extraordinary injunctive relief.

By contrast, the agreement governing Mr. Mayweather's exhibition bout against Zambidis predates the CSI agreements and is not subject to any comparable challenge. See Jordan Decl. ¶¶ 4-5, Ex. A. Plaintiffs seek an order that would require Mr. Mayweather to breach that preexisting agreement based on contracts whose validity and enforceability are hotly contested. The Court should not grant emergency equitable relief where the effect would be to compel breach of an earlier agreement while the parties dispute whether Plaintiffs' later-acquired rights are enforceable at all.

The authorities cited by Plaintiffs do not support such a result. The cases on which Plaintiffs rely generally involve circumstances in which a fighter entered into a subsequent fight agreement after already having an exclusive contractual relationship with a promoter or manager, the validity and enforceability of which was uncontested. *See Arias v. Solis*, 754 F. Supp. 290 (E.D.N.Y. 1991) (granting preliminary injunction to prevent Solis from participating in a boxing match pursuant to

17

a deal he made without approval from his manager Arias, in violation of the express terms of their existing valid and enforceable management contract); *Madison Square Garden Boxing, Inc. v. Shavers*, 434 F. Supp. 449 (S.D.N.Y. 1977) (granting preliminary injunction to prevent Shavers, who had an existing and enforceable exclusive contract with MSG, from participating in a fight with a different promoter pursuant to a "later-made more attractive offer"); *Madison Square Garden Corp. III v. Carnera*, 52 F.2d 47 (2d Cir. 1931) (affirming trial court's grant of preliminary injunction to prevent Carnera from participating in a fight with boxer Sharkey, where the Sharkey deal was entered into after Carnera had already entered into a contract with MSG, which prohibited him from fighting anyone without MSG's permission). Here, the chronology is reversed. The Zambidis fight agreement existed ***before*** the agreements on which Plaintiffs now rely. And the validity and enforceability of the CSI agreements is hotly contested. Plaintiffs therefore do not seek to preserve an existing exclusive relationship, but to force Mayweather to breach a valid and binding contract for the Zambidis fight that was already in place before Plaintiffs entered the picture.

Nor have Plaintiffs shown that the Zambidis exhibition constitutes the type of impermissible intervening fight contemplated by the parties' agreements. The original August agreement contemplated that the Tyson event would occur no later than April 25, 2026. M-T Agr. § 10; *see also* Jordan Decl. ¶ 11. Plaintiffs subsequently amended the agreement to extend the event date to May 31, 2026. First Am. § 3; Jordan Decl. ¶ 13. Both deadlines passed without the Tyson event taking place. *Id.* ¶¶ 16-17. CSI was never prepared to proceed with the Tyson event, though Mayweather remained ready, willing and able to fight Tyson if CSI succeeded in organizing and staging the fight. *Id.* ¶¶ 18-19. Had Plaintiffs performed their obligations and staged the Tyson event within the contemplated timeframe, the Zambidis exhibition would have occurred afterward and no intervening-fight issue would exist. *Id.* ¶¶ 20-21. The only reason the Zambidis exhibition is now characterized as an intervening fight is because the Tyson event never occurred.

Plaintiffs attempt to avoid this reality by contending that Tyson's alleged injury permits the Tyson event to be delayed until November 30, 2026. But Plaintiffs have not established that the

18

circumstances surrounding Tyson's alleged injury satisfy the contractual requirements necessary to invoke that extension. Indeed, the record suggests that Tyson suffered only a sprain. *See* Alvarez Decl. ¶ 4, Ex. C. Whether the injury provisions of the agreement apply under these circumstances presents yet another disputed issue that cannot support the extraordinary relief Plaintiffs seek.

Accordingly, Plaintiffs have failed to establish the clear likelihood of success on the merits necessary to justify a TRO or preliminary injunction.

### B.   Plaintiffs Cannot Demonstrate They Are Likely to Suffer Irreparable Harm

In the Second Circuit, "[a] showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 672 (2d Cir. 2023) (citing *Faiveley Transp. Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir. 2009) quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). Plaintiffs cannot satisfy that burden.

### 1.   Plaintiffs' Purported Harm Is Highly Speculative.

Plaintiffs' claims of irreparable harm rest on a series of assumptions regarding future events that may never occur. Plaintiffs contend that the Mayweather-Zambidis exhibition will diminish the value of the proposed Tyson event, interfere with a proposed Mayweather-Pacquiao event and impair their ability to develop future business opportunities. But each of those theories rests on a series of speculative assumptions, beginning with the premise that Plaintiffs will actually succeed in staging the future events from which they claim to derive value. The record demonstrates otherwise.

Plaintiffs entered into the Tyson Agreement in August 2025. For months thereafter, Plaintiffs had the opportunity to secure a venue, finalize event logistics, arrange funding, and otherwise prepare the event for execution. Yet despite repeated extensions and amendments, the Tyson event never materialized. As set forth in the Jordan Declaration, Plaintiffs repeatedly delayed the event and never reached a point at which they were prepared to proceed. *See* Jordan

19

Decl. ¶¶ 11, 13-21.[4] Plaintiffs' prediction that they will suffer harm from the Zambidis exhibition therefore depends on the assumption that they will ultimately accomplish what they have thus far been unable to do.

The speculative nature of Plaintiffs' claimed harm is further demonstrated by their evolving explanation for why the Tyson event has not occurred. Plaintiffs originally contemplated that the Tyson event would occur in Spring 2026. They now contend that Tyson's alleged injury permits the event to be postponed until November 30, 2026—within days of blowing up the Mayweather-Pacquiao fight arrangements by demanding the Tyson event be held on September 26, 2026. Jordan Decl. ¶ 22.

Plaintiffs' theory of irreparable harm is also difficult to reconcile with the structure of the Tyson Agreement itself. The original agreement expressly contemplated that Mayweather could participate in one professional boxing match prior to the Tyson event. *See* M-T Agr. § 12; Jordan Decl. ¶ 12. Thus, the parties themselves recognized that Mayweather's participation in another bout would not necessarily destroy the value of the Tyson event. While Plaintiffs may contend that any such fight required their approval, that distinction is of no moment. The bargained-for terms of their August 2025 agreement confirm that Plaintiffs *knew* Mayweather's mere participation in another boxing match prior to the Tyson event would not diminish its value. Plaintiffs' own signed writing undermines their assertion that any intervening appearance by Mr. Mayweather necessarily causes irreparable harm.

The speculative nature of Plaintiffs' position is further illustrated by their continued reliance on Mike Tyson himself. Tyson recently participated in a highly publicized bout in which many observers viewed his performance as underwhelming. *See* Espinoza Decl. ¶¶ 7-11. Despite that outcome, Plaintiffs continued to pursue the Tyson event, continued to tout Tyson's commercial value, and continued to represent to this Court that the Tyson fight remains a uniquely valuable,

---

[4] Similarly, CSI's ability to stage a Mayweather-Pacquiao fight remains uncertain. EverWonder obtained exclusive rights relating to Pacquiao's professional boxing services before CSI entered into its subsequent agreements concerning a Mayweather-Pacquiao bout. Espinoza Decl. ¶ 13. To the extent those rights exist, CSI could not independently arrange, promote, or stage a Mayweather-Pacquiao fight without EverWonder's participation or consent. *Id.* ¶ 14.

once-in-a-lifetime event. Plaintiffs cannot simultaneously maintain that Tyson's public performance did not materially diminish the value of a Tyson event while insisting that any appearance by Mr. Mayweather necessarily will diminish the value of future events.

Plaintiffs' own allegations regarding the Zambidis exhibition further undermine their irreparable-harm argument. Plaintiffs allege that Ticketmaster Hellas ceased selling tickets for the event and that DAZN agreed not to broadcast the event. *See* PMOL at pp. 8-9. Those facts make Plaintiffs' theory of harm less plausible. Jordan Decl. ¶¶ 18-19. Plaintiffs contend that the Zambidis exhibition will damage the marketability and value of future Mayweather events. But if ticket sales have been halted and no broadcaster will carry the event, the likelihood that the exhibition will generate the widespread exposure or market impact Plaintiffs fear is substantially diminished. Espinoza Decl., ¶¶ 18-19.

Plaintiffs also speculate that the Zambidis exhibition will impair their plans to launch a future media platform. PMOL at pp. 3-4. But Plaintiffs do not explain why the Tyson event itself could not continue to serve as the centerpiece of that launch – if they are ever able to produce it. Plaintiffs remain free to market, broadcast, and monetize the Tyson event and any subsequent events. Their assertion that a foreign exhibition bout (especially one that has been hampered by the withdrawal of a major ticketer and a respected broadcaster) would somehow derail an entire future media venture is unsupported by evidence and rests on nothing more than conjecture. Espinoza Decl. ¶¶ 17, 21, 25. The success of a media platform is not dependent on a single event or a single athlete and successful platforms require a consistent slate of premium content. Jordan Decl. ¶¶ 21-22. To the extent that distributors, broadcasters, sponsors or other commercial partners may be hesitant to participate in CSI events, a more likely explanation is CSI's own repeated postponements of the Tyson fight and questions regarding whether the event will occur. *Id.* ¶¶ 23-25.

Ultimately, Plaintiffs ask the Court to assume that a foreign exhibition bout will diminish Mr. Mayweather's value, that Plaintiffs will eventually stage a Tyson event, that Plaintiffs will thereafter stage a subsequent event and that those future events will be harmed in some presently

unknowable manner. Such conjecture falls well short of the showing of imminent and irreparable injury required for extraordinary injunctive relief.

### 2. Plaintiffs' Delay in Seeking Injunctive Relief Undermines Their Claim of Irreparable Harm.

The Second Circuit has clearly stated that a district court should generally consider delay in assessing irreparable harm. *See Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 39 (2d Cir. 1995). "Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm rather than occasioned prejudice." *Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985) (per curiam). By their own admission, Plaintiffs have known about the Mayweather-Zambidis fight for nearly five months – since ***February 3, 2026***, when Zambidis posted about it on his Instagram account. Compl. ¶ 65; ECF No. 1-9. Yet, in nowhere in their Motion or in the supporting declarations do Plaintiffs offer any legitimate or credible reason for waiting months, until ***eight days*** before the June 27 fight, to seek injunctive relief from the Court. Likewise, they have no reasonable explanation for failing to move for injunctive relief after March 2, 2026 (when Mayweather posted about the event on his Instagram) or after May 7, 2026 (when Mayweather publicly stated at a press conference his intent to go forward with the fight as scheduled on June 27). *See* Compl. ¶¶ 95, 101, Ex. 20.

Plaintiffs had ample time for legal maneuvers and nevertheless chose to do everything ***but*** apply for injunctive relief. Plaintiffs retained and directed Greek counsel to undertake efforts to stop the Zambidis fight in March 2026. Compl. ¶¶ 96-97. Plaintiffs took further action to stop the Zambidis fight through Greek counsel in again in May and June, and convinced broadcaster DAZN to withdraw its participation in the exhibition fight. Compl. ¶¶ 96-97, 105-06; *see also* ECF No. 6 ("Miele Decl.") ¶¶ 3-6 (describing successful legal efforts from June 11-17 to prevent DAZN from advertising or broadcasting the Zambidis fight). Indeed, Plaintiffs' Co-CEO, Richard Miele, sent a cease-and-desist letter to Mayweather and his manager, Walter Jordon, on May 12, in which

Miele claimed Mayweather was "in material breach" of the CSI-Frist Apex agreements "by announcing, marketing and pursuing the fight in Greece." Compl. ¶ 102; ECF No. 1-22. Still, Plaintiffs did not commence this action.

Plaintiffs' lack of diligence for over four and a half months is inconsistent with their eleventh-hour protestations that they will be irreparably harmed if the Zambidis fight takes place on Saturday.

### 3.    <u>Plaintiffs Have an Adequate Remedy at Law.</u>

Plaintiffs cannot establish irreparable harm because the injuries they identify are fundamentally economic and therefore compensable through an award of money damages. "[I]njunctive relief is only proper when a plaintiff, lacking an adequate remedy at law, is likely to suffer from injury at the hands of the defendant if the court does not act in equity." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146-47 (2d Cir. 2020).

Plaintiffs' allegations of harm consist almost entirely of purported lost business opportunities and lost economic value. Plaintiffs contend the Mayweather-Zambidis exhibition will diminish the value of the Tyson event, interfere with future promotional opportunities, reduce broadcast and media revenues, impair sponsorship opportunities and otherwise hamper Plaintiffs' ability to profit from future events. PMOL at p. 13. These alleged injuries are economic in nature. If Plaintiffs ultimately prove that Defendants breached an enforceable agreement and that Plaintiffs lost revenue, profits, sponsorship opportunities, licensing opportunities or other business benefits as a result, those losses can be calculated and compensated through an award of damages.

Nor is it sufficient that the CSI agreements contain language stating that a breach of exclusivity rights would result in irreparable harm. PMOL at p. 4 (citing M-P Agr. § 3 and Compl. ¶¶ 38, 45). As the Second Circuit recently explained, contractual recitations of irreparable harm are not dispositive. A plaintiff seeking injunctive relief must still come forward with evidence demonstrating actual irreparable injury rather than relying on speculation, conclusory assertions or contractual boilerplate. *JTH Tax*, 62 F.4th at 674 (holding that contractual language stating a breach would result in irreparable harm, loss of goodwill, and other intangible injuries did not

establish irreparable harm absent evidence that such injuries would likely occur). Plaintiffs have failed to make that showing here.

Indeed, the relief Plaintiffs seek confirms the adequacy of a legal remedy. Plaintiffs ask this Court to prohibit Mr. Mayweather from participating in the June 27, 2026 Zambidis exhibition because it will purportedly reduce the value of future promotional opportunities. But the alleged injury, if any, is simply that Plaintiffs believe they will earn less money from future events than they otherwise would have earned. That is quintessential economic harm. If CSI is able to prove the elements of their causes of action, CSI can be made whole with an award of compensatory damages. Accordingly, the extraordinary relief of a TRO or preliminary injunction is not warranted here.

### 4. Plaintiffs' Own Conduct Guarantees Minimal Harm from the Zambidis Fight.

Plaintiffs' allegations concerning the Mayweather-Zambidis exhibition demonstrate why any purported harm is minimal. Plaintiffs allege that, after asserting their purported rights and contacting them, Ticketmaster Hellas suspended ticket sales for the event and DAZN declined to broadcast it. PMOL at pp. 8-11. To the extent those allegations are true, Plaintiffs themselves have taken steps that reduce the event's visibility, audience reach, and commercial impact. Espinoza Decl. ¶¶ 17-19.

Plaintiffs' argument that the Zambidis exhibition poses a substantial threat to the value of future Mayweather events is simply not credible when they simultaneously brag about interfering with the fight. If Plaintiffs' actions have in fact limited the event's exposure, then any corresponding impact on Plaintiffs' purported contractual rights and future business opportunities is necessarily diminished. This further demonstrates that Plaintiffs' claims of irreparable harm are speculative and overstated.

24

**C.**     **The Balance of the Equities Weighs Against Plaintiffs and in Favor of Mayweather.**

        **1.**     **Plaintiffs' Inexcusable Delay in Seeking Injunctive Relief Weighs Against Them.**

Plaintiffs admittedly learned of the Mayweather-Zambidis fight no later than *February 3, 2026* – nearly five months before the event was scheduled to take place. By March 2, 2026, they knew Mayweather had announced and was marketing the event on social media. By May 7, 2026, Plaintiffs knew Mayweather publicly expressed his intent to proceed with the fight on June 27, as scheduled. Yet Plaintiffs waited until eight days before the Mayweather-Zambidis event to seek emergency injunctive relief.

New York courts have recognized that such delay weighs heavily against a party seeking emergency equitable relief. In *SportsChannel America Associates v. National Hockey League*, 186 A.D.2d 417, 418 (1st Dep't 1992), the court denied a preliminary injunction where the plaintiff delayed seeking relief until broadcast plans had already been finalized and the season was imminent. The court concluded that the plaintiff's delay weighed against it in the balance of the equities. The same principle applies here. Having waited for months while the Zambidis event continued to move forward, Plaintiffs' request that the Court halt the event on a weeks' notice smacks of bad faith and is not equitable.

By contrast, granting the requested TRO would cause immediate and concrete harm to Mayweather (who is already in Greece) and third parties. Mayweather would be prevented from performing under a preexisting agreement relating to the Zambidis exhibition, and the promoters, vendors and other entities involved in staging the event would suffer the consequences of a last-minute injunction. Espinoza Decl. ¶ 19. Plaintiffs' months-long delay, coupled with the substantial disruption that would result from an injunction issued days before the event, weighs the balance of the equities decisively against granting relief.

### 2.    Plaintiffs' Unclean Hands Weigh Against Them.

A party seeking equity must come to the Court with clean hands. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945) (a party "who comes into equity must come with clean hands" if relief is to be granted). Plaintiffs do not. Among other things, Plaintiffs seek to enforce agreements procured through transactions involving Frist Apex and Rechnitz, whose conduct is the subject of pending fraud and fiduciary-duty claims brought by Mayweather. The validity of the agreements they ask the Court to enforce is doubtful because those agreements contemplate CSI acting as an unlicensed promoter in violation of New York state and federal law. *See* Espinoza Decl. ¶¶ 5-6. Plaintiffs have repeatedly demonstrated their inability to stage the Tyson event within the timeframes contemplated by the parties' agreements. Jordan Decl. ¶¶ 11, 13-21. There is also evidence that CSI has acted in bad faith and with malicious disregard for their contractual obligations, including by insisting that the Mayweather-Pacquiao fight be postponed (despite contractually acknowledging and agreeing to EverWonder's and Netflix's plan to stage the fight in September 2026), publicly filing a confidential settlement agreement and making unreasonable demands that ultimately derailed the event. Jordan Decl. ¶ 22. The inference of Plaintiffs' unclean hands should result in a denial of the equitable relief they have requested.

### 3.    The Requested Relief Will Unquestionably Harm Mayweather.

By contrast, the harm to Mr. Mayweather from the requested injunction is neither speculative nor remote. Plaintiffs seek an order preventing Mr. Mayweather from participating in the Mayweather-Zambidis exhibition scheduled for June 27, 2026 and, more broadly, restricting his ability to participate in future bouts until Plaintiffs determine that their contractual demands have been satisfied.

Granting such relief would immediately prevent Mr. Mayweather from performing under a preexisting agreement relating to the Zambidis exhibition and would expose him to potential contractual liability arising from his inability to perform. It would also deprive him of the compensation and business opportunities associated with the event. Unlike Plaintiffs' alleged

26

injuries, which depend upon a chain of assumptions concerning future events that may never occur, the harm to Mr. Mayweather from an injunction would be immediate, concrete, and certain.

### D.    The Relief Sought by Plaintiffs Is Not in the Public Interest.

The public interest does not favor the extraordinary relief Plaintiffs seek. The public has no interest in enjoining multiple scheduled live sports events and restricting an individual's ability to practice his profession based on speculation and reference to purported contractual rights that are vigorously disputed.

Nor is it in the public interest to issue a last-minute injunction that would disrupt an event scheduled to occur in a matter of days and for which Mayweather has already flown to Greece. Jordan Decl. ¶ 23. This is particularly true where, as here, Plaintiffs waited over four and a half months after learning of the Zambidis exhibition before seeking emergency relief. The true victims of the TROs and injunctions sought are members of the public who have spent money on tickets and travel arrangements and those who have acted in reliance on the Under these circumstances, the public interest weighs against the issuance of a temporary restraining order or preliminary injunction.

### POINT III

### IN THE ALTERNATIVE, THE COURT SHOULD SET THE MOTION FOR PRELIMINARY INJUNCTION FOR HEARING AS A REGULARLY NOTICED MOTION

If the Court is not inclined to deny Plaintiffs' Motion in its entirety, the Court should schedule a hearing on a future date sufficient to allow the Motion to be fully briefed on regular notice. The Zambidis fight is the only confirmed event and there is little, if any, evidence that its occurrence will cause Plaintiffs harm. *See* Espinoza Decl. ¶¶ 7-11, 17-19. There are no confirmed dates for the Mayweather-Pacquiao and Mayweather-Tyson fights at present, primarily – if not exclusively – because of CSI own conduct. Jordan Decl. ¶¶ 10-22. There is simply no emergency here.

## VI.    CONCLUSION

For the foregoing reasons, Specially Appearing Defendant Floyd Mayweather, Jr. respectfully submits that the Court should deny Plaintiffs' Motion in its entirety. In the alternative, Defendant Floyd Mayweather, Jr. asks the Court to deny Plaintiffs' Motion with respect to the requested TRO and set the request for preliminary injunction for evidentiary hearing at a date sufficiently in the future to permit the parties to fully brief the matter.

Dated:  Los Angeles, California
       June 24, 2026

Respectfully submitted,

SINGER WEINSTEN WOLF & JONELIS LLP

By: ____*/s/ Melissa Y. Glass*_____
      Melissa Y. Glass (application for admission
      to SDNY bar to be filed promptly forthwith)
      Cesie C. Alvarez (5504972)
2049 Century Park East, Suite 2400
Los Angeles, California 90067
(310) 556-3501
mglass@singerlaw.com
calvarez@singerlaw.com
*Attorneys for Specially Appearing Defendant*
*Floyd Mayweather, Jr.*

28

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL CIVIL RULE 7.1</u>

The undersigned, counsel of record for Specially Appearing Defendant Floyd

Mayweather, Jr., certifies that this brief contains 7,636 words, which complies with the word-

count limitations of Local Civil Rule 7.1(c).

Dated: June 24, 2026                     By:    *s/ Cesie C. Alvarez*
                                                 Cesie C. Alvarez 5504972
                                         *Attorneys for Specially Appearing Defendant*
                                         *Floyd Mayweather, Jr.*