UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CSI ENTERTAINMENT, LLC, CSI SPORTS
EVENTS, LLC, and CSI ENTERTAINMENT
EVENTS, LLC,

                                                                    Case No. 26-cv-5150 (VSB)

                     *Plaintiffs*,

        – against –

FLOYD MAYWEATHER, JR. and
FRIST APEX VENTURES LLC,

                    *Defendants*.
-----------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING
ORDER**

 

JUDD BURSTEIN, P.C.
825 Third Avenue, 21st Floor
New York, New York 10022
(212) 974-2400
*Attorneys for Plaintiffs*

Plaintiffs CSI Entertainment, LLC, CSI Sports Events, LLC, and CSI Entertainment Events, LLC (collectively, "CSI"), submit this Reply Memorandum of Law in further support of their motion for a Temporary Restraining Order and Preliminary Injunction against Defendant Floyd Mayweather, Jr. ("Mayweather").[1]

## ARGUMENT

### POINT I

### MAYWEATHER HAS CONCEDED BY HIS SILENCE THAT CSI HAS MET THE FIRST PRONG OF THEIR BURDEN ON THIS MOTION

Mayweather has misstated the law by contending that CSI must demonstrate a likelihood of success on the merits to prevail here.  Doc. No. 16, Mayweather's Memorandum of Law in Opposition ("Mayweather MOL") at p. 15.  To the contrary, CSI can alternatively meet the first prong of the preliminary injunction test by demonstrating "'sufficiently serious questions going to the merits to make them a fair ground for litigation….'"  *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (citation omitted).

Putting aside the fact that CSI plainly meets this burden, Mayweather's failure to correctly cite the governing law necessarily means that he has not rebutted CSI's arguments on this score. *See* Doc. No. 9, CSI's Memorandum of Law in Support, at pp. 15-17.

### POINT II

### MAYWEATHER HAS FAILED TO REBUT CSI'S CLAIM THAT THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS

In any event, Mayweather's arguments that CSI has not shown a likelihood of success on the merits are unavailing.

---

[1]  In this Reply Memorandum of Law, Plaintiffs adopt the same defined terms used in CSI's Verified Complaint ("CSI Complaint") and their moving papers.  *See* Doc. Nos. 1 and 9.

A. **MAYWEATHER'S CLAIMS AGAINST JONA RECHNITZ AND FRIST APEX VENTURES LLC ARE IRRELEVANT**

Mayweather erroneously contends that his Verified Complaint in *Mayweather v. Rechnitz, et. al.*, Index No. 156603/2026 (Sup. Ct. N.Y. Cty.) ("Rechnitz Complaint") demonstrates that CSI does not have a likelihood of success on the merits in this action:

> Plaintiffs cannot establish a likelihood of success on the merits because there are substantial disputes concerning the validity, enforceability and termination of the agreements on which Plaintiffs rely. The agreements were negotiated by Jona Rechnitz through Frist Apex, both of which are currently being sued by Mayweather and related entities for fraud, breach of fiduciary duty, and the alleged misappropriation of substantial assets…. Mayweather did not personally negotiate the agreements with CSI and was not aware of all the agreements and representations being made by Rechnitz and Frist Apex concerning rights to a potential Mayweather-Pacquiao fight…. Those allegations go directly to the circumstances under which the agreements were procured and whether the agreements may be enforced against Mayweather.

Mayweather MOL at p. 16.

This argument is specious for a number of reasons.

**First**, Mayweather does not dispute the facts that:

a. On or about August 10, 2025, Mayweather signed the August 2025 Inducement Letter, Exhibit 1 to the CSI Complaint at pp. 30-31, that was incorporated by reference into the Tyson Agreement. CSI Complaint at ¶ 31;

b. On August 11, 2025, CSI paid Frist $2 million pursuant to Paragraph 13 of the Tyson Agreement. Exhibit 2 to CSI Complaint;

c. On or about November 6, 2025, Mayweather signed the November 2025 Inducement Letter, Exhibit 5 to the CSI Complaint at pp. 33-34, that was incorporated by reference into the Exclusive Mayweather Fight Agreement. CSI Complaint at ¶ 31;

d. On November 6, 2025, CSI paid Frist $2.5 million pursuant to Paragraph 13 of the Exclusive Mayweather Fight Agreement. *See* Exhibit 6 to CSI Complaint;

2

e.   On February 22, 2026, both Mayweather and Frist signed the Tyson Amendment. Exhibit 16 to CSI Complaint; and

f.   On March 1, 2026, CSI satisfied a provision of Paragraph 4 of the Tyson Amendment by paying Mayweather $150,000 cash directly by delivering the money, at his instruction, to Chelsea Rae Flowers.  *See* CSI Complaint at ¶¶ 92-94; Exhibits 18 and 19 to CSI Complaint.

**Second**, while the Rechnitz Complaint alleges theft and fraud by Rechnitz and Frist, it does not allege any misconduct in connection with the agreements with CSI or even mention boxing (aside from one time to describe Mayweather).  *See* Doc. No. 16-5 at *passim*.  More importantly, it does not allege that Frist failed to pay over to Mayweather the $4.5 million received from Frist, even though it was filed on May 21, 2026 – long after CSI made those payments.  CSI Complaint at ¶¶ 31 and 50.

**Third**, given that Mayweather has inexplicably failed to submit a Declaration,[2] there is no credible proof that he "was not aware of all the agreements and representations being made by Rechnitz and Frist Apex concerning rights to a potential Mayweather-Pacquiao fight." Mayweather MOL at p. 16.  Jordan's Declaration does not cure this deficiency because he has no credible basis for making a claim as to what Mayweather knew or did not know.  Indeed, Jordan does not even state that Mayweather told him that he was unaware.  *See* Jordan Dec. at *passim*.

---

[2]   Mayweather, through counsel, received a copy of CSI's motion on June 19, 2026.  *See* the accompanying Declaration of Victor Weberman, at ¶¶ 7-9.  While Walter Jordan ("Jordan") states in his Declaration, at ¶ 23 thereof, that Mayweather is in Greece, he does not state when Mayweather traveled there or why he could not execute a Declaration after he arrived.  *See* Doc. No. 16-1, Declaration of Walter Jordan ("Jordan Dec.").  Further, being outside of the United States is not an impediment to executing a Declaration.  *See* 28 U.S.C. § 1746.

We acknowledge that (a) the Federal Rules of Evidence do not strictly apply in the preliminary injunction context and that the inadmissibility of evidence "goes to weight, not preclusion," *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010), (b) the Court is precluded from "[c]ategorically giving no weight to the" Jordan Dec. *New York v. Griepp*, 991 F.3d 81, 97 (2d Cir. 2021), *vacated for rehearing*, 997 F.3d 1258 (2d Cir. 2021).  However, Jordan's claim is exponentially outweighed by the following evidence submitted by CSI:

   a.   Both the Tyson Agreement and the Exclusive Mayweather Fight Agreement had integration clauses.  Exhibits 1 and 5 to the CSI Complaint, at § 37;

   b.   The August 2025 and November 2025 Inducement Letters for the Tyson Agreement and the Exclusive Mayweather Fight Agreement both stated that "[Mayweather] ha[s] read and understand[s] each and all of the terms and conditions of the Agreement."  Exhibit 1 to the CSI Complaint at p. 30, ¶ 2; Exhibit 5 to the CSI Complaint at p. 33, ¶ 2;

   c.   Per Jordan, he is Mayweather's business manager and, in that capacity, he is "familiar with the negotiations, agreements and communications relating to Mr. Mayweather's boxing and exhibition events."  Jordan Dec. at ¶¶ 2-3.  Hence, his failure to assert that Frist did not pay over to Mayweather the $4.5 million paid to it by CSI is a concession that Mayweather did receive those monies; and

   d.   Jordan claims that he became Mayweather's business manager in February of 2026, *id.* at ¶ 3, and was therefore necessarily aware of (i) the circumstances surrounding the Tyson Amendment and the Exclusive Mayweather Fight Amendment – both executed on February 22, 2026 – and (ii) CSI's March 1, 2026 payment of $150,000 to Mayweather.  Exhibits 14, 16, and 19 to CSI Complaint.

**B.    CSI'S ARGEEMENTS ARE ENFORCABLE**

Mayweather also contends that

the CSI-Frist Apex agreements are arguably unenforceable because of their illegal purpose, namely permitting CSI to act as an unlicensed promoter of boxing events in violation of New York state and federal law (*i.e.*, 19 N.Y.C.R.R. §§ 207.1(a), 206.5(a); 15 U.S.C. § 6301(9)).  Declaration of Stephen Espinoza ("Espinoza Decl.") ¶¶ 5-6.  There is precedent for courts to declare agreements involving regulated boxing activities void where a party lacks the required license.  *See, e.g.*, Alvarez Decl. ¶ 6, Ex. E (*Paradigm Sports Mgmt., LLC v. Pacquiao*, Case No. 30-2021-01207553, July 1, 2024, Minute Order Adopting Tentative).

Mayweather MOL at pp. 15-16.

This argument is so frivolous as to be sanctionable[3] because while the relevant agreements provide for CSI to provide services akin to those of a boxing promoter, CSI's current lack of a boxing promoter's license does not render then unenforceable either under New York Law or the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6301, *et seq*. ("Ali Act").

Both New York and Second Circuit law holds that the Rules of the New York State Athletic Commission requiring a promoter to obtain a license only apply if a promoter is going to present a fight in New York State, and a promotional contract is not void under New York law because the promoter has no license in New York.

*Quartey v. AB Stars Prod., S.A.*, 260 A.D.2d 39, 43 (1st Dep't 1999), is directly on point:

The insertion of a New York choice-of-law provision in the September 1996 agreement had no effect whatsoever on fights taking place outside New York State…  There is nothing illegal per se about this contract.  The fact that co-promoter AB Stars was not licensed in New York did not invalidate those aspects of the September 1996 agreement pertaining to fights in Las Vegas, Connecticut, or anywhere else outside the Empire State.

*Accord Norris v. Don King Productions, Inc.*, 271 A.D.2d 377, 379 (1st Dep't 2000).

---

[3]    CSI intends to serve a Rule 11 motion demanding that Mayweather withdraw this argument within 21 days of serving such motion.

In *Witherspoon v. Rappaport*, 65 F. App'x 356, 358 (2d Cir. 2003), the Court agreed with *Quartey and Norris*:

> Witherspoon argues that, notwithstanding the fact that there was no express requirement in the contract that DRP be licensed by New York or promote fights in New York, DRP was nonetheless implicitly obligated to comply with New York's regulations at all times because of the language in the choice of law clause that reads "this Agreement shall be in all respects be governed … in accordance with the laws of the State of New York applicable to contracts to be fully performed therein."  This argument is contradicted by the New York courts' decisions in *Quartey* … and *Norris*….  In both of those cases, the Appellate Division held that technical violations of New York regulations would not void a contract to promote a fight outside of New York.

Similarly, the Ali Act applies only to "a boxing contest held in the United States…."  15 U.S.C. § 6301(8); *see Echols v. Pelullo*, CIVIL ACTION NO. 03-1758, 2003 U.S. Dist. LEXIS 9583, at *6 (E.D. Pa. June 3, 2003), *rvsd. on other grds.*, 377 F.3d 272 (3d Cir. 2004) ("Congress intended [the Ali Act] to apply only to those matches … which occur within the United States.").

Both the Tyson Agreement and Exclusive Mayweather Fight Agreements provide that those fights "shall be hosted at a location and venue … to be determined solely by CSI."  Exhibits 1 and 5 to CSI Complaint at § 11  The only limitation on CSI's discretion is the event cannot take place "in Saudi Arabia" or "a location/country designated by the United States Government as a 'no-travel' destination."  *Id.*  As stated in the Reply Affirmation of Richard Miele ("Miele Reply Aff.), at ¶ 7, neither the Tyson Fight nor the Pacquiao Fight will be held in the United States.[4]  In any event, nothing would prevent CSI from obtaining a promoter's license in New York or elsewhere in the United States.

---

[4]    The Miele Reply Aff., at ¶ 7, notes that the Tyson Fight was originally scheduled to take place in the Democratic Republic of the Congo.  However, due to the Ebola virus, that country has recently been designated as a "no travel" destination.  Hence, the Tyson Fight will be moved to another destination outside of the United States.

Mayweather's reliance upon the *Paradigm Sports v. Pacquiao* case is, if possible, even more frivolous because it was decided under California law, which provides that if a contract between a boxer and a promoter or manager has a California choice of law provision, the California State Athletic Commission's rule voiding contracts if the manager or promoter is unlicensed by the Commission at the time of the contract's execution extends to fights anywhere in the world. *See De La Hoya v. Top Rank, Inc.*, CV 00-9230-WMB, 2001 U.S. Dist. LEXIS 25816, at *24-34 (C.D. Ca. Feb. 6, 2001).  In contrast, as explained above, New York law holds to the contrary.[5]

## C.   MAYWEATHER'S OTHER ARGUMENTS ARE SPECIOUS

Mayweather makes a number of other meritless arguments which we address below.

**First**, he contends that "[t]he CSI agreements were also suspect because they were inconsistent with the significantly higher prices commanded by Mayweather in the past as one of the most accomplished and skilled boxers of his generation."  Mayweather MOL at p. 17.  This argument fails for two reasons:

a.   Mayweather acknowledges that he was ready and willing to honor the Tyson Agreement until the bout was postponed.  Mayweather MOL at p. 18.  Hence, he has conceded that his purse for the Tyson Fight was not suspect in any way.

b.   As for the Exclusive Mayweather Fight Agreement, Mayweather's argument is contradicted by the Everwonder-Mayweather Contract, which provided for the payment to Mayweather of less money than he will receive under his agreement with CSI.  *Compare* Exhibits 5 and 14 to the CSI Complaint, at §§ 13 and 6, respectively *with* Exhibit 7 to the CSI Complaint at ¶ 3.

---

[5]   We also note that the Court's decision in *Paradigm* is currently on appeal and scheduled to be argued by CSI's counsel in October of 2026.  *See* the accompanying Reply Declaration of Judd Burstein ("Burstein Reply Dec."), at ¶ 3, and Exhibit 1 thereto.

**Second**, he claims that, whereas his purported termination of "the CSI agreements …

[being] effective is itself a disputed issue,"[6] "the agreement governing Mr. Mayweather's

exhibition bout against Zambidis predates the CSI agreements and is not subject to any comparable

challenge."  Mayweather MOL at p. 17.  This is an absurd claim because the document attached

as Exhibit A to the Jordan Dec., Doc. No. 16-2, is not a contract.  Rather:

a.   Its *bona fides* are not confirmed either by Mayweather or Front Row Fight Series

("Front Row"), and Jordan has no basis for claiming that it is authentic because, by

his own admission, he did not begin working for Mayweather until February of

2026 – some nine months **after** the May 15, 2025 date of the document.

b.   It is merely a letter of authorization for Front Row to negotiate certain rights for a

Mayweather/Zambidis fight;

c.   It is not signed by Front Row;

d.   While the document states that Mayweather has reached some sort of agreement

with Front Row, it does not mention any terms of the supposed agreement – *e.g.*,

date and purse – and further states that Mayweather's agreement with Front Row

remained "subject to … Mayweather's continuing approval of material terms."

Doc. No. 16-2.; and

e.   If the supposed Zambidis Agreement (as defined in the Jordan Dec.) dates back to

2025, why did Mayweather repeatedly represent to CSI that he was not a party to

or negotiating an agreement that would interfere with CSI's rights?  *See* Exhibits 1

---

[6]     This statement serves as a confirmation by Mayweather that there are "'sufficiently serious
questions going to the merits to make them a fair ground for litigation….'"  *Christian Louboutin*,
696 F.3d at 215.

and 5 to the CSI Complaint, at § 29; Exhibit 14 to the CSI Complaint at § 11; and Exhibit 16 to the CSI Complaint, at § 8.[7]

**Third**, Mayweather claims that it is a "disputed issue" as to whether "the Zambidis exhibition constitutes the type of impermissible intervening the fight contemplated by the parties' agreements." Mayweather MOL at pp. 18-19. According to Mayweather, "Plaintiffs have not established that the circumstances surrounding Tyson's alleged injury satisfy the contractual requirements necessary to invoke that extension [because] the record suggests that Tyson suffered only a sprain." *Id.*

In other words, Mayweather concedes that if Tyson did fracture his hand, CSI appropriately postponed the Tyson Fight. The Miele Reply Aff., at ¶ 5, demonstrates that Tyson did in fact fracture his hand, thereby establishing that the Zambidis Fight is in fact a prohibited interim fight. Moreover, at a minimum, Mayweather has yet again demonstrated that there are serious questions going to the merits.

## POINT II

### PLAINTIFFS HAVE DEMONSTRATED IRREPARABLE INJURY

The Reply Declarations submitted herewith demonstrate why Mayweather has not sufficient rebutted CSI showing of irreparable injury.[8]

However, there is two points that call for a discussion in this Reply Memorandum of Law:

**First**, Mayweather's claims that "EverWonder obtained exclusive rights relating to Pacquiao's professional boxing services before CSI entered into its subsequent agreements

---

[7]    Further, if Mayweather contracted with Zambidis, why did he make a similar representation in the Mayweather-Everwonder Agreement? *See* Exhibit 7 to the CSI Complaint at § 7(a).

[8]    CSI will address the balancing of the equities orally with the Court/

concerning a Mayweather-Pacquiao bout." Mayweather MOL at 20 n.4. However, he Mayweather cites only the Declaration of Stephen Espinoza of Stephen Espinoza, at ¶ 13, as support for this claim. But Mr. Espinoza merely states: **Based on my understanding**, in October 2025 EverWonder obtained exclusive rights relating to Manny Pacquiao's professional boxing services, before CSI entered into its subsequent agreements with Mr. Pacquiao concerning a potential bout involving Mr. Mayweather and Mr. Pacquiao." (Emphasis supplied) While this hearsay assertion must be considered by the Court, it does not remotely carry the day because it is within Mayweather's control to produce the contract and he has chosen not to provide it to the Court More importantly, the December 2025 EverWonder-Mayweather Contract (Exhibit 7 to the CSI Complaint) is not an amendment of a supposed October 2025 contract and indeed does not reference it at all. This makes no sense if a prior agreement bound both Mayweather and Everwonder. Moreover, the December 2025 Everwonder-Mayweather Contract has an integration clause, meaning that it post-dates the CSI's contracts.

**Second**. Mayweather erroneously claims that CSI has an adequate remedy at law. In fact, it has none, as Mayweather will almost surely be unable to satisfy any damages award because he is functionally bankrupt as demonstrated by (a) an IRS lien of $7.5 million for unpaid taxes (*see* Exhibit __ to the Burstein Aff.) (b) he has recently been indicted for passing a bad $200,000 check, (c) he is a defendant in multiple civil suits (*id.*), and (d) per the Rechnitz Complaint, he has essentially been essentially robbed of everything he owns.

These facts are sufficient to demonstrate irreparable harm:

As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm…. However, a perhaps more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied…. For this reason, courts have

excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents.

*Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999).

**CONCLUSION**

For the foregoing reasons, Plaintiffs are entitled to a TRO and preliminary injunction granting the relief set forth above and in their moving papers.

Dated: New York, New York
         June 24, 2026

                              Respectfully yours,

                              JUDD BURSTEIN, P.C.


                              By:    */s/ Judd Burstein*
                                     Judd Burstein (JB9585)
                                     Peter B. Schalk (PBS8257)
                              825 Third Avenue, 21st Floor
                              New York, New York 10022
                              (212) 974-2400
                              jburstein@burlaw.com
                              pschalk@burlaw.com
                              *Attorneys for Plaintiffs*

11
