UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X    CASE NO. 1:26-CV-05150 (VSB)

CSI ENTERTAINMENT, LLC, CSI SPORTS
EVENTS, LLC, and CSI ENTERTAINMENT
EVENTS, LLC,

                                    *Plaintiffs*,

            – against –

FLOYD MAYWEATHER, JR. and
FRIST APEX VENTURES LLC,

                                    *Defendants*.
------------------------------------------------------------X

### SUPPLEMENTAL DECLARATION OF STEPHEN ESPINOZA IN FURTHER SUPPORT OF SPECIALLY APPEARING DEFENDANT FLOYD MARYWEATHER, JR.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

I, Stephen Espinoza, hereby declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. I have personal knowledge of the facts set forth herein, except for those stated on information and belief, and as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to those facts set forth herein.

2.      I am currently an independent sports media consultant and submit this Supplemental Declaration in support of Mr. Mayweather's Opposition to Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order and to provide information regarding issues raised by the Court during the June 24, 2026. This declaration contains additional opinions based on my over 25 years' experience in the professional boxing and sports media industries.

3.      I attended the June 24 hearing and therefore have personal knowledge of the representations Plaintiffs' counsel made to the Court concerning the proposed Mayweather-Tyson and Mayweather-Pacquiao events.

1

4.      Plaintiffs have repeatedly changed the anticipated dates and timing of the proposed Mayweather-Tyson and Mayweather-Pacquiao events. In my experience negotiating and producing major boxing events, repeated changes to anticipated event dates create uncertainty among broadcasters, distributors, sponsors, venues, and consumers and often make it more difficult to secure commercial commitments.

5.      I understand that Plaintiffs now claim the proposed Mayweather-Tyson event may take place outside the United States. That representation differs from the most recent information communicated to me and Mr. Mayweather's team by CSI, namely that the exhibition was expected to take place in either Texas or Florida.

6.      The fact that the proposed location has continued to change is consistent with my opinion that the proposed Mayweather-Tyson event remains in a preliminary stage rather than one with finalized commercial arrangements.

7.      In my experience, identifying two fighters and discussing a potential event date is only the beginning of the process required to stage a major boxing event. Before such an event can realistically move forward, a promoter ordinarily must secure, among other things, a venue, governmental approvals where applicable, a broadcast or streaming partner, commercial terms with the distributor, sponsorship commitments, insurance, ticketing, production arrangements, and numerous vendor and operational agreements. Until those elements are in place, it is common for proposed boxing events to remain tentative and subject to change.

8.      Likewise, in my experience, a fighter's medical availability is only one of many prerequisites necessary to stage a major boxing event. Even assuming Mike Tyson is medically cleared to participate, a commercially viable event still requires finalized agreements concerning the venue, date, financing, ticketing, sponsorships, production and other logistical and operational matters. Medical clearance alone does not mean that an event is ready to proceed.

9.      I am not aware of any finalized venue, funding sources or completed commercial arrangements for the proposed Mayweather-Tyson event. In my opinion, that is inconsistent with an event that is ready to proceed.

10.     I also understand Plaintiffs now suggest that Netflix could potentially broadcast a Mayweather-Pacquiao event in January 2027. Based on the information available to me, however, I am not aware of any executed agreement among Netflix, Mr. Mayweather or any promoter establishing such an event, nor am I aware of finalized commercial terms, a venue or other operational elements. In my experience, preliminary discussions of future boxing events occur frequently within the industry and do not mean an event has been scheduled or will ultimately occur.

11.     Throughout my career, I have observed numerous proposed boxing events that were publicly announced but later postponed, relocated, restructured, or cancelled altogether. In my experience, where a proposed event is postponed or cancelled sufficiently in advance of the scheduled date, those changes do not necessarily diminish the event's future commercial value or consumer demand.

12.     Concerning the Mayweather-Zambidis event, it is my understanding that the event is being conducted as an exhibition under modified boxing rules rather than as a traditional professional championship contest. The exhibition will consist of six rounds, each two minutes long. No kicking will be permitted. Based on my experience in the boxing industry, exhibitions are generally understood by fans, broadcasters and commercial partners to be entertainment events that are distinct from championship or other high-stakes professional contests and generally attract less commercial attention in the United States than major professional boxing events.

13.     Mike Zambidis is a retired Greek kickboxer and martial artist who achieved considerable success in kickboxing over the course of his career. To my knowledge, he has competed in only one professional boxing match. Based on publicly-available sources I have reviewed online, Mr. Zambidis is approximately 5 feet 6 inches tall, weighs approximately 154 pounds, is 44 years old and appears to have last competed professionally in 2019.

14.     Based on my experience in professional boxing, Mr. Zambidis was selected as Mr. Mayweather's opponent because he is a recognizable combat sports figure with an established international following, making him an appropriate opponent for an exhibition.

3

15.     In my opinion, the June 27, 2026 Mayweather-Zambidis event is designed as an entertainment exhibition rather than a competitive professional boxing contest intended to determine the superior boxer.

16.     Although Mr. Zambidis had a distinguished career as a kickboxer, he has nothing close to Mr. Mayweather's professional boxing résumé. In my opinion, the disparity between Mr. Mayweather's accomplishments as an undefeated world champion boxer and Mr. Zambidis' limited professional boxing experience makes this exhibition significantly less competitive than a traditional elite professional boxing match.

17.     Based on my experience evaluating and producing boxing events, the rules, purpose and expected level of competition in this exhibition substantially reduce the likelihood that it would materially affect Mr. Mayweather's ability to participate in a future marquee boxing event.

18.     I heard the discussion regarding Muhammad Ali's 1976 fight against Japanese professional wrestler Antonio Inoki. Unlike the rules for the Mayweather-Zambidis exhibition, which prohibit kicking, the Ali-Inoki fight was fought under special rules in which Inoki was able to kick Ali's legs as long as he had one knee on the mat. Based on this rule, Inoki spent most of the match on the mat, kicking Ali over 100 times and causing him significant injuries. The June 27 fight between Mr. Mayweather and Mr. Zambidis is governed by modified boxing rules without any kicking. In my opinion, the two exhibitions are entirely distinguishable.

19.     In my experience, consumers do not generally view an exhibition of this nature as a substitute for a future marquee professional boxing event. I therefore do not believe participation in the Mayweather-Zambidis exhibition would materially diminish consumer demand for a future Mayweather-Tyson or Mayweather-Pacquiao event.

20.     Mr. Mayweather has participated in numerous exhibitions in recent years against opponents of similar profile to that of Zambidis without preventing him from later participating in or promoting subsequent boxing events. I do not believe participation in the Mayweather-Zambidis exhibition would materially diminish public demand for a future marquee event involving Mr. Mayweather.

21.     In my opinion, the commercial appeal of a marquee boxing event depends primarily on the drawing power of the fighters involved, not whether one of those fighters has previously participated in an exhibition. For example, and as I referenced in my original declaration, despite Mike Tyson's widely publicized bout against Jake Paul – in which his performance was publicized as being subpar – Plaintiffs continued to pursue a Mayweather-Tyson event, reflecting the industry's continued belief that Tyson remained a commercially valuable attraction notwithstanding his prior appearance. Press coverage of the Mayweather-Tyson exhibition is focused on two icons meeting in the ring for entertainment purposes, not for a competitive professional match.

22.     My opinions expressed in my prior declaration remain unchanged. The additional information available since my original declaration further reinforces my opinion that any alleged harm Plaintiffs attribute to the June 27, 2026 Mayweather-Zambidis exhibition is speculative and not consistent with how major boxing events are developed and promoted.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 25, 2026 at New York, NY.

Signed by:

722080EC71244A0...

Stephen Espinoza

5