# EXHIBIT A

CONFIDENTIAL - DRAFT of October 13, 2025

## BOXING AND PROMOTIONAL SERVICES AGREEMENT

**THIS BOXING AND PROMOTIONAL SERVICES AGREEMENT** (the "**Agreement**") is made and entered into as of October 5, 2025, between Frist Apex Ventures LLC, a Florida limited liability company ("**Lender**"), for the services of Floyd Mayweather, Jr., an individual ("**Mayweather**"), and Mayweather, on the one hand, and Players Era, LLC, a Delaware limited liability company and a subsidiary of 89 Blocks Holdings, LLC doing business as EverWonder Studios ("**Players**"), on the other hand, on the terms, conditions and other provisions as set forth below. Each of Lender, Mayweather and Players are sometimes individually referred to herein as a "**Party**" and collectively as the "**Parties.**"

### RECITALS

A.      Subject to the satisfaction of the Conditions Precedent (as set forth below), Players will to produce, in cooperation with Netflix Worldwide Entertainment, LLC ("**Netflix**"), a boxing program which is expected to air around the world via live stream and on demand on the Netflix platform.

B.      The main event bout of the boxing program will be a boxing match between Manny Pacquiao ("**Pacquiao**") and Mayweather (the "**Match**"), which will be a professional and sanctioned match which shall count on the official professional records of both Mayweather and Pacquiao, and the final rules for which shall be subject to the mutual agreement of Pacquiao and Mayweather, and subject further to the approval of Netflix. The Match, along with the undercard bouts, any live entertainment, and any pre-shows and post-shows prior and following the Match, and customary pre-Event elements such as an open workout, press conferences, an official weigh-in, a public weigh-in, promotional taped, filmed or live events and appearances, and the related production of all of the foregoing, including a lead-up documentary, shall be defined herein as the "**Event**." For the avoidance of doubt, the Event is anticipated to include the features described in the preceding sentence, among other customary activities. The Event is expected to be held in or around first quarter of 2026 but in any event not later than June 1, 2026 and shall be mutually approved by Mayweather, Players and Netflix (the "**Date**"), unless otherwise mutually agreed by the Parties, and at a location, time and venue (the "**Site**") to be approved by Netflix and Players.

C.      Each of the Parties are entering into this Agreement to set forth the terms, conditions and other provisions of Mayweather's participation in the Event and related matters including, without limitation Mayweather's (or Lender's) financial remuneration and fringe entitlements for his participation in the Match including his compensation, amount, definition and payment terms of "Net Proceeds Compensation," as defined below, ticket allotments, stipends and per-diems, approvals and similar terms, all as set forth in this Agreement.

D.      In connection with the execution and delivery of this Agreement, Mayweather hereby directs that all amounts payable to him under this Agreement shall be paid to Lender.

E.      Players is entitled to receive from Netflix the revenue which Players intends to utilize to pay the Base Compensation to Lender and the base compensation to Pacquiao. For Player's administrative convenience, Players will direct Netflix to pay the Base Compensation (less the "Deposit" as defined below) directly to Lender in satisfaction of Players' obligation to make such payment under Section 3(a)(i)(y) below. Players shall nonetheless recognize the revenue and expense related to such revenue and payment for accounting purposes (i.e., for accounting purposes, Players is the principal, Lender is the

P:01698507.3:86C58.058

CONFIDENTIAL

ncipal's payee, and Netflix is the customer). In furtherance thereof, Lender shall execute and deliver to ayers a "Notice of Irrevocable Authority" (the "NOIA"), in form and substance satisfactory to Players d Netflix, that irrevocably authorizes and instructs Netflix to pay the Base Compensation (less the eposit) to Lender directly on Players' behalf.

**NOW, THEREFORE,** in consideration of the mutual promises and agreements hereinafter set forth, and of other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, and incorporating the above Recitals as if fully set forth herein, the parties hereto agree as follows:

1.    <u>Conditions Precedent</u>. Notwithstanding anything to the contrary contained in this Agreement, Players' obligations under this Agreement are subject to the fulfillment of all of the following conditions (each, a "**Condition Precedent**" and collectively, the "**Conditions Precedents**"):

(a)    Players' receipt of copies of this Agreement and any supporting documents that in the opinion of Players are necessary to effectuate the terms of this Agreement, executed by Lender and Mayweather;

(b)    Lender and Mayweather providing to Players all documents that are required by any government agency or otherwise for Mayweather to render his services hereunder for the full period during which such services are required by Players including, without limitation, if applicable a completed INS Form I-9 (Employment Eligibility Verification Form), original documents establishing Mayweather's employment eligibility (if required) and any and all other visas, work permits and other documents establishing Mayweather's right to enter and work in the applicable jurisdiction where his services are required including but not limited to the jurisdiction where the Match and the Event will take place;

(c)    Players entering into an agreement for the Match and the Event with Pacquiao to be Mayweather's opponent in the Match, on terms and conditions satisfactory to Players, and Players entering into an agreement with Netflix for the financing, distribution and licensing of the Match and the Event (the "**Netflix Agreement**"), on terms and conditions satisfactory to Players; and

(d)    Mayweather obtaining a waiver or release from CSI Sports Events, LLC confirming that Mayweather can participate in the Match and the Event, in form and substance satisfactory to Players, and in this regard, Mayweather and Players shall cooperate with one another to obtain such waiver or release.

2.    <u>The Match</u>.

(a)    Players shall arrange for, present and promote a professionally sanctioned boxing contest as the main bout of the Event entitled *Floyd Mayweather v. Manny Pacquiao 2*.

(b)    The Match shall be scheduled for twelve (12) rounds of three (3) minutes each to a decision, which shall be scored using the 10-point must system, subject to any adjustments required by the applicable athletic commission having jurisdiction over boxing contests in the state in which the Match is to be held (the "**Boxing Commission**") and/or any regulatory authorities or sanctioning bodies (collectively, with the Boxing Commission, the "**Governing Authorities**") and which will be a professional and sanctioned boxing match that shall count on the official professional records of both Mayweather and Pacquiao. The Match shall occur at a weight not to exceed [____] pounds. Mayweather and Pacquiao shall use ten (10) ounce gloves. The Match shall be held in a 20' x 20' sized boxing ring inside the ropes. The Parties agree that Mayweather shall receive the A-Side designation

2

CONFIDENTIAL

h respect to all live events, including, fight week events, such as being introduced last at open-rkouts, and press conferences and walking to the ring and being announced second for the Match, and production, marketing, advertising and promotional elements of the Event. Except as set forth herein, l matters of billing and credit (including any live announcements) shall be determined by Players in its le discretion. All other boxing aspects of the Match shall be governed by and in conformity with rules hat are mutually agreeable to the Parties and Pacquiao and, in the event of an impasse, such impasse shall be resolved by Netflix which shall have the tie-breaker right in all cases. Further, pursuant the terms of the Netflix Agreement, Netflix shall have the right to approve the boxing rules related to the Match subject to the rules and regulations of any applicable Governing Authorities having jurisdiction over the Match.

(c)     The Event will be produced by Players and shall be live streamed exclusively by Netflix or its designees. Following its live stream premiere on Netflix, the Event may be broadcast or exhibited by Netflix, its designees or licensees, or by Players, its designees or licensees, as provided in the Netflix Agreement worldwide in any and all formats and media, now known or hereafter devised, in any and all languages, in perpetuity.

(d)     Except as expressly provided otherwise in this Agreement, and subject to Netflix's rights and obligations under the terms of Netflix Agreement, Players shall have the sole and exclusive right to make all decisions regarding the Event including without limitation all venue costs and expenses, publicity and promotion, ticketing and sales, undercards and other factors

(e)     As a condition to Players' obligations hereunder, Mayweather shall complete and pass a physical medical examination, along with an EKG and EEG, and will undergo testing customary to the industry at a time subject to Mayweather's reasonable availability. Mayweather may have his own physician present at any such medical examination. If at any time during the term of this Agreement, Mayweather refuses to participate in or attempts to cancel or postpone the Match for reason of a claimed injury or medical disability, Players shall have the right, but not the obligation, to have Mayweather examined by a medical doctor of Players' choice, at Players' expense, and, if Players so elects, Mayweather shall appear for examination on not less than two (2) business' days advance notice at Mayweather's then-current location. Mayweather may have his own physician present at any such medical examination. It is of the essence of this Agreement that Players be able to secure "key man" or other similar insurance to insure against Mayweather being unable to participate in the Match based on Mayweather's physical condition. In the event that either Mayweather or Pacquiao are unwilling or unable to submit to such medical examinations, are not medically cleared to participate in the Match, or Players is unable to obtain such key man or other insurance policies deemed necessary or desirable by Players at customary rates, then the provisions of Section 9 below shall apply.

(f)     The Match shall be co-promoted by Mayweather Promotions, on behalf of Lender and Mayweather, and by Pacquaio and his designee, with Players, and Mayweather Promotions shall be included in the public address announcement at the Site immediately prior to the Match and in the advertising and promotion that is produced, distributed or published by Players, provided that Mayweather Promotions shall be announced or listed in second position to Players (as Players shall determine) but in first position to Pacquaio, and provided further, that no additional compensation or other entitlements shall be paid or provided to Lender, Mayweather or Mayweather Promotions in or in connection with this Agreement, the Match, the Event or otherwise. Any inadvertent or casual omission of such co-promotion mention or credit shall not be deemed a breach of this Agreement.

3. Compensation.

3

CONFIDENTIAL

(a)    In full and complete compensation and consideration for all of Mayweather's services under this Agreement, including his appearance and engagement in the Match and the Event, performing his promotional obligations, and for granting the rights transferred herein, Mayweather (or Lender on Mayweather's behalf) will be entitled to the following remuneration:  (i) Thirty Million U.S. Dollars ($30,000,000.00) (the "**Base Compensation**"), to be paid as follows:  (x) a deposit (the "**Deposit**") in the amount of Three Million Dollars ($3,000,000.00) payable to Lender within three (3) business days of the satisfaction of all of the Conditions Precedent, and (y) the balance of Twenty-Seven Million U.S. Dollars ($27,000,000.00) payable to Lender as soon as practical but not later than three (3) business days after the Match and subject to Mayweather and Lender's full and complete satisfaction of all of Mayweather and Lender's obligations hereunder and delivery of all materials required to be delivered by Mayweather and Lender under this Agreement, and (ii) Sixty (60) Percent of the Event Net Proceeds (the "**Net Proceeds Compensation**") paid and retained by Players related to the Event (the "**Event Net Proceeds**").  As used herein, "**Event Net Proceeds**" means:

(A) The gross receipts paid to Players from the media distribution of the Event (including the license fee paid by Netflix), ticket sales, merchandising, sponsorships (to the extent that sponsorships are not bought out by the media distributor (e.g., Netflix), host fees, and revenue from other sources that are earned by Players from the Event (collectively, "**Gross Receipts**"),

*Minus*

(B)  The sum of (i) all costs and expenses incurred by Players to develop, organize, produce, promote, manage, operate, distribute and license the Event and otherwise fulfill all its obligations in connection with the Event (as further described in the Netflix Agreement) including without limitation the Base Compensation amounts payable to Mayweather (or Lender) and all base compensation payable to Pacquiao (or his lending company), the compensation to all other fighters and performers, venue rental, broadcast talent, production and technical personnel, equipment rental, legal, accounting, insurance, security, travel, transportation, Event laborers, accommodations, personnel, third party vendors and service providers, subcontractors fees, fees and costs incurred to produce any audio-visual programs or series in connection with the Event, all music, audio and video clearances, all licenses and permits, announcers, ring personnel, judges, referees, and all other expenses, *plus* (ii) all costs and expenses incurred by Players to purchase, acquire and sell Event merchandise in the Event venue (such as costs of goods sold, shipping, licensing fees, returns, taxes paid or payable, labor costs, commissions and other expenses) *plus* (iii) all costs and expenses incurred by Players to offer and sell live attendance ticket sale and Players packages for the Event (such as ticket brokerage fees, service fees incurred, taxes paid or payable, labor costs, commissions and other expenses), *plus* a distribution and production fee to Players in an amount equal to fifteen (15) percent of all Gross Receipts.

(b)    Budget; Payment Timing.

(i)    At Mayweather's request, Players will provide Mayweather with a pro-forma profit and loss statement one month prior to the Event (the "**Budget**") setting forth the expected expenses, an updated Budget the week of the Event, and a final Budget after the Event.  The Base Compensation (less the Deposit previously paid as described above) will be payable to Lender by Netflix pursuant to the NOIA no later than three (3) business days after the Event.___

(ii)    The Net Proceeds Compensation will be payable to Lender no later than ten (10) business days after Players receives all revenue and pays all costs and expenses necessary to determine the Event Net Proceeds (which Players expects to be no later than thirty (30) days after the Event) but in no event more than sixty (60) days after the completion of the Event. Players shall

4

provide a final profit and loss statement to Lender and Mayweather together with any remittances payable to Lender within the sixty (60) day period. Payment shall be subject to any applicable tax withholdings, if any.

(c)    Ticket Allocation. Players shall provide Mayweather with twenty-eight (28) complimentary tickets to the Match as follows: six (6) tickets in the corral, six (6) P1 ringside tickets in the first row of public seating, eight (8) P2 tickets, and eight (8) P4 tickets. Players shall also provide one (1) all access credential for a member of Mayweather's management team, which shall permit in-ring access and four (4) additional all access credentials that will not have in-ring access. In addition, Players shall make available to Mayweather two-hundred fifty (250) tickets that may be purchased by Mayweather at face value.

(d)    No Further Remuneration. Except as expressly set forth in this Agreement, neither Mayweather nor Lender (or any entities rendering services on his or its behalf) shall be entitled to any compensation or remuneration of any kind or nature (including, without limitation, any entitlement to any portion of gate receipts, ticket fees, sponsorship fees, merchandising receipts or receipts from the sale, lease transfer, license or other exploitation of any broadcast, streaming, television or motion picture rights, or any other intellectual property rights relating to the Event) for participating in the Event, Match or otherwise performing his or its services under this Agreement.

4.    Marketing and Promotional Obligations.

(a)    Mayweather shall promote and publicize the Event with the goal of maximizing overall worldwide interest in and viewership of the Event. Mayweather shall cooperate and assist in the publicizing, advertising and promoting of the Event, Netflix, and, subject to Players providing no less than five (5) calendar days' prior notice to Mayweather for any promotional obligations that require Mayweather to travel from the location of his training camp, shall appear at and participate in a reasonable number of press conferences, interviews, and other publicity, appearances or activities (any or all of which may be streamed, telecast, broadcast, recorded or filmed). Mayweather shall participate in all traditional "fight week" interviews, promotions, weigh-ins and media days, as well as public training sessions, including a "face off" and such other media as are reasonably requested, all at times and places reasonably designated by Players. Without limiting the foregoing, Mayweather will cooperate and participate in the filming, shooting and production of photographical and video content including interviews and footage of Mayweather and his team training and preparing for the Match and as otherwise as reasonably requested to assist in the production of promotional materials such as commercials, advertisements, print-based content, merchandise, and other audiovisual and non-audiovisual content solely relating to the promotion of the Event as requested by Players or Netflix.

(b)    Mayweather, and his trainer, corner personnel and camp, advisors and family members, shall grant Players and its designees with reasonable access to film them in connection with the production of a one or two-part reality-style "24/7 style" docuseries (which is expected to run on Netflix prior to the Event) to promote the Event and the creation of feature material and social media content; provided, however, such filming and access shall not materially hinder, disrupt or interfere with Mayweather training for the Match; and provided further, that the docuseries shall not prevent or restrict Mayweather from developing or producing his own documentary about his life on a non-interfering basis and subject to the terms and conditions of this Agreement. Mayweather shall cause Mayweather's trainer, corner personnel and camp, advisors and family members to provide written clearances and permissions relating to the use of their image in the docuseries. Such access shall include, without limitation, the following: master interview with Mayweather, sit-down interviews in the gym, conference calls with media, shoot elements for the series (gym training, outside training facilities besides boxing gym, and Mayweather in his home element), full access to gym training and runs, interviews with Mayweather's

5

CONFIDENTIAL

trainer and corner personnel, and behind-the-scenes filming of media obligations, filming other segments, fight week and fight night activities and as otherwise reasonably requested by Players. In addition, Mayweather shall provide access on his designated media days and on at least five (5) consecutive or non-consecutive days of access, during the build-up to the Event, chosen at the reasonable discretion of Players or its designee, as the case may be, in consultation with Mayweather's representatives, to training sessions, including for the purposes of producing additional programming, including access for filming at Mayweather's training facilities at each training session as well as at pre-camp and in non-boxing locations at any point to be agreed between the Parties to enable the recording of promotional content including exclusive interview(s) with respect to the Match for use by Players, Netflix or their respective designees as well as other interviews reasonably requested by Players, Netflix or their respective designees.

(c)     Mayweather shall fully cooperate and assist in the advertising, publicity, and promotion of the Event and the Match as reasonably requested by Players and Netflix. Such obligations will include:

(i)     No less than one (1) post per week on all of Mayweather's social media channels from announcement through the Event;

(ii)     Four (4) posts the week of the announcement on all of Mayweather's social media channels, including sharing and reposting five (5) Players or Netflix social media posts (and videos) relating to the Match on his social media platforms;

(iii)     Four (4) posts the week of the press conference(s) on all of Mayweather's social media channels;

(iv)     Daily posts the week of the Event on all of Mayweather's social media channels;

(v)     Four (4) posts the day before the Event on all of Mayweather's social media channels;

(vi)     Four (4) posts the day of the Event (prior to the start of the broadcast of the Event) on all of Mayweather's social media channels, including posting links to a pre-fight countdown show and calls to action as requested by Players;

(vii)     Signing boxing apparel and memorabilia as requested by Players (provided that Mayweather shall not be required to sign more than 100 pairs of boxing gloves, 150 Netflix posters and 300 Players posters for the Match and the Event); and

(viii)     Participating in a kick-off press conference/media day which will include reasonable local and national media interviews, a fight week press conference/media day, post-fight press conferences and interviews, not less than one (1) promo shoot day to capture key art photography, AV and footage and clips for social media publicity and promotion, and one (1) press visit during and at the location of Mayweather's training camp.

Players and/or Netflix shall have the right to provide Mayweather the artwork, copy or other promotional materials for Mayweather to include in the social media posts described above. Mayweather, Players and/Netflix shall create and in a timely fashion provide to Mayweather for prior approval (such approval not to be unreasonably withheld, delayed, or conditioned) any artwork, copy and promotional materials for Mayweather's social media that integrate Mayweather's image or likeness; provided, however, that if such artwork or promotional materials utilize images (photos, videos or otherwise) that were provided by Mayweather or his representatives or were integrated into artwork or promotional

CONFIDENTIAL

materials previously approved by Mayweather, then those images shall be deemed to have been pre-approved by Mayweather for all other uses and shall not be subject to Mayweather's further review or approval. If any request for approval is sent via email in accordance with the Notices provision below and Mayweather does not reject such request within forty-eight (48) hours, then such request will be deemed approved. The Parties acknowledge and agree that any requested social media posts provided to Mayweather may also include Players and/or Netflix logos and branding. Subject to the foregoing, Mayweather grants to Players, Netflix and any other event producer(s), promoters and their respective designees and assigns, the royalty-free and irrevocable right and license to use Mayweather's name, likeness, image, biography, sobriquet, personal and commercial identifiers, voice and video, at Players', Netflix's and/or such producer's, promoter's or designee's, as the case may be, sole discretion in connection with the promotion (including in connection with Netflix's marketing and sponsorship partnerships), broadcast and re-broadcast of the Event and Match, broadcast and re-broadcast of the Event and Match, in all media, now known or hereafter, in all media, now known or hereafter devised, in any and all languages, formats throughout the universe, in perpetuity, and to make such changes, alterations, modifications and additions (including without limitation digital enhancements) as Players or Netflix deems reasonable or advisable to market, promote, advertise or publicize the Event in its sole and absolute discretion.

(d)     Mayweather hereby grants to Players and Netflix, and their assigns and designees, in perpetuity, without any further compensation to Mayweather or any affiliate of Mayweather (including, without limitation, Lender), the exclusive irrevocable, perpetual and royalty-free right to the results and proceeds of Mayweather's services in the Match and the Event, and all footage, photos, recordings and elements thereof, and the right to receive and retain all proceeds therefrom including without limitation all live gate and promotional rights, sponsorship rights, the unrestricted right to project, telecast, stream, photograph, record and otherwise reproduce and exploit the Match and the Event, and all recordings and elements thereof, live and at all times thereafter (including on-demand access), and the events immediately preceding and following the Match, and between the rounds, and the Event, in any and all media and technologies, in or by any manner, method or device (now known or hereafter developed, created or devised), in any and all languages and formats, including, without limiting the generality of the foregoing, the unlimited and unrestricted right to stream and/or telecast the Match by any and all means and in any and all media including, without limitation, live or delayed free over-the-air, streaming, cable, pay or subscription satellite or cable, PPV television by means of terrestrial, cable, satellite, direct-to-home, analog and digital transmission as well as Video On Demand, Near Video On Demand (including without limitation all forms of SVOD, PVOD, TVOD, AVOD, etc.) and HDTV, PDAs, streaming services and other multimedia services, closed circuit, subscription, master antenna, films and tapes, for exhibition in all media and in all gauges, whether for theatrical exhibition or for sale, lease or license for home use, including audio and audio-visual cassettes and discs, CD-ROM, games and toys, and the unlimited right to deal with any or all of the foregoing, and to obtain copyright or similar protection in the United States and all other countries of the world where such protection is available in the name of Players and/or Netflix, or their nominees or assignees and all other rights, privileges, benefits, matters and things incident to or arising out of all or any of the foregoing, all in such manner as Players and Netflix in their sole discretion shall determine, including, without limitation of the foregoing, for purposes of advertising and promoting subsequent bouts, matches, events, programs and/or services including, without limitation, promotional spots and advertisements for the Netflix service generally.

(e)     Mayweather hereby irrevocably grants to Players and Netflix, and their assigns and designees, the exclusive irrevocable, perpetual and royalty-free right to use in any media and technologies, in or by any manner, method or device (now known or hereafter developed, created or devised), in any and all languages and formats, Mayweather's name, likeness, image, biography, sobriquet, personal and commercial identifiers, voice and video, and the name, likeness, image, biography, sobriquet, and commercial identifiers, voice and video of his trainers and seconds (which he

7

CONFIDENTIAL

represents he is authorized to grant), solely for the purpose of the marketing, promotion, exploitation and distribution of the Event, the Match, and the Ancillary Rights (as defined herein). Players and Netflix and their assigns and designees shall have the irrevocable, perpetual and royalty-free right to use the name, likeness, image, biography, sobriquet, personal and commercial identifiers, voice and video, of Mayweather and of his trainers and seconds, for purposes of and in connection with, commercial and merchandising tie-ups and advertisements, securing sponsorships for the Event, banners, buttons, posters, T-shirts, clothing (such as hats, hoodies and jackets), non-fungible tokens (NFTs), other digital assets currently known or yet to be developed, created or devised, jewelry and other souvenir items, and all similar products, in connection with the Match, the Event and the Ancillary Rights. All of the rights, privileges and benefits granted to Players and Netflix by Mayweather pursuant to this Section 4(e) are herein referred to as "**Ancillary Rights**."

(f)    Notwithstanding the foregoing, the Parties acknowledge and agree that Players and Netflix shall have no rights to use or permit any third party to use Mayweather's name, likeness, image, biography, personal and commercial identifiers, voice and video other to their respective promoters, producers, distributors, vendors and other third parties who are performing Event-related tasks on their respective behalf except as authorized by Players and Netflix in and in connection with rights granted by Mayweather and Lender hereunder with respect to the Match, the Event and the Ancillary Rights, and the marketing, promotion, advertising and publicity related to the exploitation of such Players or Netflix's rights granted pursuant to this Agreement.

5.    Expenses. Mayweather shall be solely responsible for paying all of his own costs and expenses related to the Match and the Event, including, but not limited to, his training expenses, boxing license and other charges from the Boxing Commission, sanctioning fees, and travel and accommodation expenses for him, his assistants and entourage and guests for all events and activities related to the Event, including, without limitation, press conferences, official announcements, and arriving and departing fighting week from the location of the Match. Notwithstanding the forgoing, if Players requires Mayweather to render promotional or marketing services (other than those rendered during "fight week") at a location ("**Location**") that is more than seventy five (75) miles from Mayweather's training camp, Players shall provide or reimburse Mayweather (at Players' sole election) for two (2) round trip airline tickets to such Location for Mayweather's use, two (2) hotel room accommodations (not including incidentals) while at such Location, and nonexclusive ground transportation between all airports, hotels and the location where Mayweather's promotional services are to be rendered (on an non-precedential, non-citable basis, Mayweather may elect to receive the cash value (the amount to be determined by Players) in lieu of any travel package or reimbursement as set forth in this Section 5 for Mayweather's travel expenses in connection with any promotional or marketing services or appearances).

2.    Rules and Regulations.

(a)    Mayweather shall fully cooperate to ensure that all necessary medical examinations and other testing of Mayweather (including, without limitation, drug testing) are undertaken prior to the Match and likewise address all related matters in preparation for the Match to ensure full compliance with the applicable sanctioning body, Boxing Commission or other regulatory requirements. Mayweather shall submit to such medical tests that may be required by the Boxing Commission, as applicable, and/or applicable sanctioning body and understand and agree that he may be disqualified, fined, suspended or otherwise disciplined if he fails to take and pass such tests as required by the Boxing Commission.

(b)    Players shall use its reasonable efforts to comply with all statutorily required health and safety criteria during the Match as required by the Boxing Commission and/or

8

CONFIDENTIAL

sanctioning body having oversight over the Match and to acquire and maintain any accident or other insurance policy required by the applicable sanctioning bodies and Boxing Commission.

(c)    Mayweather's gloves shall be subject to approval by the Boxing Commission and sanctioning organizations, if applicable, and Mayweather will advise Players of the brand and style of gloves to be used at least two (2) week prior to the scheduled Match. In no event will the weight of the gloves be in violation of, or contrary to, the weights stated in the rules of the sanctioning body or the rules of the Boxing Commission. The gloves shall be available for inspection by each fighter and trainer at the rules meeting, including spares and then held by the referee or otherwise pursuant to the rules of the Boxing Commission.

5.    Representations, Warranties and Covenants.

(a)    Lender and Mayweather represent and warrant to Players and Netflix that Lender is a Florida limited liability company duly formed under the laws of the jurisdiction in which it was formed, that they are free to enter into this Agreement and perform all its and his obligations under this Agreement, and that neither Lender nor Mayweather has not heretofore entered into, and will not hereafter enter into, any contract, agreement or understanding, whether written or oral, which would interfere with its and his full and complete performance hereunder.  Lender and Mayweather further represent and warrant to Players and Netflix that there are no claims, demands, actions, criminal or regulatory matters, or causes of action pending or threatened affecting Lender or Mayweather or its or his affiliated entities or promoters which would interfere with the full and complete performance of its or his obligations hereunder.  Mayweather shall not participate in any boxing match, whether professional or exhibition, during the period between the date of this Agreement and the scheduled date of the Match.

(b)    Mayweather has not engaged and will not prior to the Match engage in any conduct described in the "Conduct Clause" set forth in Section 9(a)(iv) below.

(c)    Lender and Mayweather will indemnify, defend and hold Players and Netflix and their respective affiliates harmless from and against any and all claims, demands, actions, causes of action, losses, liabilities, cost, or expense, including without limitation reasonable attorney's fees and costs, that Players or Netflix or their respective affiliates may sustain or incur as a result of Lender and/or Mayweather's breach of any representation, warranty or covenant in this Agreement.

(d)    Players and Netflix shall each have the right, at its respective election, to obtain life or other insurance upon Mayweather in such amounts as it may determine, at its cost and expense including, but not limited to, insurance against the failure of Mayweather to appear and to participate in the Match; and Mayweather shall not have any right, title or interest in such insurance policy or the proceeds thereof. Mayweather will cooperate in all reasonable respects and timely respond to all requests in connection with the related application and examinations.

(e)    Lender and Mayweather acknowledge and agrees that the services to be rendered or furnished by Lender and Mayweather and the rights granted to Players and Netflix hereunder are of a special, unique, unusual and extraordinary character, giving them peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law and could cause Players and Netflix irreparable damage and injury. Accordingly, Players and Netflix shall be entitled to injunctive and other equitable relief to prevent any breach or default hereunder, without bond, which relief shall be in addition to and without prejudice to any other rights or remedies each may otherwise or additionally have. The sole right or remedy of Lender and/or Mayweather as to any breach or alleged breach of Players or Netflix (or their respective assigns, successors or licensees) of any of the terms,

CONFIDENTIAL

conditions or other provisions of the Agreement will be the recovery of money damages, and in no event will Lender or Mayweather be entitled to equitable or injunctive relief or to enjoin, prohibit or restrict the development, production, exhibition, broadcast or other exploitation of the Match, the Event or any of the Ancillary Rights set forth herein, and the rights herein granted by Lender and Mayweather will not terminate by reason of such breach or alleged breach.

(f)    Lender and Mayweather acknowledge that the Netflix Agreement includes an exclusive first right of negotiation in favor of Netflix to produce, distribute, stream, exploit, market and promote any rematch between Mayweather and Pacquiao live and on-demand on terms to be negotiated in good faith (to be negotiated by the parties during the thirty (30) day period following the Event). Mayweather agrees to participate in good faith in any rematch negotiation.

(g)    All of the representations and warranties of Lender and Mayweather set forth herein shall be, and are, joint and several.

6.  Personal Sponsorships.  Mayweather acknowledges and agrees that the Netflix Agreement contains certain restrictions and limitations on sponsorships including personal sponsorships for the Match and the Event including without limitation Exclusive Categories, timing limitations and prohibited categories (such as, for example and not by way of limitation, the sponsors not being a Netflix competitor or in the following Netflix prohibited categories: Unlawful gambling operators, tobacco, cannabis/CBD, firearms, adult-oriented content or services, alcohol and alcoholic beverages, energy drinks and supplements, telecommunications and other products and services to be determined, and Mayweather shall otherwise comply with Netflix's advertising or sponsorship guidelines). Players does not guarantee that Netflix will agree to allow any such Sponsorship opportunities.

7.  Postponement or Cancellation; Right of Termination.

(a)    In the event that:

(i)    a physician licensed or recognized by the Boxing Commission certifies that Mayweather or Pacquiao is mentally or physically disabled or injured to such an extent that one or both cannot participate in the Match as scheduled;

(ii)    the Match is prevented from taking place or the Event is prevented from taking place or is rendered commercially or logistically unfeasible or impractical by reason of any act of God, fire, flood, war or act or terrorism, civil unrest, riot or other public disturbance, epidemic or pandemic (including, without limitation, the COVID-19 pandemic), labor dispute, strike or walkout, public disaster, national or regional emergency, power failure, transmission or other technical issues impacting the streaming or broadcast of the Event, other calamity, inability to secure necessary materials, closure of the venue or Site of the Match, government restrictions, ordinances or regulations which may the occurrence of the Event impractical or unduly expensive, violence or threat of violence, or any governmental or boxing or athletic commission or association enactment, determination or action or regulation, shortage of adequate power or transportation facilities, any circumstances impacting the desired venue's availability, or any other events beyond the reasonable and direct control of Players (each a "Force Majeure Event");

(iii)    the telecast (streaming) of the Event is delayed, prevented from occurring on the scheduled date or canceled as provided in Players' agreements for production or distribution of the telecast including, without limitation, the Netflix Agreement; or

CONFIDENTIAL

(iv)    Netflix invokes a "Conduct Clause" in the Netflix Agreement, which shall substantially provide that if, in Netflix's good faith determination following a third-party investigation, Mayweather or Pacquiao, or any other party engaged to provide services for the Match, the Event or any production or program made or to be made in connection therewith, has engaged in conduct or otherwise participated in any situation or occurrence that brings Netflix into public disrepute, contempt, or scandal, or that reflects or would reflect unfavorably upon Netflix (or its assigns or licensees) or the Match, Event, or any production or program made or to be made in connection therewith, then Netflix (or its assigns or licensees) shall have the right to suspend and/or terminate Netflix's obligations under the Netflix Agreement;

then Players shall, within ten (10) business days after the physician so certifies, or within ten (10) business days of the occurrence of a Force Majeure Event or any other event causing the delay or termination of the Match as described in this Section 9, give Mayweather written notice of (1) the reason why the Match cannot be conducted as scheduled, and (2) Players' decision, which decision shall be within Players' sole discretion, to (x) reschedule the Match ("**Rescheduled Match**") to a date not later than June 1, 2026, or as otherwise mutually agreed upon, or (y) terminate this Agreement.  Should Players determine in its sole discretion to reschedule the Match hereunder, this Agreement shall remain in full force and effect during the period of any such extension or postponement.   Should Players determine to terminate this Agreement, then this Agreement shall terminate and no payment shall be due to Mayweather under this Agreement or otherwise in connection with the Event.  If there is a Rescheduled Match, all of the terms, conditions and other provisions of this Agreement including but not limited to all of the terms and conditions of this Section 9 shall apply to such Rescheduled Match as if such Rescheduled Match was the initial Match contemplated pursuant to this Agreement.

(b)    If Lender or Mayweather shall fail or refuse for any reason to fully perform its or his obligations or agreements set forth in this Agreement, or breaches any representation, warranty, agreement or covenant in this Agreement, and fails to cure such failure or breach within ten (10) business days if such failure or breach occurs sixty (60) or more days from the Match (which cure period shall be reduced to two (2) business if such failure or breach occurs less than sixty (60) days of the Match) from days of receipt of written notice (if such failure or breach is reasonably curable in Players' sole discretion), then in addition to any other rights and remedies it may have in such event, Players may terminate this Agreement by notice to Lender and Mayweather.

(c)    Lender and Mayweather acknowledge that Players' obligations with respect to the Event and the Match, including without limitation its payment of all amounts due to Lender and/or Mayweather under this Agreement, is contingent upon Netflix satisfying its obligations to Players under the Netflix Agreement. In furtherance thereof, Lender and Mayweather acknowledge and agree that if Netflix fails to perform its obligations or terminates the Netflix Agreement by reason of any cause, act or event, including, without limitation, due to any act or omission on the part of Mayweather or Pacquiao, or any other person, then Players may, at its sole option, terminate this Agreement upon written notice to Mayweather.

(d)    If at any time after the date hereof and prior to the Match, Mayweather should commit any act or be charged with any crime or misdemeanor and due to such occurrence, the Site host, arena, distributor, Event host or sponsor informs Players or Netflix of its intention to cancel its contract with Players or Netflix for the Match or Event, Players shall have the right and option, in its sole discretion, and in addition to all of its other rights and remedies, to terminate this Agreement upon notice to Mayweather, without any further obligation or liability to Lender or Mayweather.

CONFIDENTIAL

(e)    If Players exercises its right to terminate this Agreement pursuant to any the preceding provisions of this Section 9(a) through (d) above or any other provision of this Agreement including, without limitation, Section 2(e) above, neither Lender nor Mayweather shall have any further rights hereunder, and Players shall have no further obligations under this Agreement including, but not limited to, with respect to the Base Compensation, the Net Proceeds Compensation or otherwise.    In the event of any termination by Players pursuant to this Section 9, Lender and/or Mayweather shall immediately, but within ten (10) calendar days, return to Players the Deposit and any other monies or sums paid or advanced to Lender or Mayweather in connection with this Agreement in full. Notwithstanding the foregoing, if the Match or the Rescheduled Match, if such Match is rescheduled pursuant to the provisions of this Section 9 does not occur as a direct result of Pacquiao's inability to obtain medical clearance to participate in the Match (or the Rescheduled Match, as the case may be), and Mayweather is ready, willing and able to participate in the Match (or the Rescheduled Match, as applicable) and Mayweather is not in breach or default of any of the terms, conditions or other provisions of this Agreement, then Players at the request of Netflix may substitute a new opponent in the place of Pacquiao to be mutually approved by Mayweather (such approval not to be unreasonably conditioned, withheld or delayed) for a new boxing match to occur on a date prior to June 1, 2026 and, in the event Players is unable to secure a new opponent and the new boxing match does not occur prior to June 1, 2026, then Lender and Mayweather shall retain the Deposit as a termination fee in lieu of any other remuneration, compensation or payments pursuant to this Agreement (including, without limitation, the balance of the Base Compensation and/or the Net Proceeds Compensation).

8.    Integrity of Performance.

(a)    During the term of this Agreement, Mayweather shall be ready, willing and able to participate in the Match to the best of his ability and shall honestly compete and give an honest exhibition of skills.  Without limiting any of Players' rights or remedies at law or in equity, Players shall have the right to terminate this Agreement with respect to the Match if Mayweather is not ready, willing and able to participate in the Match to the best of his ability.

(b)    Mayweather and his accompanying personnel shall conduct themselves in a reasonable manner in conformity with public conventions, morals and standards of decency while at the Site of the Match or otherwise participating in activities relating to the Event and shall not do or commit any act that could degrade Mayweather, Pacquiao, Netflix, Players or the entities which own or manage the Site of the Match, or any Event host or sponsor, or television broadcaster, distributor or exhibitor, or their respective affiliates and related parties, or subject any of them to public hatred, contempt, scorn, ridicule or disrepute, or shock or offend the patrons or employees of any such entity, prejudice their standing in the community or subject them to liability.  A breach of this provision shall entitle Players to terminate its obligations under this Agreement.

9.    Governing Law; Jurisdiction and Venue.  This Agreement is to be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and to be fully performed therein.  Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate (collectively, a "**Dispute**"), shall be submitted to final and binding arbitration in New York City in the County of New York pursuant to the arbitration rules of JAMS, or its successor ("**JAMS**"), pursuant to the procedure set forth below. The arbitration will be initiated and conducted according to either the JAMS Streamlined Arbitration Rules (for claims at or under US$250,000) or the JAMS Comprehensive Arbitration Rules (for claims over US$250,000), except as modified herein, in effect at the time the request for arbitration is made (the "**Arbitration Rules**"). The Parties agree that a Dispute will include the determination of the scope or applicability of this Agreement

12

CONFIDENTIAL

o arbitrate and the arbitrability of the Dispute, including but not limited to any claim of waiver. The arbitration will be conducted before a single neutral arbitrator appointed in accordance with the Arbitration Rules. Unless the Parties agree otherwise, the neutral arbitrator will be a former or retired judge with substantial experience in matters involving the entertainment industry, who is affiliated with JAMS. The arbitrator will follow New York substantive law in adjudicating the Dispute. The arbitrator will provide a detailed written statement of decision which will be part of the arbitration award. The arbitrator's award will be final and binding except to the extent that limited judicial review is permitted by applicable law. The Parties will equally pay all JAMS arbitration costs and the arbitrator's fees; provided, however, that the prevailing party in any arbitration as determined by the arbitrator shall be entitled to recover its costs and expenses of arbitration, including without limitation reasonable attorneys' fees and costs. The parties waive the right to seek punitive damages and the arbitrator will have no authority to award such damages. Further, the arbitrator shall have no authority to enjoin, restrict, prohibit or otherwise impede the broadcast, exhibition or other exploitation of the Match, the Event or any of the Ancillary Rights set forth in this Agreement. If either Party refuses to perform any or all of its obligations under the final arbitration award within thirty (30) days of such award being rendered, then the other Party may confirm or enforce the final award in any court of competent jurisdiction in New York City, New York. All Parties consent to the personal jurisdiction of the state and federal courts located in the County of New York, for purposes of confirming or enforcing any arbitration award. Judgment on the award may be entered in any court having competent jurisdiction. **THE PARTIES UNDERSTAND AND AGREE THAT BY CONSENTING TO ARBITRATION, THEY ARE WAIVING THE RIGHT TO A TRIAL BY JURY.**

10. _Entire Agreement_. This Agreement sets forth the entire understanding and agreement of the parties hereto regarding the subject matter hereof, and supersedes all prior agreements, statements, negotiations and understandings (whether written or oral, express or implied) between the parties hereto regarding such subject matter. This Agreement may only be modified by a writing signed by both parties.

11. _Further Assurances_. Lender and Mayweather shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, without limitation, a standard boxing contract in such form as may be required by the local governmental authority with jurisdiction over the Match and/or the world organization(s) sanctioning the Match, if applicable. In the event of any conflict between the terms of this Agreement and any standard boxing contract, the terms of this Agreement shall prevail. No Party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby. Without limiting the foregoing, Lender and Mayweather shall promptly execute, deliver, file or consent to the filing of, and comply with, all contracts, agreements and other documents, if any, as may be required by any Governing Authority, or by Players, in each case as it pertains to Mayweather participating in the Match in a manner consistent with the terms and conditions set forth in this Agreement.

12. _Counterparts_. This Agreement may be executed in counterparts, including by electronic signature, each of which shall be deemed an original and all of which shall together constitute one and the same instrument.

13. _Notices_. Any notice required or desired to be given hereunder shall be in writing and sent via e-mail as follows:

a) To Players Era, LLC:

Players Era, LLC
c/o Paradigm Talent Agency, LLC

13

CONFIDENTIAL

700 N. San Vicente Blvd., Ste. G820
West Hollywood, CA  90069
Attention:  Andrew Ruf
Email:  aruf@paradigmagency.com

b)  To Lender or Mayweather:

Frist Apex Ventures LLC
7300 West Camino Real, Ste. 201
Boca Raton, FL  33433
Attention:
Email:

14. Announcement and Confidentiality. The official announcement of the Match will be made as and when determined by Players and Netflix and after meaningful consultation with Mayweather. Mayweather will not disclose or make any comment, press release or social media post concerning the existence of this Agreement or the Match prior to such official announcement. Mayweather will maintain the terms of this Agreement as strictly confidential and will to refrain from publicly announcing or reporting such terms, unless and until expressly authorized in writing by Players.

15. Assignment. Subject to Players entering into the Netflix Agreement, Netflix is an intended third-party beneficiary of the rights granted by Lender and Mayweather hereunder. Players and Netflix shall each have the right to assign, license or transfer any or all of the rights granted to it hereunder to any other person, firm or corporation in connection with the performance of its obligations or exploitation of any of the rights set forth herein, including, without limitation, to third parties engaged by Players or Netflix to assist with the production, distribution, marketing or promotion of the Event and/or Match, and to its designated production a licensed professional boxing promoter engaged to stage, arrange and promote the Match and the Event of which it is a part.

*[Signature Page Follows]*

14

CONFIDENTIAL

IN WITNESS WHEREOF, each of the Parties hereto as executed this Agreement as of the date first above written.

**PLAYERS ERA, LLC,**
a Delaware limited liability company

By_____

Title_____

**FRIST APEX VENTURES LLC**
a Florida limited liability company

By_____

Title_____

FLOYD MAYWEATHER, JR.

15