UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
CSI ENTERTAINMENT, LLC, et al.,                               :
                                                              :
                               Plaintiffs,                    :
                                                              :           26-CV-5150 (VSB)
                   -against-                                   :
                                                              :        **OPINION & ORDER**
FLOYD MAYWEATHER JR. and                                      :
FRIST APEX VENTURES LLC,                                      :
                                                              :
                               Defendants.                    :
                                                              :
------------------------------------------------------------- X

Appearances:

Judd Burstein
Peter B. Schalk
Judd Burstein, P.C.
New York, NY
*Counsel for Plaintiffs*

Cesie Chanel Alvarez
Melissa K. Glass
David B. Jonelis
Singer Weinsten Wolf & Jonelis LLP
Los Angeles, CA
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Before me is the motion for a temporary restraining order ("TRO") of Plaintiffs CSI

Sports Events, LLC, CSI Entertainment Events, LLC, and CSI Entertainment, LLC, (collectively

"Plaintiffs" or "CSI"), against Defendants Floyd Mayweather Jr. ("Mayweather") and Frist Apex

Ventures, LLC ("Frist," and collectively with Mayweather, "Defendants").  Because I find that

Plaintiffs have failed to meet the requirement of irreparable harm necessary for a TRO, Plaintiffs'

motion for a TRO is DENIED.

## I.    <u>Factual and Procedural History</u>

On June 18, 2026, Plaintiffs filed a complaint against Defendants for injunctive relief, breach of contract, and unjust enrichment. (Doc. 1 ("Compl.").) On June 19, 2026, Plaintiffs filed an emergency motion for a TRO and preliminary injunction, accompanied by nine exhibits. (Doc. 5 ("Motion"); Docs. 5-1–5-9.) Plaintiffs also filed a memorandum of law in support, (Doc. 9 ("Mem.")), and declarations from Richard Miele, (Doc. 6), John Skipper, (Doc. 7), and Mark Taffet, (Doc. 8). On June 24, 2026, Defendants filed a memorandum of law in opposition, (Doc. 16 ("Opp'n")), supported by an affidavit from Walter Jordan that attached one exhibit, (Doc. 16-1–16-2), an affidavit from Stephen Espinoza, (Doc. 16-3), and another affidavit from Cesie Alvarez that attached four exhibits, (Docs. 16-4–16-8). On the same day, Plaintiffs filed a reply memorandum in support of the Motion, (Doc. 17), accompanied by reply declarations of Richard Miele, (Doc. 18), Mark Taffet, (Doc. 19), Victor Weberman, (Doc. 20), and Judd Burstein, (Doc. 21).

On June 24, 2026, I held a hearing during which I heard argument related to the Motion. (*See* Temporary Restraining Order Transcript ("TRO Tr.").) At the hearing, I requested that the parties submit supplemental submissions, including declarations, by noon on June 25, 2026, which were subsequently filed. (*See* Docs. 22–28.) In their supplemental submission, Defendants indicated that "the Mayweather-Zambidis event will no longer proceed in Athens, Greece as planned on" Saturday, June 27, 2026. (Doc. 28 at 1.) I issued an order on June 25, 2026 indicating that I would be holding any order on the Plaintiffs' Motion in abeyance pending a follow-up conference the week of June 29 to discuss the continued need for a ruling. (Doc.

30.)  On June 30, 2026, I held a follow-up conference at which both parties agreed that there was a continued need for a ruling on the Motion.[1]

Plaintiffs seek to enjoin an exhibition bout between Mayweather and Michael Zambidis, (the "Zambidis Exhibition").  (Doc. 5 ¶ 3.a.)  Plaintiffs signed a series of contracts and related documents that they claim give them exclusive rights to promote a fight between Mayweather and Mike Tyson, (the "Tyson Exhibition").  (Compl. ¶ 2.)  Plaintiffs signed at least a total of four contracts between August 10, 2025 and February 22, 2026 that were also signed by Mayweather, Frist, or both.  (Doc. 1-1 ("August 10, 2025 Agreement"); Doc. 1-5 ("November 6, 2025 Agreement"); Doc 1-14 ("February 22, 2026 Agreement I"); Doc. 1-16 ("February 22, 2026 Agreement II").)  Collectively, the agreements provided Plaintiffs with exclusive rights over two (2) Mayweather fights, one of which was the Tyson Exhibition.  (TRO Tr. 56:21-58:2.)  The August 10, 2025 Agreement provided for the Tyson Exhibition to "occur not later than April 25, 2026, unless otherwise extended to June 30, 2026."  (August 10, 2025 Agreement § 10.)  The February 22, 2026 Agreement I provided for the event to "occur at any time up to and including May 31, 2026."  (February 22, 2026 Agreement I § 3.)  The August 10, 2025 Agreement provided that "if it is medically determined that the Main Event Opponent cannot participate in the Main Event for at least six (6) months after the scheduled Event Date, then, [Mayweather] shall be permitted to engage in another boxing [m]atch [] prior to December 31, 2026."  (August 10, 2025 Agreement § 28 ("Replacement Fight Clause").)  At the time of the hearing on June 24, 2026, the Replacement Fight Clause was in effect, having never been rescinded, revoked, superseded, or amended.  (TRO Tr. 13:23-25.)

On May 12, 2026, a CSI entity sent a letter to Defendants stating, without providing supporting documentary evidence, that "Mike Tyson [] broke his hand in March 2026.  He is not

---

[1] While I indicated during the June 24 and 30 conferences that I might initially issue a short order resolving the Motion which would be followed by a more detailed opinion, this Opinion & Order fully resolves the Motion.

fully recovered and as a result of this injury the fight will not happen on May 30, 2026.  He is able to fight at a time within the next 6 months, so our agreement is tolled, and under our agreement, Floyd Mayweather [] is not permitted to participate in any fights in the interim, until after the Tyson [F]ight."  (Doc. 1-22.)  As of March 11, 2026, Tyson stated that he believed the fight would occur on April 25, 2026 and referred to his injury as "just a little sprain."  (Doc. 16-6.)  On June 24, 2026, Plaintiffs, as part of their reply filing, submitted an unsworn note from Daniel D. Lee, M.D.  (Doc. 18-2.)  The note stated in its entirety that "Mike Tyson was evaluated and treated for a fractured hand in March 2026.  Due to this fracture, he was not medically cleared to fight in May 2026."  (*Id.*)  In a supplemental declaration, Dr. Lee stated that the hand fracture "does not prevent [Tyson] from fighting Mayweather in September of 2026."  (Doc. 26 ¶ 4.)  A managing partner for Paradigm Talent Agency, LLC also indicated in a supplemental declaration that Tyson "is ready, willing, and able" to participate in the Tyson Exhibition on September 26, 2026.[2]  (Doc. 27 ¶ 5.)  Plaintiffs have not submitted any additional evidence of the severity or nature of Tyson's injury or provided details regarding whether he has been medically cleared to fight or on what date he will be cleared to return to fighting.

Richard Miele also stated in a supplemental declaration filed on June 25, 2026 that he had advised three other individuals at a June 2, 2026 lunch that a venue in the Democratic Republic of Congo was "ready, willing, and able to host" the Tyson Exhibition on September 26, 2026, "as long as (a) the Ebola outbreak in the Congo had been contained, and (b) the entry ban placed by the United States for travelers from the Congo was lifted" and that "a non-binding [] hold" had been placed on the American Airlines Center in Dallas, Texas as a backup venue.  (Doc. 24 ¶¶ 11–12.) However, Plaintiffs acknowledged in their reply memorandum of law filed on June 24, 2026 that "due to the Ebola virus, [the Democratic Republic of the Congo] has recently been designated as a

---

[2] Tyson did not submit a declaration related to his physical ability and willingness to fight in September 2026.

'no travel' destination," and indicated on that date that "the Tyson Fight will be moved to another destination outside of the United States."[3]  (Doc. 17 at 6 n.4.)  Plaintiffs have not shown that a final venue has been secured for the proposed Tyson Exhibition on September 26, 2026, that the required rights have been obtained for the fight to go forward on that date, or that the event has received the necessary funding for it to proceed.  Plaintiffs, at the hearing, explained that the Tyson Exhibition would be a "spectacle" and the parties agreed that both the Tyson Exhibition and the upcoming Zambidis Exhibition were exhibitions.[4]  (TRO Tr. 18:24-19:9, 31:15-32:14.)  Plaintiffs also acknowledged at the hearing that my granting the Motion would not ensure that the Tyson Exhibition would occur on September 26, 2026 and that Plaintiffs' "theory" that injunctive relief would force a fight on that date was also predicated on Mayweather "reconsider[ing] honoring his obligations." (TRO Tr. 32:15-33:18.)  Put differently, that Mayweather would reconsider "terminat[ing] his business relationship" with CSI is another necessary predicate to the Tyson Exhibition occurring as initially planned.  (*See* Doc. 1-23 (June 9, 2026 Letter from Mayweather to CSI).)

## II.    <u>Legal Standard</u>

"The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (quoting *Pan Am.*

---

[3] I note that prior to Miele's June 2, 2026 lunch, on May 18, 2026, the Center for Disease Control ("CDC") reported that "the United States began restricting entry for travelers who had been in DRC, Uganda, or neighboring South Sudan in the previous 21 days.  Since May 22, only U.S. citizens or nationals are allowed to enter the United States from those countries", and that the CDC recommended "avoiding non-essential travel to Ituri, Nord-Kivu, and Sud-Kivu provinces in [the DRC]." *Ebola Outbreak: Current Situation*, CDC, https://www.cdc.gov/ebola/situation-summary/index.html (last visited July 2, 2026).  On May 26, 2026, the U.S. Embassy in the Democratic Republic of the Congo issued a health alert that stated, in part, that the "Department of State updated the Democratic Republic of the Congo (DRC) Travel Advisory which remains Level 4 and continues to advise U.S. citizens Do Not Travel to the DRC due to the Ebola outbreak." *Health Alert – U.S. Embassy Kinshasa, DRC*, U.S. Emb. Dem. Rep. Congo, (May 26, 2026), *available at* https://cd.usembassy.gov/health-alert-u-s-embassy-kinshasa-drc-may-26-2026.

[4] "Generally speaking, most 'major' fights – including title fights – are professional bouts, while exhibition contests are those staged with more of a focus on the audience and entertainment." *What Is an Exhibition Fight and how Is it Different to a Professional Bout?*, The Independent, (Feb. 24, 2023), https://sports.yahoo.com/article/exhibition-fight-different-professional-bout-175712648.html.

*World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962)).  A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The standard for an entry of a TRO is essentially the same as for a preliminary injunction." *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (citing *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)); *see also Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 421 (S.D.N.Y. 2018) ("In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and temporary restraining orders." (citing *Andino*, 555 F. Supp. 2d at 419)); *Goldstein v. Hochul*, No. 22-CV-8300, 2022 WL 20305832, at *1 (S.D.N.Y. Oct. 3, 2022) (same); *Pers. Staffing Grp., LLC v. XL Ins. Am., Inc.*, No. 22-CV-10259, 2023 WL 2025169, at *2 (S.D.N.Y. Jan. 10, 2023) (same).

In order to obtain injunctive relief, the Circuit has required "a party seeking a preliminary injunction to show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)); *see also Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010) (preliminary injunction must be based "upon a finding of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief" (collecting cases)).  "[I]t has always been the rule that the movant bears the

6

burden of persuasion to establish the situation meets the standard for a preliminary injunction, and must offer proof beyond the unverified allegations of the pleadings." *Stern v. Highland Lake Homeowners*, No. 18-CV-4622, 2021 WL 1164718, at *5 (S.D.N.Y. Mar. 26, 2021) (quoting *Silver v. Lavandeira*, No. 08-CV-6522, 2009 WL 513031, at *6 (S.D.N.Y. Feb. 26, 2009)).  The "requirement for substantial proof" for the party seeking injunctive relief "is much higher" than it is for "a defendant's motion for summary judgment." *Mazurek*, 520 U.S. at 972.  The party seeking the injunction carries the burden of persuasion to demonstrate, "*by a clear showing*," that the necessary elements are satisfied.  *Id.* (emphasis in original) (internal quotation marks omitted).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trs. for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 727 (S.D.N.Y. 2019) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted)); *see also Basank v. Decker*, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020) (same applied to a TRO).  To establish irreparable harm, movants must demonstrate "they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (per curiam)).  Irreparable harm is one for which "money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam) (quoting *N.Y. Pathological & X–Ray Lab'ys., Inc. v. Immigr. & Naturalization Serv.*, 523 F.2d 79, 81 (2d Cir. 1975)).

The Second Circuit has found that, for purposes of a preliminary injunction motion, "an evidentiary hearing is not required when, *inter alia*, disputed facts are amenable to complete resolution on a paper record." *Moore*, 409 F.3d at 512 (paraphrasing *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998)); *see also Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 37 (2d Cir. 1988) (noting that oral testimony was not required on a motion for a preliminary injunction where the "most significant factors . . . would have remained essentially unchanged by any additional evidence").

### III.   <u>Discussion</u>

I note from the onset that I need not reach the issue of Plaintiffs' likelihood of success on their breach of contract claims, because I find below that Plaintiffs have not established the predicate showing of irreparable harm necessary to support a claim for injunctive relief.[5]  This is because irreparable harm is the "*sine qua non* for preliminary injunctive relief," *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1295 (2d Cir. 1995), meaning that "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990).

Nonetheless, I note that Defendants have raised concerns about the validity of the underlying contracts that will require further interrogation and analysis as this case proceeds. For example, Mayweather submits a declaration claiming that he "had not received the $2 million or $2.5 million payments allegedly made by CSI to Frist Apex." (Doc. 28-1.)  Defendant Mayweather filed a separate lawsuit against Frist Apex in New York State Court on May 21,

---

[5] Similarly, because Plaintiffs fail to establish irreparable harm, I do not assess whether a balance of hardships tip decidedly toward Plaintiffs.

2026, alleging fraud, breach of fiduciary duty, and five other causes of action.  (Doc. 16-5.)

Moreover, the August 10, 2025 Agreement and November 6, 2025 Agreement between CSI and

Frist are structured in a bipartite manner, as agreements between Frist and CSI—neither of which are

signed by Mayweather—and with each agreement having a rider, signed by Mayweather, appended

as exhibits.  (*See* August 10, 2025 Agreement Ex. B; November 6, 2025 Agreement Ex B.)

Discovery and fact-finding will be needed to determine, among other things, the genesis of the

contracts that Frist signed with CSI, the extent to which Mayweather was aware of the terms of these

contracts, and whether there is any basis for Mayweather to challenge the enforcement of those

contracts.  In any event, the need for discovery and the existence of these contested factual issues do

not impact my decision on Plaintiffs' motion for injunctive relief because I find that Plaintiffs fail to

demonstrate irreparable harm, and so their motion cannot succeed.

Plaintiffs claim that they will suffer reputational harm as a result of the Zambidis

Exhibition.  They argue that "Mayweather fighting without Plaintiffs' involvement would

irreparably damage their reputation and credibility in the boxing industry, particularly after

global public announcements of the relationship."  (Mem. 11.)  In response, Defendants assert

that Plaintiffs' alleged harm is "speculative," (Opp'n 20), and note that "Plaintiffs remain free to

market, broadcast, and monetize the Tyson event and any subsequent events,"[6] (*id.* at 21).

Defendants further respond that "Plaintiffs cannot establish irreparable harm because the injuries

---

[6] Indeed, CSI's website contains an advertisement/teaser for the Tyson Exhibition.  *A Leading Multimedia Company*, CSI Sports, https://csisports.tv (last visited July 2, 2026).  I note that the advertisement/teaser merely states the Tyson Exhibition will occur in the Fall 2026 not September 26, 2026.  Breach of contract disputes regarding promotional rights are not uncommon within the world of professional boxing, *see e.g.*, Chris McKenna, *Boxing Braced for $1bn Lawsuit Over TKO and Saudi-Backed Sela's Zuffa Launch*, The Athletic, (Feb. 25, 2026), https://www.nytimes.com/athletic/7070249/2026/02/25/frank-warren-dana-white-sela-lawsuit/; Mike Coppinger, *Fanmio Platform Suing Boxer Ryan Garcia, Promoter Golden Boy*, ESPN, (Mar. 14, 2025), https://www.espn.com/boxing/story/_/id/44253247/fanmio-platform-suing-boxer-ryan-garcia-promoter-golden-boy, and CSI's website indicates that it is an established and "leading" promotional company with more than twenty years in business, so it is unlikely that this dispute is as exceptional or unusual as Plaintiffs suggest, (*but see* Doc 7 ¶ 14 ("If Mayweather were to take another fight outside CSI's exclusive agreement, the resulting harm to CSI would be incalculable.")).

they identify are fundamentally economic and therefore compensable through an award of money damages." (*Id.* at 23–24.)  Finally, Defendants allege that Plaintiffs' emergency is one of their own making, because Plaintiffs failed to bring their claims for injunctive relief until the eleventh hour, just over one week before the Zambidis Exhibition was scheduled to occur despite having known about the Zambidis Exhibition since February 3, 2026.  (*Id.* at 22–23.)  Defendants are correct.

Based upon the facts and circumstances presented, I find that any reputational damage to CSI does not establish irreparable harm.  The Zambidis Exhibition and the related dispute among the parties about that exhibition are "already known in boxing circles," and any reputational damage resulting from the dispute is "reversible if and when" CSI vindicates its contractual rights in this proceeding.  *Star Boxing, Inc. v. Tarver*, No. 02-CV-8446, 2002 WL 31867729, at *3 (S.D.N.Y. Dec. 20, 2002).  "Thus, whatever embarrassment could arise from [Mayweather's] breach has already occurred."  *Id*.  In other words, to the extent Plaintiffs will suffer reputational damage, such damage has already taken place and is substantially completed, so further incremental damage is substantially mitigated.  As in *Tarver*, the claims of reputational harm do not entitle Plaintiffs to injunctive relief because they are "of a sort commonly assessed by courts and arbitrators and remedied through monetary awards."  *Id.*

It is worth noting that, as a more general matter, an injunction may be used to enforce a "negative covenant," i.e., a contract where "the covenantor promises that something shall not be done."  *Shubert Theatrical Co. v. Rath*, 271 F. 827, 830 (2d Cir. 1921).  For example, in 1931, the Second Circuit upheld an injunction issued against a boxer to enforce a negative covenant that had required him to grant Madison Square Garden the rights to his next boxing match, where "the defendant's services [were] unique and extraordinary" and "the damages for a breach [were]

incapable of ascertainment." *Madison Square Garden Corp., Ill. v. Carnera*, 52 F.2d 47, 49 (2d Cir. 1931). Here, Mayweather appears to have promised not to fight anyone other than Tyson until the Tyson Exhibition occurs, provided the preconditions of the contract are met. (August 10, 2025 Agreement.) In order to justify the specific performance of a contract regarding an athlete, a Plaintiff must show "that the player [is] an athlete of exceptional talent." *Nassau Sports v. Peters*, 352 F. Supp. 870, 876 (E.D.N.Y. 1972) (citation omitted). Defendants do not contest that Mayweather is "an athlete of exceptional talent," or that his "services are unique and extraordinary." (*But see* Doc. 16; Doc. 28 *passim.*)

However, "[i]n most of the cases in which negative covenants have been specifically enforced, the defendant owed a continuing obligation to the plaintiff for a specific term." *Lewis v. Rahman*, 147 F. Supp. 2d 225, 237 (S.D.N.Y. 2001). Here, because the contracts in question essentially only cover two fights, (*see* TRO Tr. 56:21-58:2), rather than an extended exclusive contract for a term of years, the "loss resulting from a breach by [Mayweather] can be measured in money," *Lewis*, 147 F. Supp. 2d at 238. Therefore, Plaintiffs fail to meet the second prong articulated in *Carnera*—their damages are not "incapable of ascertainment." 52 F.2d at 49 (citation omitted). This is particularly the case here because Mayweather has been retired for nine years, (Compl. ¶ 3), and Plaintiffs adduce no evidence in their voluminous briefing that he is ranked by any accredited boxing organization, (*but see* Docs. 6–9; 17–27). The same is true for Tyson, with whom Mayweather is slated to fight an "exhibition" that will be a "spectacle," rather than a challenge between two fighters vying for a title, a belt, or who are attempting to improve their professional ranking in any capacity. (*See* TRO Tr. 18:24-19:9, 31:15-32:14.)

Judge Cederbaum, in *Lewis*, denied injunctive relief to a boxing promoter seeking injunctive relief relating to a bout scheduled between Hasan Rahman "the current heavyweight

champion of the world," and Lennox Lewis, the fighter from whom Rahman had recently taken that title.  *Lewis*, 147 F. Supp. 2d at 227.  Here, as in *Lewis*, there is insufficient "evidence that the right to promote a champion boxer[, here a former champion boxer,] in a single bout, as distinguished from being that boxer's exclusive promoter for all bouts, carries the same reputational benefits."  *Id.* at 238.  Therefore, Plaintiffs do not demonstrate that damages are "incapable of ascertainment."  *Id.*

In addition, because the final details for the Tyson Exhibition remain tenebrous and I find that any possible injury resulting from the Zambidis Exhibition is speculative, Plaintiffs have "not adduced sufficient evidence to establish irreparable injury in this regard."  *Don King Prods., Inc. v. Mosley*, No. 15-61717-CV, 2015 WL 11198251, at *11 (S.D. Fla. Aug. 25, 2015).  Even were I to assume that it has been established that the Tyson Exhibition will definitively go forward in September, "[i]n other cases where a court enjoined a fighter, expert evidence or other persuasive testimony had been introduced that the fighter was likely to sustain particular injuries," in order to support the argument that such an injury could support irreparable harm and a finding of an injunction.  *Id.*  No such evidence has been presented here.  In fact, the parties agreed during the June 24, 2026 hearing that the gloves to be used at the Zambidis Exhibition are "different sized gloves, so they are less capable of hurting someone" and the fight "is a six-round fight," "at two minutes," rather than the traditional "12 rounds at three minutes."  (TRO Tr. 18:11-19:9.)  Given that the proposed Zambidis Exhibition is just that, an exhibition, (*see id.* at 18:24-19:9, 31:15-32:14), I find that such a likelihood of irreparable harm is not present here.

### IV.    **Conclusion**

For the reasons stated above, the motion for a temporary restraining order is DENIED. This order should not be interpreted as a finding on the merits of the parties' dispute on Plaintiffs' substantive claims.

12

I do not believe that an expedited hearing in the upcoming two months is necessary to adjudicate the merits of Plaintiffs' motion for a preliminary injunction given my findings regarding irreparable harm. As I noted above, the Second Circuit has found that, for purposes of a preliminary injunction motion, "an evidentiary hearing is not required when, *inter alia,* disputed facts are amenable to complete resolution on a paper record." *Moore*, 409 F.3d at 512 (paraphrasing *Charette*, 159 F.3d at 755); *see also Republic of Philippines*, 852 F.2d at 37 (noting that oral testimony was not required on a motion for a preliminary injunction where the "most significant factors . . . would have remained essentially unchanged by any additional evidence"). However, I recognize Plaintiffs' desire that I resolve the question of injunctive relief separate from the Zambidis Exhibition after the exchange of discovery and an evidentiary hearing. Thus, the parties shall meet and confer and propose a briefing and discovery schedule by July 9, 2026.

Any briefing on the preliminary injunction should also include argument, supported by caselaw, concerning whether an evidentiary hearing on the preliminary injunction is necessary before I issue a ruling on the preliminary injunction and this case proceeds in ordinary course. I am available for an evidentiary hearing between August 2 and August 5; August 24 and August 28; August 31 and September 4; September 8 and September 11; and September 14 and September 18.

SO ORDERED.

Dated:      July 2, 2026
            New York, New York

Vernon S. Broderick
United States District Judge