UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CSI ENTERTAINMENT, LLC, et al., Plaintiffs, -against- FLOYD MAYWEATHER JR. and FRIST APEX VENTURES LLC, Defendants. | 26-CV-5150 (VSB) **ORDER** |

VERNON S. BRODERICK, United States District Judge:

Before me is Plaintiffs' motion for expedited discovery. Requests for expedited discovery are governed by the "flexible 'good cause' or 'reasonableness' standard." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-CV-4242, 2014 WL 12959675, at *1 (S.D.N.Y. July 23, 2014) (collecting cases). In adjudicating discovery in advance of a preliminary injunction hearing "it makes sense to examine the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (emphasis in original) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623–24 (N.D. Ill. 2000)). Courts have evaluated motions for expedited discovery in relation to preliminary injunctive relief by considering "the connection between the requested discovery and the avoidance of irreparable injury, evidence of injury to Plaintiff absent the requested discovery, evidence of injury to Defendant should expedited discovery be granted, and the practical implications of granting the expedited discovery motion." *Kermanshahi v. Amazon Web Servs., Inc.*, No. 26-CV-3534, 2026 WL 1453631, at *1 (S.D.N.Y. May 22, 2026), *reconsideration*

*denied*, 2026 WL 1661409 (S.D.N.Y. June 9, 2026).

Here, Plaintiffs seek eight categories of documents: (1) "The last six months of statements for any financial accounts (i) in the names of Mr. Mayweather, Mayweather Promotions, or any trust of which Mr. Mayweather is a beneficiary, (ii) held in the name of any company or trust in which Mr. Mayweather has a direct or indirect ownership interest, (iii) for which Mr. Mayweather has signatory authority or holds de facto control, and (iv) from which payments for the indirect or direct benefit of Mr. Mayweather have been made" ("Request One"); (2) "[r]ecords from [Mayweather's] firm redacted to show . . . (i) the date of payments to [Mayweather's] firm for its representation of Mr. Mayweather and the source of the funds for such payment and (ii) whether any party other than Mr. Mayweather has assumed an obligation to pay or guarantee the payment of [Mayweather's] firm's fees" ("Request Two"); (3) "[a]ny (i) contracts entered into for Mr. Mayweather to participate in the original Zambidis Fight, redacted to show only the parties to whom payment was to be made for Mr. Mayweather's services and (ii) subsequent directions to pay any third parties for Mr. Mayweather; services" ("Request Three"); (4) "[a]ll communications concerning the rescheduling of the Zambidis Fight and the rules for that fight (e.g., number of rounds, size of the gloves, limits on kicking)" ("Request Four"); (5) "[a]ny current state or federal tax lien(s) filed against Mr. Mayweather or any business entity which he owns or any trust of which he is a beneficiary, and, if so, any IRS Forms 433B and 433F filed in connection therewith" ("Request Five"); (6) "[a]ll contracts, term sheets and/or communications concerning Mr. Mayweather fight[ing] any opponents other than Mr. Zambidis" ("Request Six"); (7) "[a]ll Communications between Mr. Mayweather and anyone acting on his behalf with Stephen Espino[z]a or any representatives of Mr. Espino[z]a concerning Mr. Mayweather's pending lawsuit against Mr. Espino[z]a" ("Request Seven"); and (8) "[d]ocuments sufficient to identify the amounts, if any, paid or to be paid to Mr. Espino[z]a

for his services as an expert in this case." ("Request Eight"). (Doc. 48-1 at 2–3.)

In general, these documents fall into three categories: Requests One, Two, Three, and Five request documents relating to the so-called "insolvency exception," raised for the first time in Plaintiffs' reply brief in support of their motion for a temporary restraining order, which claimed that Mayweather was "functionally bankrupt." (Doc. 17 at 10–11.) Requests Four and Six request information relating to the Zambidis Exhibition[1] and any other subsequent fights scheduled for Mayweather in advance of the Tyson Exhibition and/or subsequent to the Tyson Exhibition but before his scheduled fight with Manny Pacquiao. Requests Seven and Eight relate to the credibility of one of Mayweather's declarants, Stephen Espinoza.

In my order setting a briefing schedule on the preliminary injunction in this matter, I permitted the parties to submit a joint letter regarding "whether any limited document discovery is necessary to establish irreparable harm." (Doc. 45.) Plaintiffs make no showing as to how Requests Seven and Eight are connected to the necessary showing of irreparable harm. (*See* Doc. 48 at 6 ("CSI contends these materials are relevant to the issue of Mr. Espinoza's credibility, but does not explain how Mr. Espinoza's credibility is germane to proving irreparable harm.").) The likelihood that Plaintiffs will succeed on the merits will be addressed subsequently, and the credibility of Mayweather's witnesses and declarants can be evaluated at a later stage of the litigation. In other words, "Plaintiff has made no showing that this information or data will be destroyed or unable to be discovered for some other reason during the normal course of litigation," or how it is necessary to show irreparable harm. *Kermanshahi*, 2026 WL 1453631, at *2. This is particularly the case because I have already ruled, with regard to the alleged irreparable injury that Plaintiffs claim they would suffer from the holding of the

[1] Capitalized terms not defined herein have the same meaning as in the July 2, 2026 Opinion & Order. (*See* Doc. 40 ("Op").)

Zambidis Exhibition, without citing or relying on the declaration of Mr. Espinoza, that "claims of reputational harm do not entitle Plaintiffs to injunctive relief because they are 'of a sort commonly assessed by courts and arbitrators and remedied through monetary awards,'" (Op. 10 (quoting *Star Boxing, Inc. v. Tarver*, No. 02-CV-8446, 2002 WL 31867729, at *3 (S.D.N.Y. Dec. 20, 2002)), and "[g]iven that the proposed Zambidis Exhibition is just that, an exhibition, . . . a likelihood of irreparable harm is not present here," (*id.* at 12 (citing Temporary Restraining Order Hearing Transcript at 18:24-19:9, 31:15-32:14)). Plaintiffs' Requests Seven and Eight are therefore DENIED.

Plaintiffs' Requests One, Two, Three, and Five are also denied. In Plaintiffs' reply brief in support of their motion for a temporary restraining order, Plaintiffs raised for the first time the argument that they might suffer irreparable injury because Mayweather was "functionally bankrupt." (Doc. 17 at 10.) I did not and need not have considered that argument in adjudicating the motion for a temporary restraining order because arguments cannot be raised for the first time in reply briefs. *See Bektic–Marrero v. Goldberg*, 850 F. Supp. 2d 418, 432 (S.D.N.Y. 2012) ("Courts generally do not consider arguments raised for the first time in a reply brief." (internal quotation marks omitted)). Plaintiffs now claim that they are entitled to discovery of broad swathes of documents in an attempt to prove Mayweather's insolvency so as to entitle them to emergency relief. However, none of the cases cited by Plaintiffs actually deal with the scope of discovery that is appropriate in a preliminary injunctive posture to vindicate speculation that an opposing party is insolvent. For example, in *Brenntag Int'l Chemicals, Inc. v. Bank of India*, the Circuit affirmed a ruling that the insolvency of an entity could support irreparable harm. 175 F.3d 245, 250 (2d Cir. 1999). However, the entity in that case against whom relief was sought was indisputably in receivership. *Brenntag Int'l Chemicals, Inc. v. Norddeutsche Landesbank GZ*, 9 F. Supp. 2d 331, 333, 345–46 (S.D.N.Y. 1998), *aff'd sub nom.*

*Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999).

In their motion, Plaintiffs argue that I should apply the insolvency exception because "there is no requirement" expressly in the language of *Brenntag* that the entity against whom the moving party seeks the application of the exception to be bankrupt or in an insolvency proceeding. (Doc. 48 at 2.) However, Plaintiffs do not cite caselaw, and indeed, I am not aware of any, in which pure "speculation" "regarding the perilous financial condition" of a party justifies invocation of the insolvency exception. *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 186, 194 (S.D.N.Y. 2007) (rejecting application of the insolvency exception even though Plaintiff showed that the defendant "experienced some financial losses" over the preceding years and collecting cases); *see also Gen. Transp. Servs., Inc. v. Kemper Ins. Co.*, No. 03-CV-620, 2003 WL 21703635, at *4 (N.D.N.Y. June 25, 2003) (denying preliminary injunction when "assertions f[e]ll far short of establishing that defendant [wa]s in 'imminent' danger of becoming insolvent"). Here, there exists a genuine dispute of material fact as to the issue of Mayweather's alleged insolvency, as Mayweather's current manager submitted a sworn declaration that "there is no basis to conclude that Mr. Mayweather is at risk of insolvency or that he would be unable to satisfy a monetary judgment in the event one was entered against him." (Doc. 28-4; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (explaining that the "requirement for substantial proof" for the party seeking injunctive relief "is much higher" than it is for "a defendant's motion for summary judgment").)

To be sure, Plaintiffs will be entitled to probe the credibility of Jordan's assertions in his declaration on the merits and some modicum of discovery into Mayweather's financial status might theoretically be appropriate in this case during the ordinary course of litigation, but it would put the cart before the horse to permit unproven speculation regarding bankruptcy or insolvency to support what amounts to full-blown discovery on the issue. *See Daileader v.*

*Certain Underwriters at Lloyd's London - Syndicate 1861*, 670 F. Supp. 3d 12, 35 (S.D.N.Y. 2023) ("[A] party seeking a preliminary injunction must make a specific, concrete showing of the harm it will suffer absent an injunction, and cannot rely on speculative claims of harm."), *aff'd sub nom. Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, No. 23-690-CV, 2023 WL 7648381 (2d Cir. Nov. 15, 2023) (summary order), *and aff'd sub nom. Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351 (2d Cir. 2024).

There is also a serious legal question concerning the insolvency exception as courts have reconsidered the "continued vitality" of the exception, or at least the scope of the exception, in the wake of the Supreme Court's holding in *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999), which "appeared to cast doubt on the continued vitality of the broad exception for insolvency outlined in *Brenntag*." *Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 392 (E.D.N.Y. 2016). In *Vis Vires*, Judge Arthur Spatt in the Eastern District explained that although the Second Circuit held that "a defendant's pending insolvency can give rise to irreparable harm sufficient to justify a preliminary injunction," 149 F. Supp. 3d at 391 (quoting *Brenntag Int'l Chemicals, Inc.*, 175 F.3d at 249), he also noted that the Supreme Court in *Grupo* held that "because a preliminary injunction 'was historically unavailable from a court of equity . . . the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages,'" *id.* (quoting *Grupo Mexicano de Desarrollo S.A.*, 527 U.S. at 333). Therefore, many courts, both within and without this Circuit, have found that *Grupo* militates against a broad insolvency exception when the "underlying claims primarily seek monetary damages." *Id.* at 393 (explaining that although the Second Circuit has not reconsidered *Brenntag* in light of *Grupo*, "other courts have interpreted *Grupo* to stand for the principle that courts cannot issue preliminary injunctions based solely on the

insolvency of debtors where the plaintiffs' underlying claims primarily seek monetary damages" (collecting cases)).

In another recent case, Judge Victor A. Bolden in the District of Connecticut found that even "evidence of a lien" and "and overall net losses filed with the SEC" could not support invocation of the insolvency exception, because "courts cannot issue preliminary injunctions based solely on the insolvency of debtors where the plaintiffs' underlying claims primarily seek monetary damages." *GEOMC Co. v. Calmare Therapeutics, Inc.*, No. 14-CV-01222, 2021 WL 4145763, at *4 (D. Conn. Sept. 13, 2021) (internal quotation marks omitted). Plaintiffs cite no in-Circuit support for the contrary proposition, *i.e.*, where a showing of the kind proffered in the joint letter motion substantiates sweeping discovery requests for financial statements and bank records. Consequently, Plaintiffs' Requests One, Two, Three and Five are DENIED.

Plaintiffs' Requests Four and Six present a somewhat closer call, although they remain overly broad in scope. Both requests relate to the details of the Zambidis Exhibition and other proposed fights between Mayweather and other fighters in advance of the Tyson Exhibition. Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The party moving to compel bears the initial burden of demonstrating relevance and proportionality." *Kleeberg v. Eber*, No. 16-CV-9517, 2019 WL 2051811, at *2 (S.D.N.Y. May 9, 2019). Duplicative and overbroad discovery should not be permitted. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

With regard to Request Four, I agree with Mayweather that seeking all communications

relating to the rescheduling of the Zambidis Exhibition is overly broad, burdensome, and duplicative because "the governing agreement" relating to the fight can be produced to establish the rules of the fight. (Doc. 48 at 5–6.) Therefore, Plaintiffs are entitled only to contracts, agreements, and documents sufficient to establish the underlying rules and logistics for the Zambidis Exhibition, including the number of rounds, size of the gloves, and limits on kicking. If the governing agreement is insufficient to establish these rules and logistics then Plaintiffs may file a supplemental submission in advance of the August 5, 2026 hearing.

With regard to Request Six, it is relevant for the purposes of irreparable harm whether Mayweather has agreed to fight any other individuals in the upcoming months and what the nature of those fights will be. However, requesting all "contracts, term sheets and/or communications concerning Mr. Mayweather fight[ing] any opponents other than Mr. Zambidis" is overly broad temporally. Plaintiffs are entitled, however, to documents sufficient to show whether Mayweather has agreed to or entered into formal negotiations to fight with anyone other than Mike Tyson and Manny Pacquiao through January 31, 2027. Therefore, Defendant Mayweather shall produce to Plaintiffs any contracts, term sheets and/or communications from June 9, 2026 to the date of this Order, in Defendant Mayweather's possession, custody, or control, concerning any fights and/or formal negotiations for fights involving Mayweather that are scheduled or for which formal negotiations have begun, with fight dates and/or potential fight dates between the date of this Order and January 31, 2027.

SO ORDERED.

Dated: July 24, 2026
New York, New York

Vernon S. Broderick
United States District Judge