UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CSI ENTERTAINMENT, LLC, CSI SPORTS
EVENTS, LLC, and CSI ENTERTAINMENT
EVENTS, LLC,

                      *Plaintiffs*,

          – against –

FLOYD MAYWEATHER, JR. and
FRIST APEX VENTURES LLC,

                    *Defendants*.
------------------------------------------------------------X

Case No. 26-cv-5150 (VSB)

**PLAINTIFFS' MEMORANDUM OF LAW ON THE ISSUE OF WHETHER THE COURT SHOULD HOLD AN EVIDENTIARY HEARING ON PLAINTIFFS' MOTION <u>FOR A PRELIMINARY INJUNCTION</u>**

JUDD BURSTEIN, P.C.
825 Third Avenue, 21st Floor
New York, New York 10022
(212) 974-2400
*Attorneys for Plaintiffs CSI
Entertainment, LLC, CSI Sports
Events, LLC, and CSI Entertainment
Events, LLC*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

STATEMENT OF FACTS ................................................................................................1

ARGUMENT ...................................................................................................................1

POINT I

THE LAW GOVERNING EVIDENTIARY HEARINGS.................................................1

POINT II

AN EVIDENTIARY HEARING IS NECESSARY BECAUSE THERE ARE DISPUTED
FACTS OVER WHETHER ANY MONEY JUDGMENT WHICH CSI OBTAINS AGAINST
MAYWEATHER WILL BE COLLECTIBLE...................................................................2

      A.    MAYWEATHER IS INSOLVENT.......................................................................3

      B.    MAYWEATHER SHOULD BE PRESUMED INSOLVENT................................8

      C.    MAYWEATHER HAS DEMONSTRATED THAT HE INTENDS TO
            FRUSTRATE ANY JUDGMENT IN FAVOR OF CSI .........................................9

POINT III

AN EVIDENTIARY HEARING IS NECESSARY BECAUSE THERE ARE DISPUTED
FACTS AS TO WHETHER CSI WILL SUFFER IRREPARABLE HARM FOR OTHER
REASONS ......................................................................................................................12

TABLE OF AUTHORITIES

CASES

*AJF Transp. Consultants, Inc. v. Commissioner*,
   #99-4164(L),
   2000 U.S. App. LEXIS 9966 (2d Cir. May 11, 2000) .........................................................9

*Allstate Ins. Co. v. TMR Medibill, Inc.*,
   CV-00-0002 (CPS),
   2000 U.S. Dist. LEXIS 23142 (E.D.N.Y. July 13, 2000) .....................................................3

*Brenntag Int'l Chems., Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999) .................................................................................................2

*Charette v. Town of Oyster Bay*,
   159 F.3d 749 (2d Cir. 1998) .................................................................................................1

*Fengler v. Numismatic Americana Inc.*,
   832 F.2d 745 (2d Cir. 1987) .................................................................................................2

*Kern v. Clark,*
   331 F.3d 9 (2d Cir. 2003) .....................................................................................................2

*Markovits v. Venture Info Capital, Inc.*,
   129 F.Supp.2d 647 (S.D.N.Y. 2001) ..................................................................................14

*McCormick 103, LLC v. Beeche*,
   1:25-cv-00944 (AMN/TWD),
   2025 U.S. Dist. LEXIS 185002 (N.D.N.Y. Aug. 8, 2025) ...................................................3

*Pashaian v. Eccelston Props.*,
   88 F.3d 77 (2d Cir. 1996) .....................................................................................................3

*Pennantia, LLC v. Rose Cay Mar., LLC,*
   25-cv-5904 (SHS),
   2025 U.S. Dist. LEXIS 160032 (S.D.N.Y. Aug. 18, 2025) ..................................................2

*Suber v. VVP Servs.*,
   20-cv-8177 (AJN),
   2021 U.S. Dist. LEXIS 56754 (S.D.N.Y. Mar. 22, 2021) .............................................3, 11

*Zeltser v. Regal V World-Wide Holdings*,
   No. 96-7820,
   1997 U.S. App. LEXIS 6130 (2d Cir. 1997) .......................................................................3

STATUTES AND OTHER AUTHORITIES

Cal. Code Civ. Proc. § 685.010(a)(1) ................................................................................4

DCL § 271(a) .....................................................................................................................3

DCL § 271(b)......................................................................................................................8

Nev. Rev. Stat. § 17.130 ....................................................................................................5

Plaintiffs CSI Entertainment, LLC, CSI Sports Events, LLC, and CSI Entertainment Events, LLC (collectively, "CSI"), submit this Memorandum of Law on the issue of whether the Court should hold an evidentiary hearing on CSI's Motion for a Preliminary Injunction – more specifically, whether a hearing is necessary on the issue of irreparable harm.[1]

## STATEMENT OF THE FACTS

The facts necessary for the Court to decide whether it should conduct an evidentiary hearing are set forth in (a) the Verified Complaint, Doc. No. 1, (b) the Declarations submitted by Richard Miele, Mark Taffet, John Skipper, Daniel Lee, M.D., and Andrew Ruf in support of CSI's motion for a TRO, Doc. Nos. 6-8, 18-19, and 24-27, and (c) the accompanying Declaration of Judd Burstein ("Burstein Dec."). These facts will be discussed below where relevant.

## ARGUMENT

## POINT I

## THE LAW GOVERNING EVIDENTIARY HEARINGS

As this Court noted in its Opinion and Order, dated July 2, 2026, Doc. No. 40 ("TRO Op."), denying CSI's motion for TRO, "[t]he Second Circuit has found that, for purposes of a preliminary injunction motion, 'an evidentiary hearing is not required when, *inter alia*, disputed facts are amenable to complete resolution on a paper record.'" *Id.* at 8 (Citation omitted).

However, the Second Circuit has also made clear that a preliminary injunction "motion 'should not be resolved on the basis of affidavits which evince disputed issues of fact.'" *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998). Rather, "[o]n a motion for preliminary injunction, where 'essential facts are in dispute, there must be a hearing … and appropriate findings

---

[1]    CSI adopts the same defined terms used in its moving papers on the Preliminary Injunction Motion.

of fact must be made.'" *Fengler v. Numismatic Americana Inc.*, 832 F.2d 745, 747 (2d Cir. 1987) (Citation omitted) (ellipsis in original); *see Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) ("'The existence of factual disputes necessitates an evidentiary hearing … before a motion for a preliminary injunction may be decided.'") (citation omitted) (ellipsis in original).[2]

## POINT II

### AN EVIDENTIARY HEARING IS NECESSARY BECAUSE THERE ARE DISPUTED FACTS OVER WHETHER ANY MONEY JUDGMENT WHICH CSI OBTAINS AGAINST MAYWEATHER WILL BE COLLECTIBLE

Although "[a]s a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm," "courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999). The courts interpreting *Brenntag* have held that its exception also applies where:

    a.    A defendant's insolvency is "likely and imminent." *Pennantia, LLC v. Rose Cay Mar., LLC*, 25-cv-5904 (SHS), 2025 U.S. Dist. LEXIS 160032, at *12-13 (S.D.N.Y. Aug. 18, 2025) (Citing *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 782 (2d Cir. 2010));

---

[2] We respectfully note that the two cases cited by the Court on the need for a hearing are factually inapposite. In *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 511 (2d Cir. 2005), the Court held that that an employer's "negative evaluation [of the plaintiff] was insufficient to demonstrate irreparable harm and that the claim of psychological harm was too speculative to warrant preliminary relief." In *Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 37 (2d Cir. 1988), the Court held that "[t]he most significant factors, *i.e.*, the confusion over ownership and the prior defaults, would have remained essentially unchanged by any additional evidence." As we demonstrate *infra*, this case is very different.

b.      The evidence shows that a party intends to frustrate a money judgment by making it uncollectible.  *See, e.g.*, *Allstate Ins. Co. v. TMR Medibill, Inc.*, CV-00-0002 (CPS), 2000 U.S. Dist. LEXIS 23142, at *51 (E.D.N.Y. July 13, 2000); or

c.      The Defendant engages in other conduct which demonstrates that the plaintiff "would likely be unable to collect a money judgment.…" *Zeltser v. Regal V World-Wide Holdings*, No. 96-7820, 1997 U.S. App. LEXIS 6130, at *7 (2d Cir. 1997). *See id.* at *7-8 (Defendant conducted its affairs through other entities); *McCormick 103, LLC v. Beeche*, 1:25-cv-00944 (AMN/TWD), 2025 U.S. Dist. LEXIS 185002, at *19 (N.D.N.Y. Aug. 8, 2025) (other judgments against defendants);  *Suber v. VVP Servs.*, 20-cv-8177 (AJN), 2021 U.S. Dist. LEXIS 56754, at *20-21 (S.D.N.Y. Mar. 22, 2021) (defendant had "whittled away his purported fortune over the last several years on an excessive lifestyle….").

Here, there is abundant evidence showing that all of these factors are present, and that an evidentiary hearing is required.[3]

## A.      <u>MAYWEATHER IS INSOLVENT</u>

New York's Debtor and Creditor Law controls on the issue of whether Mayweather is insolvent.  *See Pashaian v. Eccelston Props.*, 88 F.3d 77, 85-87 (2d Cir. 1996).  Under DCL § 271(a), a "debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets."  Mayweather is insolvent under this test.

---

[3]      To be clear, CSI contends that the evidence described *infra* is sufficient for the Court to make a finding in CSI's favor on the issue of irreparable injury without a hearing.

**First**, as shown by Exhibit 1 to the Burstein Dec., a printout of a LexisNexis Public Records search of Mayweather ("LEXIS Report"), it appears that Mayweather owns only a single car.  *Id.* at pp. 40-41.

**Second**, as shown by the property records annexed as Exhibits 2-11 to the Burstein Dec., all of Mayweather's current residences as listed in the LEXIS Report are, with one exception, owned by related entities.  *See also* Exhibit 12 to the Burstein Dec., a chart prepared by Mr. Burstein's office summarizing the ownership and transfer history of these properties.

**Third**, on the other side of the ledger, Mayweather has massive debts that dwarf his assets:

a.      There have been public reports that Defendant owes $7.5 million in back taxes which are the subject of one or more liens, *see, e.g.*, Exhibit 13 to the Burstein Dec., and Mayweather's counsel has implicitly conceded that there is at least one such lien.  *See* Exhibit 14 to Burstein Dec. (Mayweather's counsel's July 15, 2026 email stating:  "We may be willing to produce the tax lien(s)").

b.      On October 31, 2023, a judgment in the amount of $2,376,978.32 was entered against Mayweather in the Superior Court of the State of California.  Exhibit 15 to the Burstein Dec.  The judgment was affirmed by the California Court of Appeal on November 18, 2024, and the docket for the case does not reflect that the judgment has been satisfied.  Exhibits 16-17 to Burstein Dec.  The post-judgment interest rate in California is ten percent.  Cal. Code Civ. Proc. § 685.010(a)(1).  Hence, as of July 31, 2026, Mayweather will owe $2,853,197.61, with interest continuing to run at the rate of $18,874.82 a month.

c.      In August and September of 2025, judgments in the amount of $9,790 for attorneys' fees and $1,700 for discovery sanctions were entered against Mayweather in

4

*Rodriguez-Mercado v. Mayweather*, Case No. A-24-898173 (Nev. Dist. Ct. Clark Cty. Dep't 13). Exhibit 18 to Burstein Dec. at 1-2.[4] The docket (a) does not reflect (i) the total amount of damages being sought, or (ii) whether these judgments have been satisfied, and (c) as of June 4, 2026, shows there is a pending motion for a default judgment. *See id.* The post-judgment interest rate in Nevada, if not specified by the judgment, is "a rate equal to the prime rate at the largest bank in Nevada as ascertained by the Commissioner of Financial Institutions on … July 1 … immediately preceding the date of the judgment, plus 2 percent." Nev. Rev. Stat. § 17.130. As of July 1, 2026, the prime interest rate is 6.75%. https://fid.nv.gov/uploadedFiles/fidnvgov/content/Resources/Prime%20Interest%20Rate%20July%201,%202026.pdf. Therefore, the Nevada interest rate is 8.75%. Hence, as of July 31, 2026, Mayweather will owe approximately $12,485.26 on these two judgments, with interest continuing to run at $83.79, with potentially additional amounts due in connection with this case.

d.    On December 15, 2025, a default judgment in the amount of $610,818.68 was entered against Mayweather in *Arriola v. Mayweather*, Case No. A-25-912539-C (Nev. Dist. Ct. Clark Cty. Dep't 4). Exhibit 19 to Burstein Dec. at 1-2. The docket does not reflect whether the judgment has been satisfied. *See id.* As noted above, the post-judgment interest rate in Nevada, as of July 1, 2026, is 8.75%. Hence, as of July 31, 2026, Mayweather will owe approximately $645,185.57, with interest continuing to run at the rate of $4,453.89 a month.

---

[4]    The underlying documents in the Nevada District Court, Clark County, cases discussed herein are not publicly available, but CSI will obtain copies of such documents from that Court for the preliminary injunction hearing.

5

**Fourth**, at least six defaults have been entered against Mayweather in which the plaintiffs, collectively, are seeking millions of dollars of damages:

a. On April 22, 2026, a default was entered against Mayweather in *Sulaymanov v. Mayweather*, Case No. 26-cv-20248-DPG (S.D. Fla.). Exhibit 20 to Burstein Dec. at ¶ 4.[5] The Second Amended Complaint in that case seeks between $75,000 and $2,100,000 in damages. Exhibit 22 to the Burstein Dec. at ¶ 7;[6]

b. On January 9, 2023, a default was entered against Mayweather in *Bayev v. Mayweather*, Case No. 22-cv-03503-JMA-AYS (E.D.N.Y.). Exhibit 23 to Burstein Dec. The Complaint in that case seeks $250,000 plus interest. Exhibit 24 to Burstein Dec.;[7]

c. On May 26, 2026, a default was entered against Mayweather in *Ali v. Mayweather*, Case No. A-25-922032 (Nev. Dist. Ct. Clark Cty. Dep't 24). Exhibit 27 to Burstein Dec. at 4. Based on the docket, it is not clear the amount of damages being sought in this negligence action. *Id.* at 1-4;

---

[5] On May 16, 2026, the Southern District of Florida entered a default judgment against Mayweather. *Id.* However, the judgment has been "defer[red] … until all claims" in *Sulaymanov* are resolved while Mayweather remains *pro se*. *See* Exhibit 21 to Burstein Dec. at Paperless Order, entered on June 12, 2026; *see also* Exhibit 35 to Burstein Dec.

[6] It is not clear what are the total damages being sought in that case because, while the Second Amended Complaint states "the amount in controversy exceeds the sum or value of $75,000.00," it also references an "account which contained $2,100,000.00 earmarked to address the defaulted payment." *Id.* at ¶¶ 7 and 22.

[7] An Order, dated August 15, 2023, stated that a motion for a default judgment had been withdrawn in *Bayev*. Exhibit 25 to Burstein Dec. While the docket there reflects that Mayweather is represented by counsel, the default against him has not been vacated. Exhibit 26 to Burstein Dec. at pp. 5-7. The first filing on Mayweather's behalf appears on April 27, 2026, where defense counsel moved to adjourn a conference. *Id.* at p. 10. In any event, a Scheduling Order, entered on June 1, 2026, stated that defense counsel failed to appear at the conference scheduled that same day, and that "Plaintiff **may make a motion for default judgment**." *Id.* at p. 11 (Emphasis supplied). Such motion has not yet been filed. *Id.*

d.   On February 26, 2026, a default was entered against Mayweather in *Haute LLC v. Mayweather*, Case No. A-25-928637 (Nev. Dist. Ct. Clark Cty. Dep't 22). Exhibit 28 to Burstein Dec. at 4. Based on the docket, it is not clear the amount of damages being sought. *Id.* at 1-4. However, the Nevada District Court entered an Order to Show Cause on July 10, 2026, with a Show Cause Hearing presently scheduled for August 12, 2026. *Id.* at 4;

e.   On July 13, 2026, a default was entered against Mayweather in *Michaely v. Mayweather*, Case No. A-26-939667 (Nev. Dist. Ct. Clark Cty. Dep't 19). Exhibit 29 to Burstein Dec. at 4. Based on the docket, at least $1,522,006.50 in damages is being sought. *Id.* at 1-2;[8]

f.   As of at least March of 2026, Mayweather has been in default for failing to appear in *Perpetual Love Investments LLC v. Mayweather*, Index No. 650158/2026 (Sup. Ct. N.Y. Cty.). Exhibit 30 to Burstein Dec. The Summons with Notice states that $337,736.13 plus interest is being sought. Exhibit 31 to Burstein Dec.;[9] and

g.   On September 22, 2025, Mayweather's answer was stricken in *Rodriguez-Mercado v. Mayweather*, Case No. A-24-898173 (Nev. Dist. Ct. Clark Cty. Dep't 13), and on April 8, 2026, a default was entered. Exhibit 18 to Burstein Dec. at 9. As noted *supra*, the total amount of damages being sought in that action are not clear. Nor

---

[8]   On April 7, 2026, a default in *Michaely* was first entered against Mayweather's co-defendant. *Id.* On July 1, 2026, the court entered a default judgment plus interest in the amount of $1,522,006.50, but without listing whom it is against. *Id.* The last entry on the *Michaely* docket is the default entered against Mayweather on July 13, 2026. *Id.*

[9]   On June 12, 2026, the plaintiff filed a motion for a default judgment against Mayweather in that case. Exhibit 32 to Burstein Dec. On June 29, 2026, the motion was marked fully submitted without opposition from Mayweather. Exhibit 33 to Burstein Dec. It will be decided on submission only and without any appearance. *Id.*

7

is it clear whether the default has been entered on the underlaying claim or Mayweather's failure to pay two separate judgments, discussed *supra* at 4-5.

All of these defaults will undoubtedly be reduced to judgments in the near future following an inquest hearing.

**Fifth**, the fact that Mayweather has been indicted for passing a bad $200,000 check, *see* Exhibits 13 and 34 to the Burstein Dec., further confirms that he is insolvent.

### B.    MAYWEATHER SHOULD BE PRESUMED INSOLVENT

DCL § 271(b) provides:

> A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent.  The presumption imposes on the party against which the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence.

Here, the IRS liens(s), unpaid judgments and impending default judgments against Mayweather show that he is not paying "his debts as they become due other than as a result of a bona fide dispute."  *Id.*  Nor has Mayweather met his burden of proving that the nonexistence of insolvency is more probable than its existence because the only "proof" that Mayweather has offered on this issue is the following meaningless statement in Walter Jordan's Declaration, dated June 25, 2026:

> As Mr. Mayweather's business manager, I regularly review and oversee information concerning his assets, income, and financial affairs.  Based on my personal knowledge, Mr. Mayweather continues to possess substantial assets…. In my opinion, there is no basis to conclude that Mr. Mayweather is at risk of insolvency or that he would be unable to satisfy a monetary judgment in the event one was entered against him.

Doc. No. 28-4 at ¶ 12.

8

**C.      MAYWEATHER HAS DEMONSTRATED THAT HE INTENDS TO FRUSTRATE ANY JUDGMENT IN FAVOR OF CSI**

Mayweather's pattern of conduct over at least the past few years demonstrates that he operates in a manner designed to avoid paying the judgments against him and other monies that he owes.

**First**, as shown by the recent videos and photos posted online, Exhibits 37-43 to the Burstein Dec., Mayweather carries huge amounts of cash to fund his lavish lifestyle at the same time that he is not paying his debts.  As the Court stated in *AJF Transp. Consultants, Inc. v. Commissioner*, #99-4164(L), 2000 U.S. App. LEXIS 9966, at *8 (2d Cir. May 11, 2000), a party's "extensive use of cash" is a "badge[] of fraud."

**Second**, Mayweather himself has essentially admitted that he does not pay judgments entered against him.  In a July 3, 2026 video interview, he stated:

> I still pay all my employees.  **A lot of times they say, "Oh, it's this lawsuit, it's that lawsuit."  One thing about me, whoever I get involved with, as far as with business**, I get myself out of the situation.  I'm not educated in school, I'm educated in life.  I know how to survive.

Exhibit 44 to Burstein Dec., a transcript of the Instagram video found at https://www.instagram.com/reel/DaVsE_tRyNC/.  (Emphasis supplied).

**Third**, the LEXIS Report shows that Mayweather operates through **at least 30 different entities**.  Exhibit 1 to Burstein Dec. at pp. 78-85.  It is also clear that, in addition to using some of these entities to own his real property, Mayweather uses them to protect his other assets from creditors.  For example, in a TikTok post on July 4, 2025, he showcased his multi-million-dollar car collection.  *See* https://www.tiktok.com/@soseriuzradio/video/7523279100371291397.  Yet, the LEXIS Report, at pp. 40-41, reflects his ownership of only one car.

**Fourth**, in light of the foregoing, it is now clear that the CSI and EverWonder contracts at issue in this case, Doc. Nos. 1-1, 1-5, and 1-7, were structured so as to ensure that monies paid for Mayweather's services would stay beyond the reach of his creditors by using Defendant Frist Apex Ventures LLC as the vehicle for receiving payments. Moreover, although it was unknown to CSI at the time, Mayweather obviously requested the March 1, 2026 $150,000 payment from CSI in cash for that same reason.

**Fifth**, Mayweather repeatedly seeks to delay litigations by not complying with his discovery obligations:

a.  In *Eric & Co Trading Group LLC v. Mayweather*, Case No. 23-cv-20045-RKA (S.D. Fla.), the court entered two Orders, on November 2, 2023, and December 8, 2023, granting motions to compel discovery responses and production from Mayweather. Exhibits 45-46 to the Burstein Dec., respectively. Both of these Orders warned Mayweather: "Failure to comply may result in sanctions, including an award of reasonable attorney's fees." Exhibit 45 to Burstein Dec. at 1; Exhibit 46 to Burstein Dec. at 2;

b.  In *In re Ethereummax Investor Litigation*, Case No. 22-cv-00163-MWF-SK (C.D. Cal.), the court entered an Order, on April 16, 2026, granting the class plaintiffs' unopposed motion to compel Mayweather to respond to discovery "served as early as **2024**." Exhibit 47 to Burstein Dec. at 1 (Emphasis supplied). This Order warned Mayweather "that failure to comply with this order or any other federal and local rules of civil discovery may lead to sanctions with no further notice." *Id.* at 2;

c.  In *Strauss v. I.K.M.J. Joint LLC*, Case No. A-24-902840 (Nev. Dist. Ct. Clark Cty. Dep't 14), the court, on November 12, 2025, granted the plaintiffs' motion to

compel Mayweather to respond to discovery.  Exhibit 36 to Burstein Dec. at 9-10. A status conference was held on February 3, 2026 to "see what has been produced and whether such is sufficient."  *Id.* at 10-11.  On May 6, 2026, the Court granted a motion for sanctions against Mayweather for his failure to comply with the discovery order.  *Id.* at 13-14;[10] and

d.     In *Rodriguez-Mercado v. Mayweather*, Case No. A-24-898173 (Nev. Dist. Ct. Clark Cty. Dep't 13), the court entered (a) a judgment, on September 5, 2025, for discovery sanctions for Mayweather's non-appearance for two depositions, and (b) an Order, on September 22, 2025, granting discovery sanctions and striking Mayweather's answer.  Exhibit 18 to Burstein Dec.

**Sixth**, the foregoing shows that Mayweather has chosen to fund his lavish lifestyle with monies owed to his creditors.  As such, the Court's holding in *Suber*, is particularly apt:

> Defendant Sclavos has whittled away his purported fortune over the last several years on an excessive lifestyle, including fueling the Sclavos Drug Problem.  Unless Defendant Sclavos, through himself and Prometheus Ventures and with the assistance of other Defendants, is restrained from dissipating his assets, including the Collingwood Property, there will be no common resource left to satisfy the equitable or other remedies to which Ms. Suber will ultimately be entitled....

2021 U.S. Dist. LEXIS 56754 at *20.

---

[10]     While the docket in *Strauss* does not specifically state against whom these sanctions were granted, the only motion to compel discovery in that case had been against Mayweather, while the other two defendants have actively litigated there.  *See id.*  As noted *supra*, Mayweather's discovery delay led to an adjournment of the bench trial previously scheduled for August 3, 2026.

11

## POINT III

## AN EVIDENTIARY HEARING IS NECESSARY BECAUSE THERE ARE DISPUTED FACTS AS TO WHETHER CSI WILL SUFFER IRREPARABLE HARM FOR OTHER REASONS

CSI's TRO motion focused upon the Zambidis Fight and the primary reasons for the Court's denial of CSI's motion were focused on that bout. *See* TRO Op. at 9-12. But CSI's motion for a preliminary injunction is not tied to the Zambidis Fight and there are compelling reasons why CSI will be irreparably harmed absent a preliminary injunction.

**First**, contrary to Mayweather's representations to the Court, the Zambidis Fight has not been rescheduled. Exhibit 48 to the Burstein Dec. shows that (a) no tickets for any Mayweather fight are currently on sale, and (b) the venue for the originally scheduled Zambidis Fight – the Telekom Arena Athens in Greece – does not list the Zambidis Fight as an upcoming event. Hence, the Court's findings about the lesser dangers posed by Zambidis himself and the rules for the bout, TRO Op. at 12, are now moot.

**Second**, the one fight which Mayweather does intend to pursue – against Manny Pacquiao ("Pacquiao")[11] – will be very different from the Zambidis Fight. Per the Everwonder-Mayweather Contract under which Mayweather intends to fight Pacquiao:

> The Match shall be scheduled for ten or twelve (12) rounds (to be mutually agreed) of three (3) minutes each to a decision, which shall be scored using the 10-point must system subject to the rules, regulations and directives of the applicable athletic commission having jurisdiction over boxing contests in the state in which the Match is to be held … and/or any regulatory authorities or sanctioning bodies with jurisdiction over the Match …, and which **will be a professional and sanctioned boxing match and shall count on the official professional records of Mayweather and Pacquiao**.

---

[11]    Mayweather has refused to provide any discovery on his negotiations for future fights, but Pacquiao has publicly stated that their fight will be going forward on a later date than originally contemplated. Exhibit 49 to Burstein Dec.

12

Doc. No. 1-7, Exhibit 7 to the Complaint, at ¶ 2(b) (Emphasis supplied).

Moreover, it is beyond dispute that, like Mayweather, Pacquiao is one of the greatest fighters of all time.  Why else would the Everwonder-Mayweather Contract provide for a payment of a minimum of $27.5 million for Mayweather's participation in the bout?  *Id.* at ¶ 3(a).  Hence, whereas Mayweather participating in the Zambidis Fight prior to the Tyson Fight may not have posed much of a risk, the opposite is certainly true of a Mayweather-Pacquiao bout.

**Third**, relatedly, since a Mayweather-Pacquiao bout is so fundamentally different than the Zambidis Fight and, more importantly, no date for it has yet been announced, this is no longer a situation where "any reputational damage … has already taken place and is substantially completed, so further incremental damage is substantially mitigated."  TRO Op. at 10.  Rather, as detailed in the Declarations of John Skipper and Mark Taffet, permitting Mayweather to go forward with a bout against Pacquiao, or anyone other than Tyson, would irreparably harm CSI's reputation in the industry.  Doc. Nos. 7 (at ¶¶ 14-17) and 8 (at ¶¶ 9-12).

**Fourth**, since the Zambidis Fight has not been rescheduled and the Court has scheduled the preliminary injunction hearing for September 16, 2026, Doc. No. 45, then any uncertainty about the Tyson Fight going forward on September 26, 2026, *see* TRO Op. at 12, is currently irrelevant because that date is now impossible through no fault of CSI's.  But there is no doubt about Tyson's physical ability or his willingness to go forward with the Tyson Fight on another date.  *See* Doc. Nos. 26-27.  The only question is whether the negative covenant in the Tyson Amendment should be enforced so that the Tyson Fight goes forward before any other bout.

While the Court correctly noted that "'[i]n most of the cases in which negative covenants have been specifically enforced, the defendant owed a continuing obligation to the plaintiff for a specific term,'" TRO Op. at 11 (quoting *Lewis v. Rahman*, 147 F. Supp. 2d 225, 237 (S.D.N.Y.

13

2001)) (brackets in original), we respectfully submit that it overlooked the fact that CSI also has the exclusive right to present Mayweather's next bout after a Pacquiao-Mayweather fight.  Doc. No. 1-14, Exhibit 14 to the Complaint, at ¶ 4.

**Fifth**, we note that the Tyson Amendment explicitly provides that Mayweather's agreement to participate in any bout, including a Pacquiao-Mayweather fight, prior to the Tyson Fight "shall cause CSI irreparable harm…."  Doc. No. 1-16, Exhibit 16 to the Complaint, at ¶ 8. While this provision is not determinative, it does nonetheless "weigh in [CSI's] favor…." *Markovits v. Venture Info Capital, Inc.*, 129 F.Supp.2d 647, 661 (S.D.N.Y. 2001).

Dated: New York, New York
      July 24, 2026

Respectfully submitted,

JUDD BURSTEIN, P.C.

By:   */s/ Judd Burstein*
     Judd Burstein (JB9585)
825 Third Avenue, 21st Floor
New York, New York 10022
(212) 974-2400
(212) 974-2944 (Fax)
jburstein@burlaw.com
*Attorneys for Plaintiffs CSI Entertainment, LLC, CSI Sports Events, LLC, and CSI Entertainment Events, LLC*

14